# In the
# United States Court of Appeals
# for the Third Circuit

---

### No. 16-2722

---

**JAYVON WRIGHT; ANTOINE MURREY
KEITH MEDLEY; GREGORY GRIFFIN; RASHAD EL, individually
and on behalf of a class of others similarly situated,**

*Appellants*,

v.

**CITY OF WILMINGTON,**

*Appellee.*

---

**On Appeal from the United States
District Court for the District of Delaware**

---

# Brief of Plaintiffs-Appellants

---

**Stephen P. Norman, Esquire
30838 Vines Creek Road, Unit 3
Dagsboro, DE 19939
(302) 537-3788**

**Attorney for Appellants**

# TABLE OF CONTENTS

**Page No**

JURISDICTIONAL STATEMENT ................................................................. 1

STATEMENT OF THE ISSUES FOR REVIEW ........................................... 1

   I. Whether the court erred in denying Plaintiff-Appellants' Motion
      for Class-Action Certification?................................................................. 1

   II. Whether the court erred in denying the Motion to Compel
       Pre-Certification Discovery as moot and whether Plaintiff-Appellants
       are entitled to pre-certification discovery? ........................................... 2

STATEMENT OF RELATED CASES ........................................................... 2

STATEMENT OF THE CASE .......................................................................... 3

   I.     Statement of Facts ....................................................................... 3

   II.    Procedural History ....................................................................... 5

SUMMARY OF ARGUMENT ....................................................................... 7

ARGUMENT ................................................................................................ 7

   I.  The District Court Erred in Denying the Motion for
      Class Certification ....................................................................... 7

      A. Standard of Review ....................................................................... 7

      B. Requirements of Class Certification............................................... 8

      C. Ascertainability............................................................................ 10

      D. Numerosity .................................................................................. 17

      E. Adequacy ..................................................................................... 19

      F. Federal Rule of Civil Procedure 23(b)(2).................................... 21

      G. Federal Rule of Civil Procedure 23(b)(3).................................... 24

   II. The District Court Erred in Denying the Motion to Compel
       Pre-Certification Discovery as Moot and Pre-Certification
       Discovery Is Appropriate.............................................................. 30

i

A. Standard of Review ........................................................................... 30

B. Mootness of Pre-Certification Discovery .......................................... 30

C. Appropriateness of Pre-Certification Discovery .............................. 31

CONCLUSION ............................................................................................ 34

CERTIFICATION OF BAR MEMBERSHIP ................................................. 35

CERTIFICATION OF COMPLIANCE .......................................................... 36

CERTIFICATION OF IDENTITY .................................................................. 37

CERTIFICATION OF VIRUS CHECK .......................................................... 38

CERTIFICATION OF SERVICE .................................................................... 39

# TABLE OF AUTHORITIES

**Cases**                                                               **Page No**

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998) ..................... 22

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)..................................... 25

*Andrews v. Bechtel Power Corp.*, 780 F.2d 124 (1st Cir. 1985) ...................... 18

*Ardrey v. Fed. Kemper Ins. Co.*, 142 F.R.D. 105 (E.D. Pa. 1992) ................... 17

*Artway v. Attorney Gen. of State of N.J.*, 81 F.3d 1235 (3d Cir. 1996)............ 30

*Baby Neal for & by Kanter v. Casey*, 43 F.3d 48 (3d Cir. 1994) ..................... 9

*Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397 (1997) ...... 26

*Bristol Vill., Inc. v. Louisiana-Pac. Corp.*, 916 F. Supp. 2d 357
   (W.D.N.Y. 2012) ....................................................................................... 24

*Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010).................................................... 13

*Burkey v. Marberry*, 556 F.3d 142 (3d Cir. 2009)............................................ 30

*Byrd v. Aaron's, Inc.*, 784 F.3d 154 (3d Cir. 2015) ......................................... 10

*Carrera v. Bayer Corp.*, 727 F.3d 300(3d Cir. 2013)...................................... 8, 11

*Carter v. City of Philadelphia*, 181 F.3d 339 (3d Cir. 1999) ........................... 28

*Casale v. Kelly*, 257 F.R.D. 396 (S.D.N.Y. 2009)............................................ 15

*City of Canton v. Harris*, 489 U.S. 378 (1989)................................................. 28

*Dixon Ticonderoga Co. v. Estate of O'Connor*, 248 F.3d 151
   (3d Cir. 2001)............................................................................................ 30

*Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011) ................ 25

*Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402 (6th Cir. 2012)............ 24

*Gortat v. Capala Bros., Inc.*, No. 07-CV-3629(ILG), 2010 WL 1423018
    (E.D.N.Y. Apr. 9, 2010) ........................................................................... 12-13

*Grant v. Sullivan*, 131 F.R.D. 436 (M.D. Pa. 1990) ......................................... 17

*Grasty v. Amalgamated Clothing & Textile Workers Union,*
    *AFL-CIO, CLC*, 828 F.2d 123 (3d Cir. 1987) ........................................... 19

*Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349 (3d Cir. 2013) ......................... 11

*Holmes v. City of Wilmington*, 79 F. Supp. 3d 497 (D. Del. 2015) ................. 26

*Huber v. Casablanca Indus., Inc.*, 916 F.2d 85 (3d Cir. 1990) ........................ 30

*Huyer v. Wells Fargo & Co.*, 295 F.R.D. 332 (S.D. Iowa 2013) ..................... 24

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods.*
    *Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) ..................................................... 8

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305
    (3d Cir. 2008)......................................................................................... 7, 32

*In re S. Cent. States Bakery Prods. Antitrust Litig.*, 86 F.R.D. 407
    (M.D. La. 1980) ........................................................................................ 20

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585
    (3d Cir. 2009)........................................................................................... 32

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) .............. 8

*Kamm v. California City Dev. Co.*, 509 F.2d 205 (9th Cir. 1975) ................... 32

*Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859 (11th Cir. 1986) ...................... 18

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001) ...................................... 19

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997) ........................... 29

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) ....................... 18

*Matter of Establish Inspection of Metal Bank of Am., Inc.*, 700 F.2d 910 (3d Cir. 1983) .......................................................................................... 30

*Moore v. PaineWebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002) ........................... 25

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001) ........................................................... 8, 19, 25

*Pittman v. E. I. duPont de Nemours & Co.*, 552 F.2d 149 (5th Cir. 1977) ...... 32

*Reed v. United Transp. Union*, 488 U.S. 319 (1989) ....................................... 19

*Salve Regina Coll. v. Russell*, 499 U.S. 225 (1991) ........................................ 30

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001) .......................................... 17

*Stinson v. City of New York*, 282 F.R.D. 360 (S.D.N.Y. 2012) ....................... 12

*Weisman v. Darneille*, 78 F.R.D. 671 (S.D.N.Y. 1978) .................................. 20

*Yaffe v. Powers*, 454 F.2d 1362 (1st Cir. 1972) .............................................. 33

**Statutes**

28 U.S.C. § 1331 .............................................................................................. 1

28 U.S.C. § 1343 .............................................................................................. 1

42 U.S.C. § 1983 ....................................................................................1, 5, 26-27

**Rules**

Fed. R. App. P. 32(a)(5) ....................................................................... 36

Fed. R. App. P. 32(a)(6) ....................................................................... 36

Fed. R. App. P. 32(a)(7)(B) .................................................................. 36

Fed. R. App. P. 32(a)(7)(B)(iii) ........................................................... 36

Fed. R. Civ. P. 12(b)(6) ......................................................................... 5

Fed. R. Civ. P. 23(a) ................................................................... 8, 24

Fed. R. Civ. P. 23(a)(1) ........................................................................ 17

Fed. R. Civ. P. 23(b) ..................................................................... 8, 21

Fed. R. Civ. P. 23(b)(2) ............................................................... 21, 24

Fed. R. Civ. P. 23(b)(3) ............................................................... 24, 27

Fed. R. Civ. P. 23(f) ....................................................................... 1, 6

# JURISDICTIONAL STATEMENT

The district court possessed subject matter jurisdiction under the provisions of 28 U.S.C. §§ 1331 and 1343 because the Plaintiff-Appellants′ claims seek compensatory damages and injunctive relief as a result of their deprivation of civil rights secured by the Constitution and federal law pursuant to 42 U.S.C. § 1983.

This Court has appellate jurisdiction pursuant to Federal Rule of Civil Procedure 23(f), permitting appeal from an order denying class-action certification if a petition for permission to appeal is filed with the circuit court within 14 days after such order is entered.  The order denying class-action certification was entered on March 31, 2016.  App. 3–6 (Mem. Order); App. 43 (Docket 60).  Appellants timely filed their petition to appeal with this Court on April 12, 2016.  *See* Pet. for Permission to Appeal.  The petition was granted by this Court on May 31, 2016.  App. 1.

# STATEMENT OF THE ISSUES FOR REVIEW

**I.    Whether the Court Erred in Denying Plaintiff-Appellants′ Motion for Class-Action Certification?**

The Plaintiff-Appellants moved for class certification on November 21, 2013.  App. 35 (Docket 3); App. 49–57 (Motion for Class Certification).  The Defendant-Appellee responded to that motion on January 13, 2014.  App. 36 (Docket 12).  On January 28, 2016, the Magistrate Judge issued her Report and Recommendation

1

("R&R") denying certification.  App. 42 (Docket 52).  Plaintiff-Appellants objected to that R&R on February 16, 2016.  App. 42 (Docket 55).  The district court nevertheless adopted the said R&R by memorandum order on March 31, 2016.  App. 43 (Docket 60).

## II.    Whether the Court Erred in Denying the Motion to Compel Pre-Certification Discovery as Moot and Whether Plaintiff-Appellants Are Entitled to Pre-Certification Discovery?

The Plaintiff-Appellants moved to compel pre-certification discovery in response to a motion for a protective order submitted by the Defendant-Appellee.  App. 37 (Docket 17); App. 58–66.  In her R&R, the Magistrate Judge denied the motion to compel pre-certification discovery as moot.  App. 42 (Docket 52).  The Plaintiff-Appellants objected to that finding on February 16, 2016.  App. 42 (Docket 55).  The district court then adopted the R&R by Memorandum Order.  App. 43 (Docket 60).

## STATEMENT OF RELATED CASES

This case has not previously been before this Court.  Plaintiff-Appellants are not aware of any case or proceeding in any way related, completed, pending, or about to be presented before this court, any other court, or any agency.

# STATEMENT OF THE CASE

## I.    Statement of Facts

The Plaintiff-Appellants have each been subjected to constitutional violations by police officers of Wilmington Police Department (″WPD″). On November 23, 2011, Jayvon Wright (″Wright″) observed a friend being searched by a member of the WPD. App. 94 (Am. Compl. ¶ 47). When Wright asked the friend if he needed Wright to call the friend′s parents, the officer responded ″What the [expletive] do you want, shouldn′t you be playing basketball?″ *Id.* (Am. Compl. ¶¶ 48–49). As Wright turned to walk away, the officer grabbed his arm, tackled him to the ground, and assaulted him for three to five minutes. *Id.* (Am. Compl. ¶¶ 50–51). After the assault, Wright was arrested, searched, and transported to the police station. App. 95 (Am. Compl. ¶¶ 58–61). Once at the police station, Wright was handcuffed to a bench and subjected to an inventory search. *Id.* (Am. Compl. ¶ 62). Wright was released approximately two hours later and charged with loitering and disorderly conduct. *Id.* (Am. Compl. ¶¶ 66–67). Both charges were dismissed prior to trial. *Id.* (Am. Compl. ¶ 68).

On March 15, 2013, as Antoine Murrey (″Murrey″) and Keith Medley (″Medley″) left an apartment complex, they were confronted by WPD officers with weapons drawn. App. 96 (Am. Compl. ¶¶ 72–73). The officers ordered Murrey and Medley to the ground where they were handcuffed, patted down, and searched. *Id.*

3

(Am. Compl. ¶¶ 73–78). One of the officers removed Murrey's keys from his pocket and proceeded to drive and search his vehicle. *Id.* (Am. Compl. ¶¶ 80–82). The officers then escorted Murrey and Medley into an apartment where they forced each to submit to a strip search under threat of being tasered. App. 96–97 (Am. Compl. ¶¶ 85–103). Murrey and Medley were transported to the police station and held for an additional hour before being released without any charges being filed against them. App. 98 (Am. Compl. ¶¶ 108–110).

On February 3, 2013, Gregory Griffin ("Griffin") and Rashad El ("El") were approached by WPD officers and asked if they knew which way unidentified people had fled. *Id.* (Am. Compl. ¶¶ 113–114). When Griffin responded that he had not seen anything, the officers placed Griffin and El in handcuffs and put them into a police vehicle. *Id.* (Am. Compl. ¶¶ 116–121). On been transported to the police station, both men were subjected to searches. App. 99 (Am. Compl. ¶¶ 123, 125). Neither Griffin nor El was told why they were taken into custody and neither of them was charged with a crime. *Id.* (Am. Compl. ¶¶ 126–127).

These encounters occurred as a result of policies and customs of WPD. The WPD practice of "investigative detention" allows an individual may be taken into custody, handcuffed, transported to the police station, and held for no more than two hours based upon reasonable suspicion. App. 90–92 (Am. Compl. ¶¶ 27–31). Individuals detained under this policy, but never charged with a crime, are

documented in the WPD Turnkey Prisoner Log ("Turnkey Log") and WPD Prisoner Intake Log ("Intake Log").  App. 67–68 (Turnkey Log); App. 73 (Intake Log); App. 93 (Am. Compl. ¶¶ 38–45).  The log entries for such individuals are marked "n/a" in the "charges" column of the log and with "ID" in the "disposition" column.  App. 67 (Turnkey Log); App. 93 (Am. Compl. ¶¶ 39–44).  Other individuals found in the log and subjected to these detentions are noted as charged with only "resisting arrest" but not with any underlying charge that may have served as the basis for that arrest. *Id.*

## II.    Procedural History

Plaintiff-Appellants initiated a civil rights action under 42 U.S.C. § 1983 in the United States District Court for the District of Delaware on November 21, 2013. App. 35 (Docket 1).  At the same time, the Plaintiff-Appellants moved for class-action certification.  *Id.* (Docket 3).  The Defendant-Appellee moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and for a protective order to preclude discovery on January 13, 2014.  App. 36 (Docket 10).  A motion to compel pre-certification discovery was made by Plaintiff-Appellants on January 17, 2014. App. 37 (Docket 17). Plaintiff-Appellants moved to amend their complaint and filed a first amended complaint on August 28, 2014.  App. 38 (Docket 30).

On January 28, 2016, the Honorable Sherry R. Fallon, United States Magistrate Judge, issued a R&R advising the district court (1) to deny the motion for class certification, (2) to deny as moot the motion to dismiss, (3) to deny as moot the Defendant-Appellee's motion for a protective order, (4) to deny as moot the motion to compel pre-certification discovery, and (5) to grant Plaintiff-Appellants' motion to amend their complaint, finding that the amended complaint sufficiently alleged municipal policy, custom and inadequate training amounting to deliberate indifference. App. 7–32 (R&R); App. 42 (Docket 52). Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, Plaintiff-Appellants objected to the R&R of the magistrate judge on February 16, 2016. App. 42 (Docket 55). In a memorandum order dated March 31, 2016, the district court overruled the objections, adopted the R&R, denied the motion for class-action certification, and denied as moot the motion to compel pre-certification discovery. App. 3 (Mem. Order); App. 43 (Docket 60). Plaintiff-Appellants sought permission to appeal these decisions pursuant to Federal Rule of Civil Procedure 23(f) on April 12, 2016, and this Court granted permission to appeal on May 31, 2016. App. 1 (Order Granting Leave to Appeal); App. 44 (Dockets 69, 71).

## SUMMARY OF ARGUMENT

The District Court found that that Plaintiff-Appellants failed to establish the ascertainability of their proposed class.  App. 6 (Mem. Order).  In light of this finding, the District Court denied Plaintiff-Appellants′ Motion for Class Certification.  *Id.*  The District Court′s ruling incorrectly applied the law to the facts of the present case.  In doing so, the District Court abused its discretion.

Moreover, in light of its errant ruling with respect to ascertainability and class-certification, the District Court concluded that Plaintiff-Appellants′ Motion for Pre-Certification Discovery was moot.  *Id.*  This conclusion, based as it was upon an errant ruling as to ascertainability, was equally an error by the District Court.  If the Plaintiff-Appellants have not, as yet, established a showing sufficient for class certification, then pre-certification discovery is appropriate.

## ARGUMENT

### I.    The District Court Erred in Denying the Motion for Class Certification

#### A. Standard of Review

The Third Circuit has held that ″[i]n reviewing a district court′s judgment on class certification, we apply the abuse of discretion standard.″  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008), *as amended* (Jan. 16, 2009).  A district court will be found to have abused its discretion if its decision

7

"rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 165 (3d Cir. 2001), *as amended* (Oct. 16, 2001) (quoting *In re General Motors Corp. Pick Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 783 (3d Cir. 1995)).

## B. Requirements of Class Certification

Federal Rule of Civil Procedure 23(a) allows for class certification only if four threshold factors have been satisfied:

> (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical ... of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class").

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004). The Third Circuit has added a fifth factor, requiring that the class be ascertainable. *See Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013). Finally, in order to certify a class, a court must find that the class falls into at least one of the three "types" of class actions. *See* Fed. R. Civ. P. 23(b). In the present action, the Plaintiff-Appellants' proposed class seeks certification under Rule 23(b)(2) and Rule 23(b)(3). App. 88 (Am. Compl. ¶ 22).

The district court, in denying class certification, found that the Plaintiff-Appellants′ proposed class failed to satisfy the ascertainability factor.  App. 6 (Mem. Order).  In light of that finding, the court did not address any other factor.  *Id.*  The court did however, adopt the R&R of the Magistrate Judge.  *Id.*

In the R&R, the Magistrate Judge held that the Plaintiff-Appellants had sufficiently established commonality.  App. 16.  The Magistrate Judge explained that the issue of ″whether the WPD policy of handcuffing, transporting, searching and imprisoning individuals based solely on reasonable suspicion is constitutional″ applies to all potential class members.  *Id.*  What is more, commonality requires only that ″the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.″ *Id.* (citing *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)).   Accordingly, the Plaintiff-Appellants have established commonality.  *Id.*

With respect to typicality, the Magistrate Judge found that there was insufficient information to reach a conclusion.  App. 17.  Nevertheless, the Magistrate Judge declined to allow further discovery.  *Id.*  Even in the absence of such discovery, the Third Circuit recognizes that ″[f]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the

same legal theory." *Baby Neal*, 43 F.3d at 58. In reaching that conclusion, the Third Circuit acknowledged that

> [c]ommentators have noted that cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.

*Id.* Despite recognizing the common allegation of unlawful conduct affecting both the named Plaintiff-Appellants and putative class members in her discussion of commonality, the Magistrate Judge declined to definitively decide the question of typicality. As the R&R explains, this resulted from perceived failings with respect to other requirements of certification. App. 18.

Ultimately, the Magistrate Judge recommended denying certification due to perceived deficiencies in ascertainability, numerosity, and adequacy. App. 22. The Magistrate Judge also reasoned that certification would be improper under both Rule 23(b)(2) and Rule 23(b)(3). *Id.*

### C. Ascertainability

The Third Circuit, in *Byrd v. Aaron's, Inc.*, noted that it has been careful to specify that "[a]lthough some evidence used to satisfy ascertainability, such as corporate records, will actually identify class members at the certification stage, ascertainability *only requires the plaintiff to show that class members can be identified*." 784 F.3d 154, 164 (3d Cir. 2015) (emphasis added) (quoting *Carrera v.*

*Bayer Corp.*, 727 F.3d 300, 308 n.2 (3d Cir. 2013)).  The inquiry into ascertainability is thus two-fold: requiring a plaintiff to show that (1) the class is "defined with reference to objective criteria"; and (2) there is "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd*, 784 F.3d at 163 (quoting *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013).

The "objective criteria" required is readily available in the present case.  The WPD maintains both a Turnkey Log and an Intake Log.  App. 67–68 (Turnkey Log); App. 73 (Intake Log); App. 82–83 (Dep. of Sgt. O'Connor).  These police records detail when and on what basis individuals are arrested by the WPD.  App. 67–68; App. 73.  They also include information concerning what charges, if any, were levied against a potential class member.  App. 67–68; App. 73; App. 93 (Am. Compl. ¶¶ 38–43).  When no charges were sought, the records can include specific notations that indicate an individual has been subjected to an investigatory detention. *See* App. 67 (notation "ID" put in lieu of any charges).

The "administrative feasibility" envisioned by the Third Circuit, "means that identifying class members is a manageable process that does not require much, if any, individual factual inquiry." *Carrera*, 727 F.3d at 307–08 (quoting William B. Rubenstein & Alba Conte, *Newberg on Class Actions* § 3:3 (5th ed. 2011)).  This requirement cannot be satisfied "if individualized fact-finding or mini-trials will be

required to prove class membership." *Id.* at 307. The district court, in denying class certification, found that "identification of potential class members of the proposed class would require the court to engage in individualized fact finding and mini-trials." App. 6. While the court was using the correct law, its analysis represents an improper application of that law to the facts of the case. Accordingly, the district court abused its discretion in reaching this conclusion.

Courts have rejected the notion that certifying a class in this context would require a "parade of mini-trials." In *Stinson v. City of New York*, plaintiffs sought class certification alleging "that the NYPD is engaged in a widespread pattern and practice of issuing summonses to individuals without probable cause" and that the officers "are explicitly instructed to issue summonses regardless of whether any crime or violation has occurred in order to meet a minimum quota requirement." 282 F.R.D. 360, 363 (S.D.N.Y. 2012). The proposed class for the litigation would have included "all persons who have been or will be issued a summons in the absence of probable cause for offenses that were never committed and whose summonses were ultimately dismissed prior to trial." *Id.* at 374.

The *Stinson* court began its analysis by explaining that the standard for ascertainability is not demanding. *Id.* at 373. Rather, the factor is "designed only to prevent the certification of a class whose membership is truly indeterminable." *Id.* at 373–74 (quoting *Gortat v. Capala Bros., Inc.*, No. 07-CV-3629(ILG), 2010 WL

1423018, at *2 (E.D.N.Y. Apr. 9, 2010)).  In turning to the facts of the case, the court found that the original class might be over-inclusive, but that it could be an ascertainable class if it were limited to those summons dismissed "upon a judicial finding of facial insufficiency and who were ticketed without probable cause." *Id.* at 377.  The court further held, that even in this newly limited class, the defendants would be free to "challenge any of these presumptive class members on grounds that their summonses were dismissed for reasons other than a lack of probable cause." *Id.*

In response, the defendants contended that even this limitation would require the court "to engage in tens of thousands of individualized inquiries on the merits of each putative plaintiff's case in order to determine who is in the class." *Id.*  The court, however, was not convinced.  Citing to the Second Circuit case of *Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010), the *Stinson* court noted that "[t]o the extent any individualized issues arise affecting the manageability of the class, it is within the Court's capability to address them."  *Stinson*, 282 F.R.D. at 379.  In *Brown*, the Second Circuit explained that a district court

> possesses tools with which to manage the individualized inquiries . . . including creating subclasses, decertifying the class with respect to claims where individualized inquiries become too burdensome, and holding separate trials for plaintiffs subject to individual defenses that remain after the common questions of law and fact are resolved.

*Brown*, 609 F.3d at 486.

In the present case, the district court attempts to distinguish *Stinson* by noting that the case involved "two levels of review" including "a judicial finding of facial insufficiency." App. 5–6. The *Stinson* court did not, in reaching its conclusion, suggest that its proposed limited class would somehow remove the possibility of a need for individualized assessment. On the contrary, the court specifically noted that defendants would retain the ability to "challenge any of the[] presumptive class members on grounds that their summonses were dismissed for reasons other than a lack of probable cause." *Stinson*, 282 F.R.D. at 377. Moreover, the present case also provides examples of prior determination as to a lack of probable cause.

Individuals who would be members of the proposed class include those persons who were subjected to WPD's "investigative detention" without ever having been charged with a criminal offense. Murrey, Medley, Griffin, and El were never charged with an offense stemming from their investigative detentions. App. 98–99 (Am. Compl. ¶¶ 110, 127). In these instances, the Plaintiff-Appellants were handcuffed, searched, questioned and imprisoned. App. 96–99 (Am. Compl. ¶¶ 77–109, 116–125). At the conclusion of their investigations, the WPD officers decided not to seek any charges. App. 98–99 (Am. Compl. ¶¶ 110, 127).

It strains credulity to suggest that, having gone through this extensive process, the WPD officers would decline to seek charges for which they felt they had probable cause. As a result, for such individuals, a layer of review by the WPD itself

14

already exists. An additional layer of judicial review prior to the present case would be impossible given this fact. A court cannot review a probable cause determination that law enforcement itself did not believe in enough to even attempt to argue.

The named Plaintiff-Appellants are not the only individuals to have been placed in this position. The Turnkey Log contains readily accessible data on such individuals. App. 93 (Am. Compl. ¶¶ 38–41). That record also contains information on individuals charged with resisting arrest, but who were never charged with any crime that would have subjected them to such an arrest. *Id.* (Am. Compl. ¶¶ 43–44).

In *Casale v. Kelly*, the court faced a similar situation. 257 F.R.D. 396 (S.D.N.Y. 2009). The plaintiffs in *Casale* alleged that they had been "falsely arrested and maliciously prosecuted" because of the enforcement of a law "declared unconstitutional over twenty years ago." *Id.* at 401. The court noted that individualized analysis may be necessary to determine if probable cause had been present for some other offense, and would thus provide a defense against a false arrest claim. *Id.* at 411. Ultimately, however, the court decided that "this does not demand the denial of class certification." *Id.* In reaching that conclusion, the court reasoned that "[i]t is implausible that in more than a *de minimis* number of cases did police officers have probable cause to arrest a plaintiff for *another* crime but chose solely to charge violations of an unconstitutional provision." *Id.* That same implausibility exists in the present case. Accordingly, just as in *Casale*, this potential

15

for an alleged defense of probable cause "does not demand denial of class certification." *Id.*

Ascertainability requires a plaintiff to show that (1) the class is "defined with reference to objective criteria"; and (2) there is "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd*, 784 F.3d at 163 (quoting *Hayes*, 725 F.3d at 355). In the present case, there is a readily available source of objective criteria: the Turnkey Log. Moreover, courts have recognized that the mere possibility of a probable cause determination will not result in an unascertainable class. The present case contains a similar type of the prior review for which the district court distinguished *Stinson*. As a result, the district court erred in its application of the law to the facts present. Such error constitutes an abuse of discretion.

The district court, having abused its discretion in finding that the Plaintiff-Appellants failed to meet the necessary showing of ascertainability, did not address any of the other factors necessary for class certification. App. 6. The Magistrate Judge's R&R, which was adopted by the district court, does discuss these additional elements. App. 7–32 (R&R). That recommendation proposed that the Plaintiff-Appellants had, in addition to ascertainability, failed to establish the numerosity and adequacy factors of Rule 23(a). App. 22. It also suggested that certification would be improper under both Rule 23(b)(2) and Rule 23(b)(3). These findings were in

error and the adoption of the Magistrate Judge′s R&R that contained the analysis also constituted an abuse of discretion by the district court.

### D. Numerosity

In order to be certified, a class must be ″so numerous that joinder of all members is impracticable.″ Fed. R. Civ. P. 23(a)(1).  The Third Circuit has held that ″[n]o minimum number of plaintiffs is required to maintain a suit as a class action.″ *Stewart v. Abraham*, 275 F.3d 220, 226 (3d Cir. 2001).  Generally, courts have found that ″if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.″ *Id.* at 226–27.  Courts within the Third Circuit have, however, certified classes with as few as 14 members.  *See Grant v. Sullivan*, 131 F.R.D. 436 (M.D. Pa. 1990).  Instead of focusing on just the number of plaintiffs, courts ″evaluate impracticability of joinder in terms of three considerations: (1) the size of the putative class; (2) the geographic location of the members of the class; and (3) the relative ease or difficulty in identifying members of the class for joinder purposes.″ *Ardrey v. Fed. Kemper Ins. Co.*, 142 F.R.D. 105, 110 (E.D. Pa. 1992) (citing *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 131–32 (1st Cir. 1985), *cert. denied*, 476 U.S. 1172 (1986), and *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986)).

The R&R begins, and ends, its analysis with the observation that the "five plaintiffs named in the amended complaint are not sufficient in number to warrant class certification." App. 14. The Amended Complaint, however, explains that the class size could reach into the thousands. App. 12. The Magistrate Judge acknowledged that the "turnkey log and other evidence referenced by plaintiffs may supply the identities of additional class members sufficient to meet the numerosity requirement." *Id.* The R&R recognized that the Third Circuit demands a "rigorous analysis of the evidence and arguments put forth" to determine whether a proposed class conforms to the requirements of Rule 23(a). *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012). The Magistrate Judge, nevertheless, did not conduct such analysis.

Instead, the R&R concluded that pre-certification discovery would be futile and that the numerosity requirement had not been met. App. 14–15, 22. That pre-certification discovery would not be futile will be discussed at greater length. *See* Infra § II. The ultimate determination that numerosity was not met, based solely upon the number of named Plaintiffs and in the absence of any of the rigorous analysis demanded by the Third Circuit, evidenced both an errant conclusion of law and an improper application of law to the facts of the case.

### E. Adequacy

In order to find that class representatives will fairly and adequately protect the interests of the class, a court must determine "(1) whether the representatives' interests conflict with those of the class and (2) whether the class attorney is capable of representing the class." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 185 (3d Cir. 2001), *as amended* (Oct. 16, 2001). The R&R adopted by the district court found no problem with the second of these two criteria. *See* App. 18. Instead, the Magistrate Judge found that adequacy was not met "due to foreseeable conflicts between Wright and the proposed class." *Id.* Specifically, the Magistrate Judge noted that Wright may fall outside the scope of the proposed class because he had been charged with two misdemeanors. *Id.*

The Third Circuit recognizes that "in most cases as long as one of the representatives is adequate, the adequacy of representation requirement is met." *Grasty v. Amalgamated Clothing & Textile Workers Union, AFL-CIO, CLC*, 828 F.2d 123, 128 (3d Cir. 1987), *overruled in part on other grounds by Reed v. United Transp. Union*, 488 U.S. 319 (1989). This general rule concerning adequacy is also recognized by courts in the Third Circuit's sister circuits. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 n.2 (9th Cir. 2001) (citing *Grasty* and noting that "the adequacy-of-representation requirement is satisfied as long as one of the class representatives is an adequate class representative"); *In re S. Cent. States Bakery Prod. Antitrust*

19

*Litig.*, 86 F.R.D. 407 (M.D. La. 1980) (since no legal entity with name used by one plaintiff in original complaint existed, that plaintiff was an inadequate representative and could not represent class, but another named plaintiff could proceed with the action); *Weisman v. Darneille*, 78 F.R.D. 671, 673 (S.D.N.Y. 1978) ("Rejection of one plaintiff as an adequate class representative does not preclude our granting class certification to another representative plaintiff.").

The R&R does not discuss any of the other named Plaintiff-Appellants. *See* App. 18.  Nevertheless, none of the other named Plaintiff-Appellants suffer from the same supposed conflict.  Even if it is the existence of charges that puts Wright's adequacy into question, neither Murrey, Medley, Griffin, nor El was ever charged with an offense stemming from their investigative detentions.  App. 98–99 (Am. Compl. ¶¶ 110, 127).  It is therefore the case that all four individuals would remain, under the reasoning of the R&R, adequate representatives.  Because the Third Circuit requires only one named representative to satisfy the adequacy requirement, and in the present case there are at least four, the Plaintiff-Appellants can satisfy the adequacy requirement.

## F.  Federal Rule of Civil Procedure 23(b)(2)

In addition to the requirements of Rule 23(a), a class action can be maintained if

> the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Fed. R. Civ. P. 23(b)(2). The Third Circuit has recognized that "this requirement is almost automatically satisfied in actions primarily seeking injunctive relief." *Baby Neal*, 43 F.3d at 58. Moreover, "[i]t is the (b)(2) class which serves most frequently as the vehicle for civil rights actions and other institutional reform cases that receive class action treatment." *Id.* at 58–59. The injunctive class provision was designed specifically with these types of actions in mind. *Id.* at 59 (citing H. Newberg & A. Conte, *1 Newberg on Class Actions* § 3.10, at 4–39 (1992)).

The Plaintiff-Appellants primarily seek such injunctive and declaratory relief. App. 100–101 (Am. Compl. ¶¶ 137–144). In addition to this relief, the Complaint also seeks "all lawful damages." App. 102 (Am. Compl. ¶ 5). It was this additional request that led to the Magistrate Judge finding certification to be inappropriate under Rule 23(b)(2).

The Magistrate Judge found that Plaintiffs failed to meet the requirements of Rule 23(b)(2) because Plaintiff-Appellants also seek compensatory damages, finding that "the requested money damages are not incidental to the injunctive and declaratory relief sought." App. 20. The Magistrate Judge reasoned that

21

"determining each class member's monetary damages will require an individualized analysis of the factual circumstances of his or her detention." *Id.* The question of "incidental damages" set forth by the R&R comes from the Fifth Circuit's analysis that "monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998). Whether damages are incidental can be analyzed in terms of "the extent to which the various forms of requested monetary relief would flow directly from a finding of liability on the plaintiffs' claims for class-wide injunctive and declaratory relief." *Id.* at 416.

In addressing the question of incidental damages with respect to similar civil rights violations to those in question, the *Stinson* court was faced with a similar challenge. The defendants in *Stinson* objected to certification under Rule 23(b)(2), among other reasons, because they claimed that "Plaintiffs' individualized compensatory damages, rather than injunctive relief, is the predominant form of relief sought." *Stinson*, 282 F.R.D. at 381. The court, however, noted two important factors. First, the "[d]efendants' alleged unconstitutional practice of issuing summonses without probable cause represents a threat to personal liberty." *Id.* Second, while the size of that class was large, "the Amended Class Action Complaint reveals Plaintiffs to have each suffered a small amount of quantifiable damage, thereby suggesting that receipt of monetary damages is not the motivation behind

this suit." *Stinson*, 282 F.R.D. at 381.  Given these considerations, the *Stinson* court determined that "[a]though the class does seek money damages, [d]efendants' contention that money damages are the predominant form of relief sought is unsupported." *Id.*

The *Stinson* court's reasoning is just as applicable in the present case.  The Defendant-Appellee is alleged to have been engaged in an unconstitutional practice of handcuffing, transporting, searching, and imprisoning individuals based solely upon reasonable suspicion of a crime.  Such behavior is a direct threat to personal liberty.  Additionally, while the class of individuals potentially numbers in the thousands, the monetary damages associated with each individual is likely to be rather small.  The investigative detention policy sets its own time limit at only two hours.  App. 90–91 (Am. Compl. ¶¶ 27–29).  The significance of the WPD routinely and unconstitutionally imprisoning individuals cannot be overstated.  But the potential monetary damages associated with those two hours of imprisonment should not be overestimated.  As with *Stinson*, the potential of the relief sought suggests that monetary damages are not the motivation behind this suit.  Accordingly, any monetary relief cannot be understood to predominate the injunctive and declaratory relief and is, therefore, incidental to that relief.  Because any monetary damages sought are incidental to the declaratory and injunctive relief, class certification is appropriate under Rule 23(b)(2).

A number of courts have also begun to recognize the possibility that when a class action seeks both injunctive relief and monetary damages, the best approach may be to certify classes separately under both Rule 23(b)(2) and Rule 23(b)(3).  The *Stinson* court also conducted this analysis and concluded that so long as a court "engages in the analysis necessary under Rule 23(b)(2) and Rule 23(b)(3)," it is possible to certify "a class under Rule 23(b)(2) for purposes of injunctive relief and under Rule 23(b)(3) for purposes of money damages."  *Stinson*, 282 F.R.D. at 381; *see also Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 428 n.15 (6th Cir. 2012); *Bristol Vill., Inc. v. Louisiana-Pac. Corp.*, 916 F. Supp. 2d 357, 370 (W.D.N.Y. 2012); *Huyer v. Wells Fargo & Co.*, 295 F.R.D. 332, 344 (S.D. Iowa 2013).  To consider this type of dual certification, however, it is first necessary to demonstrate that certification would also be appropriate under Rule 23(b)(3).

## G. Federal Rule of Civil Procedure 23(b)(3)

The Supreme Court has explained that, to qualify for certification under Rule 23(b)(3),

> a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must "predominate over any questions affecting only individual members"; and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy."

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).  In finding that certification under Rule 23(b)(3) was improper, the Magistrate Judge reasoned that, in the present case, the predominance requirement could not be met.  App. 21.

The question of predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Considering whether, in a given case, questions of law or fact common to class members predominates "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). Only when "proof of the essential elements of the cause of action requires individual treatment" is certification unsuitable.  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001), *as amended* (Oct. 16, 2001).  The Second Circuit has reached a similar conclusion, holding that

> [c]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.

*Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).  This type of generalized proof, which does not require individual treatment, is present in the case at bar.

The present underlying cause of action alleges municipal liability for deprivation of civil rights under 42 U.S.C. § 1983. App. 99–100 (Am. Compl. ¶¶ 128–136). The essential elements of such a claim require that a plaintiff

> (1) identify an allegedly unconstitutional policy or custom; (2) demonstrate that the municipality, through its deliberate and culpable conduct, was the "moving force" behind the injury alleged; and (3) demonstrate a direct causal link between the municipal action and the alleged deprivation of federal rights.

*Holmes v. City of Wilmington*, 79 F. Supp. 3d 497, 511 (D. Del. 2015) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997)). Evidence related to the first element, an unconstitutional policy or custom, concerns itself solely with the policies and practices of the Defendant. Accordingly, the same general evidence concerning WPD policies, practices, customs and the implementation of these by the WPD would be applicable to all potential members of the class. *See, e.g.*, App. 69–72 (Dep. of Ofc. Gestwicki); App. 75–80 (Dep. of Ofc. Schifano); App. 90–93 (Am. Compl. ¶¶ 27–37).

Moreover, generalized proof will be equally as important in proving the second and third elements. The Supreme Court has explained that when "a plaintiff claims that a particular municipal action *itself* violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward." *Bd. of Cnty. Comm'rs*, 520 U.S. at 404. The reason for this is twofold. First, because "proof that a municipality's legislative body or authorized decisionmaker has

26

intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably." *Id.* at 405. Second, "the conclusion that the action taken or directed by the municipality or its authorized decisionmaker [sic] itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains." *Id.*

The same type of general proof concerning WPD directive 6.10(K), as well as other WPD policies, practices, and customs, can be used by all of the class members to demonstrate that the municipal policy/custom itself violates federal laws. *See, e.g.*, App. 69–70 (Dep. of Ofc. Gestwicki at 44:8–45:24); App. 75, 79–80 (Dep. of Ofc. Schifano 71:4–11, 210:23–211:6, 212:1–6, 212:22–213:20). This evidence does not concern how the directive was implemented during a particular encounter; rather, it focuses on those against how it is implemented in every encounter. Because this evidence can be used to prove the elements of the underlying allegation with respect to all members of the class, the present case does not require the type of "individual treatment" that the Third Circuit has warned against. In the absence of a need for such "individual treatment," common questions predominate and certification is appropriate under Rule 23(b)(3).

The Complaint also alleges municipal liability under the theory of failure to train. App. 99–100. Liability for failure to train under 42 U.S.C. § 1983 requires a plaintiff to show "that the failure amounts to 'deliberate indifference' to the rights of

persons with whom those employees will come into contact." *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).    This "deliberate indifference" can be shown by demonstrating that

> (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.

*Id.*  Once again, the evidence used to prove these elements will apply to all of the members of the class.

None of the three elements concern themselves with the facts of a particular encounter.  Instead the focus is on a type of situation that can arise: in this case, an investigative detention.  The elements then focus, not on the Plaintiffs, but on the Defendant.  What did the policymakers know?  Does the situation generally involve a difficult choice or does the Defendant merely have a history of mishandling it?  What are the consequences of a wrong choice by the Defendant normally?  These are the questions that must be answered, and those answers do not focus on the individual treatment of any one particular Plaintiff.

While neither the District Court nor the Magistrate Judge found otherwise, it is also worth noting that class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The reason for this, as explained by the Supreme Court, is that

28

> [t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem*, 521 U.S. at 617 (citing *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).  As previously discussed, the individuals deprived of their rights under Directive 6.10(K) face unlawful detention for two hours.  *See* App. 90–91 (Am. Compl. ¶ 29).  Two hours of unlawful imprisonment is not insignificant, but the resulting monetary damages likely are.  The class action was designed to allow individuals such as the Plaintiff-Appellants and the proposed members of their class to defend their rights.  Accordingly, it is superior to all other available methods in a case such as this.

When, as here, common questions of law and fact predominate over questions affecting individual members, then class certification is appropriate under Rule 23(b)(3).  *Amchem*, 521 U.S. at 615.  Certification is equally appropriate when, as here, minimal potential recoveries make a class action the superior method of adjudication. In focusing merely on differences between the named plaintiffs and seemingly ignoring the common questions of law and fact that permeate the Plaintiff-Appellants′ allegations, the Magistrate Judge erred in applying the law to the facts of this case.  By adopting the R&R, the District Court committed that same error.

## II.    The District Court Erred in Denying the Motion to Compel Pre-Certification Discovery as Moot and Pre-Certification Discovery Is Appropriate

### A. Standard of Review

The standard of review over the District Court′s mootness determination is plenary, that is, *de novo*. *See Burkey v. Marberry*, 556 F.3d 142, 146 (3d Cir. 2009); *Dixon Ticonderoga Co. v. Estate of O′Connor*, 248 F.3d 151, 161 (3d Cir. 2001). When a circuit court reviews a decision *de novo*, ″no form of appellate deference is acceptable. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991).

### B. Mootness of Pre-Certification Discovery

A motion is moot when ″changes in circumstances . . . have forestalled any occasion for meaningful relief.″ *Artway v. Attorney Gen. of State of N.J.*, 81 F.3d 1235, 1246 (3d Cir. 1996) (citing *Huber v. Casablanca Indus., Inc.*, 916 F.2d 85, 107 (3d Cir. 1990)); *see Matter of Establish Inspection of Metal Bank of Am., Inc.*, 700 F.2d 910, 913 (3d Cir. 1983) (″an issue is not ′live′ if reversal of the trial court's order would provide the appellant ′with no actual, affirmative relief′″).

The District Court found that the issue of pre-certification discovery was moot, but did not provide reasons. App. 6. Given the general rule, however, it is safe to surmise that, having determined that the Plaintiffs could not meet the ascertainability necessary for class certification, the District Court felt that any

30

discovery with respect to other factors would be futile.  A similar logic was employed by the Magistrate Judge, though the R&R suggests that any supposed futility stems from difficulties under Rule 23(b).  App. 14–15, 17–18.  As demonstrated, however, the District Court′s ruling that ascertainability cannot be established constituted an abuse of discretion.  *See Supra* § I C.  Accordingly, the question of whether or not pre-certification discovery could provide any meaningful relief remains open.

## C. Appropriateness of Pre-Certification Discovery

The Plaintiff-Appellants contend that the facts presented are sufficient to certify their proposed class.  *See* App. 49–57 (Motion for Class Certification).  If this Court agrees, then pre-certification discovery would remain moot, as its intended goal would already be achieved.  Nevertheless, if this Court were to believe that the Plaintiff-Appellants have not yet provided a sufficient showing to establish certification, then pre-certification discovery would provide a meaningful tool allowing the Plaintiff-Appellants to make the necessary showing.

The Third Circuit has instructed its district courts that where appropriate, they must ″delve beyond the pleadings to determine whether the requirements for class certification are satisfied.″  *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585,

596 (3d Cir. 2009) (citing *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 316). Sister circuits have echoed this command.

The Fifth Circuit has noted that "a certain amount of discovery is essential in order to determine the class action issue and the proper scope of a class action." *Pittman v. E. I. duPont de Nemours & Co.*, 552 F.2d 149, 150 (5th Cir. 1977).  As a result, a "plaintiff is entitled to some leeway in attempting to define the proper parameters of his proposed class." *Id.*  The Ninth Circuit has equally held that "[t]he propriety of a class action cannot be determined in some cases without discovery, as for example, where discovery is necessary to determine the existence of a class or set of subclasses."  *Kamm v. California City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975).  In cases such as these, denial of that discovery constitutes an abuse of the district court's discretion.  *Id.*

In the present case, the Magistrate Judge suggested that discovery may prove helpful in determining both the numerosity and typicality of the proposed class. App. 14–15, 17–18.  Specifically, the Magistrate Judge acknowledged that "[t]he turnkey log and other evidence referenced by plaintiffs may supply the identities of additional class members sufficient to meet the numerosity requirement."  App. 14. Such evidence could also be useful, according to the R&R, to determine whether the class as a whole will be subject to the same defenses as the class representatives. App. 17.

32

The First Circuit has recognized that,

> [t]o pronounce finally, prior to allowing any discovery, the non-existence of a class or set of subclasses, when their existence may depend on information wholly within defendants' ken, seems precipitate and contrary to the pragmatic spirit of Rule 23.

*Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972).  This is precisely the type of situation present in this case.  The evidence to which the Magistrate Judge alludes are records controlled by the Defendant-Appellee.  In only a few pages of these logs, Plaintiff-Appellants are already able to identify three possible members of their proposed class.  App. 67–68.  That brief excerpt covers only one day in July.  *Id.* This same behavior of the WPD, stretched out over weeks, months, even years could easily have resulted in thousands of class members.  In order to better be able to establish the existence of the proposed class, the records held by the Defendant-Appellee could prove extremely meaningful.

The Third Circuit demands rigorous analysis in order to determine conformance with Rule 23.  *Marcus*, 687 F.3d at 591.  If the Court does not believe that such conformance has yet been established, then pre-certification discovery is appropriate.  The District Court's determination that the question of discovery was moot stemmed from a ruling constituting an abuse of discretion.  If questions still remain as to whether the Plaintiff-Appellants cannot satisfy the requirements of Rule 23, then granting pre-certification discovery would prove especially productive and beneficial.

33

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellants respectfully request this Court to enter an order reversing the District Court′s March 31, 2016 order denying Plaintiffs′ motion for class certification.   In the alternative, Plaintiff-Appellants respectfully request this Court to enter an order reversing the District Court′s March 31, 2016 order denying Plaintiffs′ motion to compel pre-certification discovery as moot.

Respectfully submitted,

/s/ Stephen P. Norman
Stephen P. Norman, Esquire, Bar No. 4620
The Norman Law Firm
30838 Vines Creek Road, Unit 3
Dagsboro, DE 19939
(302) 537-3788

## CERTIFICATION OF BAR MEMBERSHIP

I hereby certify that I am a member in good standing of the Bar of the Court

of Appeals for the Third Circuit.

/s/ Stephen P. Norman
Attorney for Plaintiff-Appellants
Date:  October 6, 2016

## CERTIFICATION OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7,727 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief was prepared in a proportionally spaced typeface using Microsoft Word 2013 with 14-point Times New Roman.

/s/ Stephen P. Norman
Attorney for Plaintiff-Appellants
Date:  October 6, 2016

## CERTIFICATION OF IDENTITY

In accordance with 3d Cir. L.A.R. 31.1(c), I hereby certify that the text of the

electronic brief is identical to the text in the paper copies.

/s/ Stephen P. Norman
Attorney for Plaintiff-Appellants
Date:  October 11, 2016

## CERTIFICATION OF VIRUS CHECK

In accordance with 3d Cir. L.A.R. 31.1(c), I hereby certify that the electronic file of this brief was scanned with Symantec Endpoint Protection Small Business Edition.  I further certify that no virus was detected by this scan.

/s/ Stephen P. Norman
Attorney for Plaintiff-Appellants
Date:  October 6, 2016

## CERTIFICATION OF SERVICE

I hereby certify that on the October 6, 2016, I electronically filed the foregoing brief and accompanying appendix with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system. Participants in the case, listed below, who are registered CM/ECF users were also served by the appellate CM/ECF system.

C. Malcolm Cochran, IV (#2377)
Richards, Layton & Finger, P.A.
920 N. King Street
Wilmington, DE 19801
(302) 651-7700

Christine D. Haynes (#4697)
Richards, Layton & Finger, P.A.
920 N. King Street
Wilmington, DE 19801
(302) 651-7700

Kelly E. Farnan (#4395)
Richards, Layton & Finger, P.A.
920 N. King Street
Wilmington, DE 19801
(302) 651-7700

/s/ Stephen P. Norman
Attorney for Plaintiff-Appellants
Date:  October 6, 2016