# In the
# United States Court of Appeals
# for the Third Circuit

---

No. 16-2722

---

JAYVON WRIGHT; ANTOINE MURREY;
KEITH MEDLEY; GREGORY GRIFFIN; RASHAD EL, individually
and on behalf of a class of others similarly situated,

*Appellants*,

v.

CITY OF WILMINGTON,

*Appellee.*

---

On Appeal from the United States
District Court for the District of Delaware

---

# Appendix
# Volume II (pages 33-103)

---

Stephen P. Norman, Esquire
30838 Vines Creek Road, Unit 3
Dagsboro, DE 19939
(302) 537-3788

Attorney for Appellants

# TABLE OF CONTENTS

**VOLUME I**                                                                    **Page**

D.I. 69 Third Circuit Order Granting Leave to Appeal ................. App. 1

D.I. 60 Memorandum Order of Judge Sue Robinson ................... App. 3

D.I. 52 Report & Recommendation of Magistrate
      Judge Sherry Fallon ....................................... App. 7


**VOLUME II**

Civil Docket for Case #: 1:13-cv-01966-SLR-SRF .................. App. 33

D.I. 3 Plaintiff Motion for Class Certification ..................... App. 49

D.I. 17 Plaintiff's Response to Defendant City of Wilmington's
      Motion for Protective Order and Plaintiff's Motion to
      Compel Discovery Concerning Plaintiff's First Request
      for Production of Documents .............................. App. 58

D.I. 30-4 Wilmington Police Department Turnkey Prisoner
      Log ..................................................... App. 67

Excerpts from D.I. 30-3 Deposition of Officer James E.
      Gestwicki .............................................. App. 69

D.I. 49-4 Prisoner Intake Log ................................. App. 73

D.I. 33-1 Excerpts from D.I. 33-1 Deposition of Officer Ralph
      Schifano ............................................... App. 75

Excerpts from DI 49-2 Deposition of Sergeant John O'Connor ......... App. 81

D.I. 61 First Amended Complaint ............................... App. 84

APPEAL,CASREF,MEDIATION-SRF

**U.S. District Court**
**District of Delaware (Wilmington)**
**CIVIL DOCKET FOR CASE #: 1:13-cv-01966-SLR-SRF**

Wright et al v. City of Wilmington
Assigned to: Judge Sue L. Robinson
Referred to: Judge Sherry R. Fallon
Case in other court: Third Circuit, 16-02722
Cause: 42:1983 Civil Rights Act

Date Filed: 11/21/2013
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

<u>Plaintiff</u>

**Jayvon Wright**                      represented by   **Stephen Price Norman**
The Norman Law Firm
30838 Vines Creek Road, Suite 3
Dagsboro, DE 19939
302-537- 3788
Fax: 302-537-3799
Email:
snorman@thenormanlawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Charles Herr**
Law Office of Daniel C. Herr LLC
1225 North King Street
Suite 1000
Wilmington, DE 19801
(302) 483-7060
Fax: (302) 483-7065
Email: DHerr@dherrlaw.com
*TERMINATED: 04/29/2016*

<u>Plaintiff</u>

**Antoine Murrey**                     represented by   **Stephen Price Norman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Charles Herr**
(See above for address)
*TERMINATED: 04/29/2016*

<u>Plaintiff</u>

represented by   **Stephen Price Norman**
(See above for address)

App. 33

Keith Medley
*individually and on behalf of a class of*
*others similarly situated*

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Daniel Charles Herr
(See above for address)
*TERMINATED: 04/29/2016*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

Gregory Griffin                    represented by    Stephen Price Norman
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Daniel Charles Herr
(See above for address)
*TERMINATED: 04/29/2016*

**Plaintiff**

Rashad El                    represented by    Stephen Price Norman
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Daniel Charles Herr
(See above for address)
*TERMINATED: 04/29/2016*

V.

**Defendant**

City of Wilmington                    represented by    C. Malcolm Cochran , IV
Richards, Layton & Finger, PA
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7506
Email: cochran@rlf.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Christine Dealy Haynes
Richards, Layton & Finger, PA
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7508
Email: haynes@rlf.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anthony Gerard Flynn , Jr.**
ADDRESS EXPIRED / UNKNOWN
UNDELIVERABLE EMAIL
(302) 651-7844
*TERMINATED: 06/11/2015*

**Kelly E. Farnan**
Richards, Layton & Finger, PA
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7705
Email: farnan@rlf.com
*ATTORNEY TO BE NOTICED*

**Travis Steven Hunter**
Richards, Layton & Finger, PA
One Rodney Square
920 N. King Street
Wilmington, DE 19801
302-651-7564
Email: hunter@rlf.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/21/2013 | 1 | COMPLAINT filed with Jury Demand against City of Wilmington - Magistrate Consent Notice to Pltf. ( Filing fee $ 400, receipt number 0311-1412813.) - filed by Jayvon Wright, Antoine Murrey, Keith Medley. (Attachments: # 1 Civil Cover Sheet)(cla, ) (Entered: 11/22/2013) |
| 11/21/2013 | 2 | Notice, Consent and Referral forms re: U.S. Magistrate Judge jurisdiction. (cla, ) (Entered: 11/22/2013) |
| 11/21/2013 | 3 | MOTION to Certify Class - filed by Keith Medley, Antoine Murrey, Jayvon Wright. (cla, ) (Entered: 11/22/2013) |
| 11/22/2013 | | Summons Issued with Magistrate Consent Notice attached as to City of Wilmington on 11/22/2013. Requesting party or attorney should pick up issued summons at the Help Desk, Room 4209, or call 302-573-6170 and ask the Clerk to mail the summons to them. (cla, ) (Entered: 11/22/2013) |
| 11/27/2013 | | Case Assigned to Judge Sue L. Robinson. Please include the initials of the Judge (SLR) after the case number on all documents filed. (rjb) (Entered: 11/27/2013) |
| 12/05/2013 | 4 | NOTICE of Appearance by Daniel Charles Herr on behalf of Keith Medley, Antoine Murrey, Jayvon Wright (Herr, Daniel) (Entered: 12/05/2013) |

| 12/10/2013 | 5 | NOTICE OF SERVICE of Plaintiff's First Request For Production of Documents Directed to Defendant by Keith Medley, Antoine Murrey, Jayvon Wright.(Herr, Daniel) (Entered: 12/10/2013) |
|---|---|---|
| 12/16/2013 | 6 | SUMMONS Returned Executed by Jayvon Wright, Antoine Murrey, Keith Medley. City of Wilmington served on 12/4/2013, answer due 12/26/2013. (Norman, Stephen) (Entered: 12/16/2013) |
| 12/17/2013 | 7 | MOTION for Extension of Time to *(Stipulated Order Extending Time to Respond to Complaint and Motion for Class Certification)* - filed by City of Wilmington. (Cochran, C.) (Entered: 12/17/2013) |
| 12/18/2013 | | SO ORDERED, re 7 MOTION for Extension of Time to *(Stipulated Order Extending Time to Respond to Complaint and Motion for Class Certification)* filed by City of Wilmington, Set/Reset Answer Deadlines: City of Wilmington answer due 1/24/2014., Set Briefing Schedule: re 3 MOTION to Certify Class. (Answering Brief due 1/24/2014.). Signed by Judge Sue L. Robinson on 12/18/2013. (fms) (Entered: 12/18/2013) |
| 01/13/2014 | 8 | NOTICE of Appearance by Christine Dealy Haynes on behalf of City of Wilmington (Haynes, Christine) (Entered: 01/13/2014) |
| 01/13/2014 | 9 | NOTICE of Appearance by Anthony Gerard Flynn, Jr on behalf of City of Wilmington (Flynn, Anthony) (Entered: 01/13/2014) |
| 01/13/2014 | 10 | MOTION to Dismiss for Failure to State a Claim *(Defendant City of Wilmington's Motion to Dismiss the Complaint or, in the alternative, to Strike)* - filed by City of Wilmington. (Attachments: # 1 Text of Proposed Order) (Cochran, C.) (Entered: 01/13/2014) |
| 01/13/2014 | 11 | OPENING BRIEF in Support re 10 MOTION to Dismiss for Failure to State a Claim *(Defendant City of Wilmington's Motion to Dismiss the Complaint or, in the alternative, to Strike)* filed by City of Wilmington.Answering Brief/Response due date per Local Rules is 1/30/2014. (Cochran, C.) (Entered: 01/13/2014) |
| 01/13/2014 | 12 | RESPONSE to Motion re 3 MOTION to Certify Class filed by City of Wilmington. (Cochran, C.) (Entered: 01/13/2014) |
| 01/13/2014 | 13 | AFFIDAVIT of John Wright re 12 Response to Motion *(Affidaivit of John Martin in Support of Defendant City of Wilmington's Response to Plaintiff's Motion for Class Certification and Motion for Protective Order)* filed by City of Wilmington. (Attachments: # 1 Exhibit A)(Cochran, C.) (Entered: 01/13/2014) |
| 01/13/2014 | 14 | NOTICE OF SERVICE of Defendant's Responses to Plaintiffs' 1st Request for Production of Documents filed by City of Wilmington.(Cochran, C.) (Entered: 01/13/2014) |
| 01/13/2014 | 15 | MOTION for Protective Order - filed by City of Wilmington. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Cochran, C.) (Entered: 01/13/2014) |
| 01/13/2014 | 16 | STATEMENT re 15 MOTION for Protective Order *[Statement Pursuant to Local Rule 7.1.1.]* by City of Wilmington. (Haynes, Christine) (Entered: 01/13/2014) |

| 01/17/2014 | 17 | RESPONSE to Motion re 15 MOTION for Protective Order -- *Plaintiffs' Response to Defendant City of Wilmington's Motion for Protective Order AND Plaintiffs' Motion to Compel Discovery Concerning Plaintiffs' First Request for Production of Documents* filed by Keith Medley, Antoine Murrey, Jayvon Wright. (Attachments: # 1 Exhibit EXHIBIT 1, # 2 Exhibit EXHIBIT 2, # 3 Exhibit EXHIBIT 3, # 4 Exhibit EXHIBIT 4, # 5 Exhibit EXHIBIT 5, # 6 Text of Proposed Order PROPOSED ORDER)(Herr, Daniel) (Entered: 01/17/2014) |
| 01/17/2014 | | MOTION to Compel (SEE D.I. 17) - filed by Keith Medley, Antoine Murrey, Jayvon Wright. (fms) (Entered: 01/27/2014) |
| 01/24/2014 | 18 | REPLY to Response to Motion re 3 MOTION to Certify Class *In Further Support of Plaintiff's Motion for Class Certification* filed by Keith Medley, Antoine Murrey, Jayvon Wright. (Herr, Daniel) (Entered: 01/24/2014) |
| 01/27/2014 | 19 | REPLY BRIEF re 15 MOTION for Protective Order , ANSWERING BRIEF re 17 Response to Motion (Motion to Compel),, *[Defendant City of Wilmington's Response to Plaintiffs' Motion to Compel and Reply in Further Support of its Motion for Protective Order]* by City of Wilmington. (Cochran, C.) Modified on 1/27/2014 (fms). (Entered: 01/27/2014) |
| 01/27/2014 | 20 | REQUEST for Oral Argument by City of Wilmington re 3 MOTION to Certify Class. (Cochran, C.) (Entered: 01/27/2014) |
| 01/27/2014 | 21 | REQUEST for Oral Argument by City of Wilmington re 15 MOTION for Protective Order . (Cochran, C.) (Entered: 01/27/2014) |
| 01/30/2014 | 22 | ANSWERING BRIEF in Opposition re 10 MOTION to Dismiss for Failure to State a Claim *(Defendant City of Wilmington's Motion to Dismiss the Complaint or, in the alternative, to Strike)* filed by Keith Medley, Antoine Murrey, Jayvon Wright.Reply Brief due date per Local Rules is 2/10/2014. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Text of Proposed Order)(Herr, Daniel) (Entered: 01/30/2014) |
| 02/10/2014 | 23 | REPLY BRIEF re 10 MOTION to Dismiss for Failure to State a Claim *(Defendant City of Wilmington's Motion to Dismiss the Complaint or, in the alternative, to Strike) [City of Wilmington's Reply Brief in Further Support of its Motion to Dismiss the Complaint or, in the Alternative, to Strike]* filed by City of Wilmington. (Attachments: # 1 Exhibit 1 - 3)(Cochran, C.) (Entered: 02/10/2014) |
| 02/10/2014 | 24 | REQUEST for Oral Argument by City of Wilmington re 10 MOTION to Dismiss for Failure to State a Claim *(Defendant City of Wilmington's Motion to Dismiss the Complaint or, in the alternative, to Strike)*. (Cochran, C.) (Entered: 02/10/2014) |
| 04/17/2014 | 25 | Letter to Court from Plaintiffs regarding Enclosed Declarations in Further Support of Plaintiffs' Motion for Class Certification and Plaintiffs' Efforts Towards Pre-Certification Discovery - re 3 MOTION to Certify Class, 5 Notice of Service. (Herr, Daniel) (Entered: 04/17/2014) |
| 06/25/2014 | | |

| | | |
|---|---|---|
| | | CORRECTING ENTRY: The order of 6/24/2014 scheduling ADR before Chief Magistrate Judge Thynge has been deleted from the docket as it was filed in this civil action in error. (nmfn) (Entered: 06/25/2014) |
| 06/25/2014 | 26 | ORDER REFERRING CASE to Magistrate Judge Sherry R. Fallon. Signed by Judge Sue L. Robinson on 6/25/2014. Motions referred to Sherry R. Fallon. (nmfn) (Entered: 06/25/2014) |
| 06/30/2014 | | ORAL ORDER- IT IS HEREBY ORDERED that: the court shall conduct a status teleconference on 7/14/2014 at 10:00 AM before Judge Sherry R. Fallon. Counsel for plaintiffs shall initiate the call to 302-573-4557. IT IS FURTHER ORDERED that: on or before 7/7/2014 the parties shall submit a joint status report. Ordered by Judge Sherry R. Fallon on 6/30/2014. (lih) (Entered: 06/30/2014) |
| 07/07/2014 | 27 | Joint STATUS REPORT by City of Wilmington. (Hunter, Travis) (Entered: 07/07/2014) |
| 07/07/2014 | 28 | NOTICE of Appearance by Travis Steven Hunter on behalf of City of Wilmington (Hunter, Travis) (Entered: 07/07/2014) |
| 07/10/2014 | | REQUEST: Per Magistrate Judge Fallon's Standing Order Regarding Courtesy Copies, which requires two (2) courtesy copies of all briefs and two (2) copies of any other document filed in support of any briefs (i.e., appendices, exhibits, declarations, affidavits etc.), it is requested that counsel submit to the Clerk's Office an additional copy of D.I. # 3 , 10 , 11 , 12 , 13 , 15 , 17 , 18 , 19 , 22 , 23 and 25 . (lih) (Entered: 07/10/2014) |
| 07/14/2014 | | Minute Entry for proceedings held before Judge Sherry R. Fallon - Telephone Conference held on 7/14/2014. (Court Reporter H. Triozzi (Hawkins Reporting).) (lih) (Entered: 07/15/2014) |
| 07/28/2014 | | MOTIONS REFERRED: 15 MOTION for Protective Order, 10 MOTION to Dismiss, 3 MOTION to Certify Class, MOTION to Compel. Motions referred to Sherry R. Fallon.(lih) (Entered: 07/28/2014) |
| 07/30/2014 | 29 | Letter to The Honorable Sherry R. Fallon from C. Malcolm Cochran, IV regarding oral argument scheduled for September 3, 2014. (Cochran, C.) (Entered: 07/30/2014) |
| 07/31/2014 | | ORAL ORDER- IT IS HEREBY ORDERED that: the court will hear oral argument re 15 MOTION for Protective Order, 10 MOTION to Dismiss, 3 MOTION to Certify and MOTION to Compel (SEE D.I. 17 ) on 9/3/2014 at 10:00 AM in Courtroom 6C before Judge Sherry R. Fallon. Counsel shall have two hours to present argument. Ordered by Judge Sherry R. Fallon on 7/31/2014. (lih) (Entered: 07/31/2014) |
| 08/28/2014 | 30 | MOTION to Amend/Correct re 1 Complaint - filed by Keith Medley, Antoine Murrey, Jayvon Wright. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit 1, # 4 Exhibit 2)Motions referred to Sherry R. Fallon.(Norman, Stephen) Modified on 8/29/2014 (lih). (Entered: 08/28/2014) |
| 08/29/2014 | | |

| | | |
|---|---|---|
| | | Set Answering Brief Deadline re 30 MOTION to Amend/Correct. Answering Brief/Response due date per Local Rules is 9/15/2014. (lih) (Entered: 08/29/2014) |
| 08/29/2014 | | ORAL ORDER- IT IS HEREBY ORDERED that: the oral argument set in this matter for 9/3/2014 is CANCELED. Ordered by Judge Sherry R. Fallon on 8/29/2014. (lih) (Entered: 08/29/2014) |
| 09/15/2014 | 31 | ANSWERING BRIEF in Opposition re 30 MOTION to Amend/Correct filed by City of Wilmington.Reply Brief due date per Local Rules is 9/25/2014. (Attachments: # 1 Exhibit A-B)(Cochran, C.) Modified on 9/16/2014 (lih). (Entered: 09/15/2014) |
| 09/15/2014 | 32 | AFFIDAVIT of Christine D. Haynes re 31 Answering Brief in Opposition filed by City of Wilmington. Attachments: # 1 Exhibit A-E)(Cochran, C.) Modified on 9/16/2014 (lih). (Entered: 09/15/2014) |
| 09/17/2014 | | NOTICE: Per Magistrate Judge Fallon's Standing Order Regarding Courtesy Copies, which requires two (2) courtesy copies of all briefs and two (2) copies of any other document filed in support of any briefs (i.e., appendices, exhibits, declarations, affidavits etc.), please submit to the Clerk's Office two copies of D.I. # 30 . (lih) (Entered: 09/17/2014) |
| 09/25/2014 | 33 | REPLY to Response to 30 MOTION to Amend/Correct filed by Keith Medley, Antoine Murrey, Jayvon Wright. (Attachments: # 1 Exhibit 1)(Norman, Stephen) Modified on 9/26/2014 (lih). (Entered: 09/25/2014) |
| 10/01/2014 | 34 | MOTION for Leave to File Excess Pages - filed by Keith Medley, Antoine Murrey, Jayvon Wright. Motions referred to Sherry R. Fallon.(Norman, Stephen) (Additional attachment(s) added on 10/15/2014: # 1 Text of Proposed Order) (lih). (Entered: 10/01/2014) |
| 10/01/2014 | 35 | MOTION to Strike 33 Reply to Response to Motion - filed by City of Wilmington. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order, # 3 7.1.1 Statement)Motions referred to Sherry R. Fallon.(Haynes, Christine) Modified on 10/7/2014 (lih). (Entered: 10/01/2014) |
| 10/01/2014 | | Set Answering Brief Deadline re 34 MOTION for Leave to File Excess Pages. Answering Brief/Response due date per Local Rules is 10/20/2014. (lih) (Entered: 10/07/2014) |
| 10/02/2014 | 36 | REQUEST for Oral Argument by City of Wilmington re 30 MOTION to Amend/Correct. (Haynes, Christine) Modified on 10/7/2014 (lih). (Entered: 10/02/2014) |
| 10/03/2014 | 37 | RESPONSE to Motion re 34 MOTION for Leave to File Excess Pages filed by City of Wilmington. (Attachments: # 1 7.1.1 Statement, # 2 Text of Proposed Order Proposed Order)(Haynes, Christine) Modified on 10/7/2014 (lih). (Entered: 10/03/2014) |
| 10/07/2014 | 38 | RESPONSE to Motion re 35 MOTION to Strike 33 Reply to Response to Motion filed by Keith Medley, Antoine Murrey, Jayvon Wright. (Attachments: |

| | | |
|---|---|---|
| | | # 1 Text of Proposed Order)(Norman, Stephen) Modified on 10/8/2014 (lih). (Entered: 10/07/2014) |
| 10/09/2014 | 39 | REPLY to Response to Motion re 34 MOTION for Leave to File Excess Pages filed by Keith Medley, Antoine Murrey, Jayvon Wright. (Norman, Stephen) (Entered: 10/09/2014) |
| 10/15/2014 | | CORRECTING ENTRY: Docket clerk has deleted the reply brief formerly filed at D.I. 40 due to document being filed improperly. Counsel is advised to re-file the document using the REPLY BRIEF event code rather than the response to motion event code. (lih) (Entered: 10/15/2014) |
| 10/15/2014 | 40 | REPLY BRIEF re 35 MOTION to Strike 33 Reply to Response to Motion filed by City of Wilmington. (Haynes, Christine) Modified on 10/15/2014 (lih). (Entered: 10/15/2014) |
| 10/15/2014 | | CORRECTING ENTRY: A proposed order has been attached to D.I. 34 . (lih) (Entered: 10/15/2014) |
| 03/06/2015 | | ORAL ORDER- Granting 34 MOTION for Leave to File Excess Pages, Denying as Moot 35 MOTION to Strike 33 Reply to Response to Motion. IT IS FURTHER ORDERED that: Defendant is given leave to file a surreply brief of no more than eleven pages re 30 MOTION to Amend/Correct on or before 3/16/2015. On or before 3/13/2015, the parties shall submit a joint status report of no more than four pages that addresses the status of all pending motions including whether any such motions should be withdrawn without prejudice to resubmit pending a decision re 30 MOTION to Amend/Correct; and identifying any such motions for which the parties request oral argument. Set Briefing Schedule and deadlines: re 30 MOTION to Amend/Correct. ( Surreply due by 3/16/2015, Status Report due by 3/13/2015.) Ordered by Judge Sherry R. Fallon on 3/6/2015. (lih) (Entered: 03/06/2015) |
| 03/13/2015 | 41 | Joint STATUS REPORT by City of Wilmington. (Cochran, C.) (Entered: 03/13/2015) |
| 03/16/2015 | 42 | SUR-REPLY BRIEF re 30 MOTION to Amend/Correct filed by City of Wilmington. (Haynes, Christine) (Main Document 42 replaced on 3/18/2015) (lih). Modified on 3/18/2015 (lih). (Entered: 03/16/2015) |
| 03/18/2015 | | CORRECTING ENTRY: Pursuant to the request of counsel, the pdf of D.I. 42 has been replaced with a revised version of the document to correct the case caption. (lih) (Entered: 03/18/2015) |
| 03/24/2015 | | NOTICE: Per Magistrate Judge Fallon's Standing Order Regarding Courtesy Copies, which requires two (2) courtesy copies of all briefs and two (2) copies of any other document filed in support of any briefs (i.e., appendices, exhibits, declarations, affidavits etc.), please submit to the Clerk's Office a copy of D.I. # 42 . (lih) (Entered: 03/24/2015) |
| 04/15/2015 | | ORAL ORDER- IT IS HEREBY ORDERED that: the court will hear oral argument re 30 MOTION to Amend/Correct and 10 MOTION to Dismiss for Failure to State a Claim on 6/17/2015 at 10:00 AM in Courtroom 6C before Judge Sherry R. Fallon. Counsel will collectively have one hour to present |

| | | argument. Ordered by Judge Sherry R. Fallon on 4/15/2015. (lih) (Entered: 04/15/2015) |
|---|---|---|
| 05/07/2015 | | ORAL ORDER- IT IS HEREBY ORDERED that: the oral argument set in this matter for 6/17/2015 at 10:00 AM in Courtroom 6C before Judge Sherry R. Fallon is converted into an oral argument and Rule 16(b) conference. The parties are required to prepare for the conference by conferring on all matters under Rule 16 and D. Del. LR 16 and shall submit a proposed Scheduling Order to the Court no later than June 11, 2015. The Court's form scheduling order is posted at http://www.ded.uscourts.gov (see Chambers, Judge Fallon, Forms). If the parties have any suggestions or modifications to the standard Scheduling Order, they may be included in the proposed order for consideration by the Court. (3) If any disputed issue exists regarding the proposed Scheduling Order, it shall be noted therein, along with the parties proposed language on the issue for consideration by the Court. Ordered by Judge Sherry R. Fallon on 5/7/2015. (lih) (Entered: 05/07/2015) |
| 06/11/2015 | 43 | NOTICE of Withdrawal of Anthony G. Flynn, Jr. by City of Wilmington (Flynn, Anthony) (Entered: 06/11/2015) |
| 06/11/2015 | 44 | Letter to The Honorable Sherry A. Fallon from C. Malcolm Cochran, IV regarding requesting a short extension of time to submit a proposed scheduling order. (Cochran, C.) Modified on 6/11/2015 (lih). (Entered: 06/11/2015) |
| 06/11/2015 | 45 | STIPULATION TO EXTEND TIME within which the parties shall submit a proposed scheduling order to June 15, 2015 - filed by City of Wilmington. (Haynes, Christine) (Entered: 06/11/2015) |
| 06/12/2015 | | SO ORDERED- re 45 STIPULATION TO EXTEND TIME within which the parties shall submit a proposed scheduling order to June 15, 2015. Signed by Judge Sherry R. Fallon on 6/12/2015. (lih) (Entered: 06/12/2015) |
| 06/15/2015 | 46 | Plaintiff's PROPOSED Scheduling Order by Keith Medley, Antoine Murrey, Jayvon Wright. (Norman, Stephen) Modified on 6/16/2015 (lih). (Entered: 06/15/2015) |
| 06/15/2015 | 47 | PROPOSED ORDER Defendant's Proposed Case Management Plan and Scheduling Order re 46 Proposed Order by City of Wilmington. (Attachments: # 1 Defendants June 15, 2015 Letter to Magistrate Judge Fallon)(Cochran, C.) (Entered: 06/15/2015) |
| 06/17/2015 | | Minute Entry for proceedings held before Judge Sherry R. Fallon - and Scheduling Conference and Oral Argument held on 6/17/2015 re 30 MOTION to Amend/Correct, 10 MOTION to Dismiss, 3 MOTION to Certify Class. (Court Reporter S. Ingram (Hawkins Reporting).) (lih) (Entered: 06/18/2015) |
| 06/24/2015 | 48 | Letter to Magistrate Judge Fallon from C. Malcolm Cochran, Esq. regarding estimate volume of the so-called "turn key prisoner logs" maintained by WPD. (Cochran, C.) (Entered: 06/24/2015) |
| 06/24/2015 | 49 | Letter to Hon. Sherry R. Fallon from Stephen P. Norman, Esquire regarding Production of Documents - re 48 Letter. (Attachments: # 1 Exhibit Email exchange 06-24-15, # 2 Exhibit Testimony of Sgt. John O'Connor. # 3 Exhibit |

| | | |
|---|---|---|
| | | Turnkey Prisoner Log, # 4 Exhibit Prisoner Intake Log)(Norman, Stephen) (Attachment 3 replaced on 7/1/2015) (rwc). (Entered: 06/24/2015) |
| 06/25/2015 | | ORAL ORDER- re 49 Letter. Defendant shall respond to plaintiffs' letter regarding the volume of intake logs by no later than 4:00 PM on 6/26/15. Following the submission of defendants reply, no further letters or supplemental briefing will be accepted by the count on this issue. Ordered by Judge Sherry R. Fallon on 6/25/2015. (lih) (Entered: 06/25/2015) |
| 06/26/2015 | 50 | Letter to Magistrate Judge Fallon from C. Malcolm Cochran, Esq. regarding Response to Mr. Norman's Letter to Court on June 24, 2015. (Attachments: # 1 Exhibit 1)(Cochran, C.) (Attachment 1 replaced on 7/1/2015) (rwc). (Entered: 06/26/2015) |
| 06/29/2015 | 51 | Letter to The Honorable Sherry R. Fallon from C. Malcolm Cochran, IV regarding the City's letter-response filed on June 26, 2015. (Cochran, C.) (Entered: 06/29/2015) |
| 07/01/2015 | | CORRECTING ENTRY: Replaced DI 49 Ex 3 and DI 50 Ex 1 with redacted versions per request of counsel. (rwc) (Entered: 07/01/2015) |
| 01/28/2016 | 52 | REPORT AND RECOMMENDATIONS- granting 30 MOTION to Amend/Correct, denying as moot 15 MOTION for Protective Order, denying as moot 10 MOTION to Dismiss, denying as moot 17 Motion to Compel, denying 3 MOTION to Certify Class. Please note that when filing Objections pursuant to Federal Rule of Civil Procedure 72(b)(2), briefing consists solely of the Objections (no longer than ten (10) pages) and the Response to the Objections (no longer than ten (10) pages). No further briefing shall be permitted with respect to objections without leave of the Court. Objections to R&R due by 2/16/2016. Signed by Judge Sherry R. Fallon on 1/28/2016. (lih) (Entered: 01/28/2016) |
| 02/12/2016 | 53 | OBJECTION to 52 Report and Recommendations by City of Wilmington. (Attachments: # 1 Certification to Objections to Report and Recommendation) (Cochran, C.) Modified on 2/16/2016 (lih). (Entered: 02/12/2016) |
| 02/12/2016 | 54 | Letter to The Honorable Sue L. Robinson from Christine D. Haynes regarding enclosing courtesy copies of the City of Wilmington's Objections to Report and Recommendation and associated filings. (Haynes, Christine) (Entered: 02/12/2016) |
| 02/16/2016 | 55 | OBJECTION to 52 Report and Recommendations by Keith Medley, Antoine Murrey, Jayvon Wright. (Attachments: # 1 Exhibit Ceftification)(Norman, Stephen) Modified on 2/16/2016 (lih). (Entered: 02/16/2016) |
| 02/16/2016 | 56 | Letter to Hon. Sue L. Robinson from Stephen P. Norman regarding Courtesy Copies of Filing - re 55 Objection to Report and Recommendations. (Norman, Stephen) (Entered: 02/16/2016) |
| 02/17/2016 | 57 | Letter to The Honorable Sue L. Robinson from Christine D. Haynes regarding enclosing courtesy copies of June 17, 2015 oral argument transcript. (Haynes, Christine) (Entered: 02/17/2016) |

| 02/24/2016 | 58 | RESPONSE TO OBJECTIONS by Keith Medley, Antoine Murrey, Jayvon Wright re 53 Objection to Report and Recommendations, 52 REPORT AND RECOMMENDATIONS re 30 MOTION to Amend/Correct filed by Keith Medley, Jayvon Wright, Antoine Murrey, 15 MOTION for Protective Order . (fms) Modified on 2/25/2016 (lih). (Entered: 02/24/2016) |
| --- | --- | --- |
| 02/24/2016 | | CORRECTING ENTRY: D.I. 58 has been re-docketed using the Response to Objections docket event, found under OTHER FILINGS, OTHER DOCUMENTS. (fms) (Entered: 02/24/2016) |
| 03/01/2016 | 59 | RESPONSE TO OBJECTIONS by City of Wilmington re 55 Objection to Report and Recommendations . (Cochran, C.) (Entered: 03/01/2016) |
| 03/31/2016 | 60 | MEMORANDUM ORDER ADOPTING 52 REPORT AND RECOMMENDATIONS granting 30 Motion to Amend/Correct; denying 3 Motion to Certify Class; finding as moot 10 Motion to Dismiss ; finding as moot 15 Motion for Protective Order; finding as moot 17 Motion to Compel. The case is remanded to Magistrate Judge Fallon to conduct a scheduling conference consistent with Fed.R.Civ.P. 16(b). Signed by Judge Sue L. Robinson on 3/31/2016. (nmfn) (Entered: 03/31/2016) |
| 03/31/2016 | 61 | FIRST AMENDED COMPLAINT against City of Wilmington- filed by Jayvon Wright, Antoine Murrey, Keith Medley, Gregory Griffin, Rashad El.(nmfn) (Entered: 03/31/2016) |
| 04/06/2016 | 62 | STIPULATION TO EXTEND TIME to answer the Amended Complaint to April 29, 2016 - filed by City of Wilmington. (Haynes, Christine) (Entered: 04/06/2016) |
| 04/07/2016 | | SO ORDERED- re 62 STIPULATION TO EXTEND TIME to answer the Amended Complaint to April 29, 2016. Set/Reset Answer Deadlines: City of Wilmington answer due 4/29/2016. Signed by Judge Sherry R. Fallon on 4/7/2016. (lih) (Entered: 04/07/2016) |
| 04/29/2016 | 63 | NOTICE of Withdrawal of Daniel C. Herr Esq. as Counsel of Record for Plaintiffs by Rashad El, Gregory Griffin, Keith Medley, Antoine Murrey, Jayvon Wright (Herr, Daniel) (Entered: 04/29/2016) |
| 04/29/2016 | 64 | ANSWER to 61 Amended Complaint by City of Wilmington.(Cochran, C.) Modified on 4/29/2016 (lih). (Entered: 04/29/2016) |
| 05/02/2016 | | ORAL ORDER SETTING RULE 16(b) CONFERENCE: IT IS HEREBY ORDERED that: (1) A scheduling teleconference pursuant to Fed. R. Civ. P. 16 (b) will be held on Monday, May 16, 2016 at 11:00 a.m. Counsel for Plaintiff shall organize and initiate the teleconference to the Chambers of Sherry R. Fallon at 302-573-4557. (2) The parties are required to prepare for the teleconference by conferring on all matters under Rule 16 and D. Del. LR 16 and shall submit a proposed Scheduling Order to the Court no later than May 11, 2016. The Court's form scheduling order is posted at http://www.ded.uscourts.gov (see Chambers, Judge Fallon, Forms). If the parties have any suggestions or modifications to the standard Scheduling Order, they may be included in the proposed order for consideration by the Court. (3) If any disputed issue exists regarding the proposed Scheduling Order, it shall be |

| | | |
|---|---|---|
| | | noted therein, along with the parties proposed language on the issue for consideration by the Court. Ordered by Judge Sherry R. Fallon on 5/2/2016. (lih) (Entered: 05/02/2016) |
| 05/11/2016 | 65 | PROPOSED Scheduling Order by Rashad El, Gregory Griffin, Keith Medley, Antoine Murrey, Jayvon Wright. (Norman, Stephen) Modified on 5/12/2016 (lih). (Entered: 05/11/2016) |
| 05/16/2016 | | Minute Entry for proceedings held before Judge Sherry R. Fallon - Scheduling Conference held on 5/16/2016. (Court Reporter S. Vickers (Hawkins Reporting).) (lih) (Entered: 05/16/2016) |
| 05/16/2016 | | CASE REFERRED to Magistrate Judge Fallon for Mediation. Please see Standing Order dated January 20, 2016, regarding disclosure of confidential ADR communications. A link to the standing order is provided here for your convenience at http://www.ded.uscourts.gov/general-orders/magistrate-judges-standing-order-adr-mediation (lih) (Entered: 05/16/2016) |
| 05/19/2016 | 66 | ORDER Setting Teleconference: plaintiffs counsel shall initiate the call. A Telephone Conference is set for 7/25/2016 at 10:30 AM before Judge Sherry R. Fallon to discuss ADR. Signed by Judge Sherry R. Fallon on 5/19/2016. (Entered: 05/19/2016) |
| 05/20/2016 | 67 | PROPOSED Scheduling Order by City of Wilmington. (Haynes, Christine) Modified on 5/20/2016 (lih). (Entered: 05/20/2016) |
| 05/24/2016 | | SO ORDERED- re 67 Proposed SCHEDULING ORDER. Set SCHEDULING ORDER deadlines: ( Joinder of Parties due by 7/1/2016., Amended Pleadings due by 7/1/2016., Discovery due by 3/16/2017., A Status Conference is set for 12/5/2016 at 10:00 AM before Judge Sherry R. Fallon, Status Report due by 11/29/2016., Dispositive Motions due by 5/1/2017.)(PLEASE REFER TO PROPOSED ORDER FOR FURTHER DETAILS.) Signed by Judge Sherry R. Fallon on 5/24/2016. (lih) (Entered: 05/24/2016) |
| 05/26/2016 | 68 | NOTICE OF SERVICE of Plaintiff's First Request for Production of Documents Directed to Defendant and Plaintiff's First Request for Admissions Directed Towards Defendant filed by Rashad El, Gregory Griffin, Keith Medley, Antoine Murrey, Jayvon Wright.(Norman, Stephen) (Entered: 05/26/2016) |
| 05/31/2016 | 69 | ORDER of USCA granting Jayvon Wright, Antoine Murrey, Keith Medley, Gregory Griffing and Rashad El's Petition for Permission to Appeal Pursuant to Fed. R. Civ. P. 23(f). (Attachments: # 1 Letter to District Court Clerk)(cg1) (Entered: 05/31/2016) (Entered: 06/02/2016) |
| 05/31/2016 | 71 | NOTICE OF APPEAL to the Third Circuit granting Petition for Permission to Appeal Pursuant to Fed. R. Civ. P. 23(f). Appeal filed by Rashad El, Gregory Griffin, Keith Medley, Antoine Murrey, Jayvon Wright. Filing fee $505, receipt number DEX025766. (cna) . (Entered: 06/06/2016) |
| 06/02/2016 | | CORRECTING ENTRY: Petition for leave to appeal pursuant to Fed. R. Civ. P. 23(f) was granted in USCA for the Third Circuit at No. 16-8032 on 5/31/2016, waiting on fees to be paid. (SEE D.I. 69 - ORDER of USCA granting Jayvon Wright, Antoine Murrey, Keith Medley, Gregory Griffin and Rashad El's |

| | | Petition for Permission to Appeal Pursuant to Fed. R. Civ. P. 23(f). (fms) Modified on 6/6/2016 (cna). (Entered: 06/02/2016) |
|---|---|---|
| 06/06/2016 | 70 | USCA Appeal Fees received: $505, receipt number DEX025766 re 69 USCA Order. (TPO mailed to Appellant). (cna) (Entered: 06/06/2016) |
| 06/08/2016 | 72 | NOTICE OF SERVICE of (1) Defendant City of Wilmington's First Set of Requests for Production of Documents Directed to the Plaintiffs; (2) Defendant City of Wilmington's First Set of Interrogatories Directed to All Plaintiffs; and (3) Defendant City of Wilmington's First Set of Requests for Admission Directed to Plaintiffs filed by City of Wilmington.(Haynes, Christine) (Entered: 06/08/2016) |
| 06/09/2016 | 73 | NOTICE of Docketing Record on Appeal from USCA for the Third Circuit re 71 Notice of Appeal to the Third Circuit filed by Keith Medley, Gregory Griffin, Jayvon Wright, Rashad El, Antoine Murrey. USCA Case Number 16-2722. USCA Case Manager: Kirsi (DOCUMENT IS RESTRICTED AND CAN ONLY BE VIEWED BY COURT STAFF) (kr) (Entered: 06/09/2016) |
| 06/15/2016 | 74 | NOTICE of Appearance by Kelly E. Farnan on behalf of City of Wilmington (Farnan, Kelly) (Entered: 06/15/2016) |
| 06/15/2016 | 75 | NOTICE OF SERVICE of Defendant's Disclosures Pursuant to Paragraph 3 of the Delaware Default Standard for Discovery of Electronically Stored Information filed by City of Wilmington.(Haynes, Christine) (Entered: 06/15/2016) |
| 06/16/2016 | 76 | NOTICE OF SERVICE of Plaintiffs' Disclosures Pursuant to Paragraph 3 of the Delaware Default Standard for Discovery of Electronically Stored Information filed by Rashad El, Gregory Griffin, Keith Medley, Antoine Murrey, Jayvon Wright.(Norman, Stephen) (Entered: 06/16/2016) |
| 06/20/2016 | 77 | NOTICE OF SERVICE of Plaintiff's Rule 26 (a)(1) Initial Disclosures filed by Rashad El, Gregory Griffin, Keith Medley, Antoine Murrey, Jayvon Wright. (Norman, Stephen) (Entered: 06/20/2016) |
| 06/23/2016 | 78 | NOTICE OF SERVICE of Defendant City of Wilmington's Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1) filed by City of Wilmington.(Haynes, Christine) (Entered: 06/23/2016) |
| 06/23/2016 | 79 | NOTICE OF SERVICE of Plaintiffs' Amended Rule 26 (a)(1) Initial Disclosures filed by Rashad El, Gregory Griffin, Keith Medley, Antoine Murrey, Jayvon Wright.(Norman, Stephen) (Entered: 06/23/2016) |
| 06/24/2016 | 80 | NOTICE OF SERVICE of (1) Defendant's Responses to Plaintiffs' First Request for Admission Directed Towards Defendant and (2) Defendant's Responses to Plaintiffs' First Request for Production of Documents Directed to Defendant filed by City of Wilmington.(Haynes, Christine) (Entered: 06/24/2016) |
| 07/01/2016 | 81 | Unopposed Motion for Leave to File First Amended Answer to Amended Complaint - filed by City of Wilmington. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A, # 3 Exhibit B)Motions referred to Sherry R. Fallon. (Haynes, Christine) Modified on 7/5/2016 (lih). (Entered: 07/01/2016) |

| | | |
|---|---|---|
| 07/07/2016 | | SO ORDERED- re 81 Unopposed Motion for Leave to File First Amended Answer to Amended Complaint. Signed by Judge Sherry R. Fallon on 7/7/2016. (lih) (Entered: 07/07/2016) |
| 07/07/2016 | 82 | AMENDED ANSWER to 61 Amended Complaint by City of Wilmington. (lih) (Entered: 07/07/2016) |
| 07/13/2016 | | CORRECTING ENTRY: The letter previously filed as D.I. 83 has been deleted. Counsel is advised that documents related to ADR are not to be e-filed, but sent directly to chambers through the clerks office. (lih) (Entered: 07/13/2016) |
| 07/14/2016 | 83 | Joint Motion for Teleconference to Resolve Discovery Dispute - filed by City of Wilmington. Motions referred to Sherry R. Fallon.(Haynes, Christine) Modified on 7/14/2016 (lih). (Entered: 07/14/2016) |
| 07/19/2016 | | SO ORDERED- re 83 Joint Motion for Teleconference to Resolve Discovery Dispute. A Telephone Conference is set for 9/14/2016 at 03:00 PM before Judge Sherry R. Fallon. Counsel for the defendant shall initiate the call to 302-573-4557. In preparation for this hearing the parties shall follow the Discovery Matters and Disputes procedure as set forth in the Order regarding discovery matters available at www.ded.uscourts.gov/judge/magistrate-judge-sherry-r-fallon. Set Deadlines: (Moving Submissions due by no later than 3:00 PM on 9/8/2016, Responsive submissions due by no later than 3:00 PM on 9/9/2016.) IT IS FURTHER ORDERED that: the teleconference set in this matter for 7/25/2016 to discuss ADR is RESCHEDULED to 9/14/2016. Counsel shall be prepared to discuss ADR at the conclusion of the discovery dispute discussion. Ordered by Judge Sherry R. Fallon on 7/19/2016. (lih) (Entered: 07/19/2016) |
| 09/01/2016 | 84 | Official Transcript of hearing held on June 17, 2015 before Judge Fallon. Court Reporter/Transcriber Stacy Ingram,Telephone number (302) 658-6697. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 9/22/2016. Redacted Transcript Deadline set for 10/3/2016. Release of Transcript Restriction set for 11/30/2016. (vjg) (Entered: 09/01/2016) |
| 09/08/2016 | 85 | [SEALED] Letter to The Honorable Sherry R. Fallon from Christine D. Haynes regarding discovery dispute. (Attachments: # 1 Exhibit A-B)(Haynes, Christine) (Entered: 09/08/2016) |
| 09/09/2016 | | NOTICE: Per Magistrate Judge Fallon's Standing Order Regarding Courtesy Copies, which requires two (2) courtesy copies of all briefs and two (2) copies of any other document filed in support of any briefs (i.e., appendices, exhibits, declarations, affidavits etc.), please submit to the Clerk's Office a copy of D.I. # 85 . (lih) (Entered: 09/09/2016) |
| 09/09/2016 | | CORRECTING ENTRY: Docket clerk has deleted the discovery dispute letter brief formerly filed by the plaintiff as D.I. 86 for two reasons. (1) The document does not conform to the page limitations as set forth in the Order regarding discovery matters available at www.ded.uscourts.gov/judge/magistrate-judge-sherry-r-fallon. Counsel shall not exceed the page limitations without a formal request; (2) Counsel scanned the forty-four pages of exhibits along with the |

| | | |
|---|---|---|
| | | main document. The exhibit is to be filed as an attachment to the filing. Counsel is also reminded that their response letter should not raise additional issues that were not (1) mentioned in D.I. 85 ; (2) mentioned to the court at the time of scheduling. (lih) (Entered: 09/09/2016) |
| 09/09/2016 | 86 | [SEALED] Letter to Hon. Sherry R. Fallon from Stephen P. Norman, Esquire 85 [SEALED] Letter . (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Certificate of Service)(Norman, Stephen) Modified on 9/12/2016 (lih). (Attachment 2 replaced on 9/13/2016) (lih). (Entered: 09/09/2016) |
| 09/12/2016 | | CORRECTING ENTRY: Docket clerk has linked D.I. 86 to the correct document D.I. 85 . (lih) (Entered: 09/12/2016) |
| 09/12/2016 | 87 | Letter to The Honorable Sherry R. Fallon from Christine D. Haynes regarding discovery dispute - re 86 Letter,. (Haynes, Christine) (Entered: 09/12/2016) |
| 09/13/2016 | | ORAL ORDER re 86 Letter. On 9/9/2016 counsel was notified by the court that they should not raise any additional issues that were not addressed in the letter filed by the defendant. IT IS HEREBY ORDERED that: the court will not review or hear argument regarding any of the issues outlined in section four of the plaintiffs letter brief. The court will not review or allow any additional briefing on the matter. Ordered by Judge Sherry R. Fallon on 9/13/2016. (lih) (Entered: 09/13/2016) |
| 09/13/2016 | | CORRECTING ENTRY: Per the request of counsel, exhibit B attached to D.I. 86 has been replaced with a revised version of the document. (lih) (Entered: 09/13/2016) |
| 09/14/2016 | | Minute Entry for proceedings held before Judge Sherry R. Fallon - Discovery Dispute Telephone Conference held on 9/14/2016. (Court Reporter S. Ingram (Hawkins Reporting).) (lih) (Entered: 09/15/2016) |
| 09/14/2016 | | ORAL ORDER- re 83 Joint Motion for Teleconference to Resolve Discovery Dispute. The transcript of the hearing held on 9/14/2016 shall serve as the order of the court. Signed by Judge Sherry R. Fallon on 9/14/2016. (lih) (Entered: 09/15/2016) |
| 09/15/2016 | 88 | REDACTED VERSION of 85 Letter by City of Wilmington. (Attachments: # 1 Exhibit A-B)(Haynes, Christine) Modified on 9/16/2016 (lih). (Entered: 09/15/2016) |
| 09/20/2016 | | REDACTION NOTICE: In accordance with section G of the Administrative Procedures Governing Filing and Service by Electronic Means, redacted versions of sealed documents shall be filed electronically within 7 days of the filing of the sealed document. The records of this case do not reflect the filing of a redacted version of DI # 86 . (lih) (Entered: 09/20/2016) |
| 09/20/2016 | 89 | REDACTED VERSION of 86 Letter by Rashad El, Gregory Griffin, Keith Medley, Antoine Murrey, Jayvon Wright. (Norman, Stephen) Modified on 9/20/2016 (lih). (Entered: 09/20/2016) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 09/21/2016 17:25:33 | | | |
| **PACER Login:** | spnorman:2901697:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:13-cv-01966-SLR-SRF Start date: 1/1/1970 End date: 9/21/2016 |
| **Billable Pages:** | 12 | **Cost:** | 1.20 |

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Jayvon Wright, Antoine Medley, and Keith Murrey individually, and on behalf of a Class of others similarly situated, | No. _____ |
| **Plaintiffs,** | |
| v. | **MOTION TO CERTIFY CLASS** |
| City of Wilmington | |
| **Defendant.** | |

## <u>PLAINTIFF MOTION FOR CLASS CERTIFICATION</u>

Class Plaintiffs hereby move for class certification, pursuant to Rule 23 of the Federal Rules of Civil Procedure and on the claims for relief set forth in the Complaint. Representative Plaintiffs Jayvon Wright, Keith Medley, and Antoine Murrey seek certification of a class defined as:

> All persons who have been handcuffed, transported, searched, and imprisoned by Wilmington Police Department based only upon reasonable suspicion of a crime during a period lasting from November 22, 2011 to the date on which the WPD is enjoined from enforcing its policy and custom of unlawfully handcuffing, transporting, searching, and imprisoning citizens based only upon reasonable suspicion, in contravention of the Constitution, the laws of the United States, and the laws of Delaware. Specifically excluded from the class are Defendant and any and all of its respective affiliates, legal representatives, heirs, successors, employees or assignees.

1

1.    This action has been brought and may properly be maintained as a Class action under Federal law as it satisfies the numerosity, commonality, typicality and adequacy requirements for maintaining a class action under Fed. R. Civ. P. 23(a). Specifically, Plaintiffs can demonstrate by a preponderance of the evidence that they have affirmatively met each requirement for maintaining a class action required under Fed. R. Civ. P. 23(a) and 23 (b). [1]

**Numerosity**

2.    First, the members of the Class are so numerous as to render joinder impracticable. "There is no minimum number of members needed for a suit to proceed as a class action. "We have observed, however, that "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 594 (3d. Cir. 2012). Consequently, the WPD policy of handcuff, transport, search, and imprisonment based only upon reasonable suspicion has been in use for the entire two year period of legally actionable claims resulting in potentially thousands of Class Members that have had their civil rights violated by the exact same WPD policy.

3.    Furthermore, "Rule 23(a)(1) does not require a plaintiff to offer direct evidence of the exact number and identities of the class members. But in the absence of direct evidence, a plaintiff must show sufficient circumstantial evidence specific to the products, problems, parties, and geographic areas actually covered by the class definition to allow a district court to make a factual finding. Only then may the court rely on "common sense" to forgo precise calculations and exact numbers." *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 596 (3d. Cir. 2012). Consequently, in this case the WPD policy of handcuff, transport search and detainment has been used repeatedly over a two year period.  Class members can be easily identified in this case by

---

[1]  The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence. *Marcus v. BMW of North America, LLC,* 687 F.3d 583, 591 (3d Cir. 2012).

2

reviewing police incident reports for the applicable two year period. Therefore, the requirements of the numerosity under Rule 23 (a)(1) are met by this class as there are thousands of individuals, who can be readily identified, that have had their rights violated by the WPD policy and custom of handcuff, transport, search, and imprisonment based solely on reasonable suspicion of a crime.

4.      Secondly, "as for its second objective, Rule 23(a)(1) creates greater access to judicial relief, particularly for those persons with claims that would be uneconomical to litigate individually." *Marcus v. BMW of North America, LLC,*   687 F.3d 583,594 (3d. Cir. 2012). Therefore, information and belief, joinder of all of these individuals is impracticable because the large number of Class Members are likely dispersed over a wide geographical area, with some members presently residing outside of Delaware and this Judicial District.  Consequently, upon information and belief, many members of the Class are low-income persons, who may not speak English, and likely would have great difficulty in pursuing their rights individually.

**Commonality**

5.      Common questions of law and fact exist as to all members of the Class. "Rule 23(a)(2)'s commonality requirement does not require identical claims or facts among class members as even a single common question will do." *Marcus v. BMW of North America, LLC,* 687 F.3d 583, 597 (3d. Cir. 2012). The present case easily meets this standard as there is one common question of law; whether the WPD policy and custom of handcuff, transport, search, and imprisonment based only upon reasonable suspicion is Constitutional.  This common question of law gives rise to a common set of facts for all Class Members, in that each was subjected to and injured by that same WPD policy and custom when they were handcuffed, transported, searched, and detained.    Every single class member was subjected to, and injured

3

by, the exact same WPD policy and custom of handcuff, transport, search, and detainment of individuals based solely on reasonable suspicion.

**Typicality**

6.    Class Plaintiff's claims are typical of the claims of the members of the Class.

> "Typicality, derives its independent legal significance from its ability to screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present. To determine whether a plaintiff is markedly different from the class as a whole, we consider the attributes of the plaintiff, the class as a whole, and the similarity between the plaintiff and the class..." *Marcus v. BMW of North America, LLC,* 687 F.3d 583, 598 (3d. Cir. 2012).

7.    Therefore, in this case the Class clearly meets the requirements of typicality as all Class Plaintiffs and Representatives have the exact same legal theory. That theory is that the WPD policy and custom of handcuffing, transport, search, and imprisonment of people based solely upon reasonable suspicion is a violation of their rights under the Fourth and Fourteenth Amendments to the Constitution.   Consequently, WPD's continued application of the same policy and custom naturally produces the same factual circumstances and injuries which are incident to the application of the policy. As the Third Circuit stated, "If a plaintiff's claim arises from the same event, practice or course of conduct that gives rises to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class." *Marcus v. BMW of North America, LLC,* 687 F.3d 583, 598 (3d. Cir. 2012).

8.    Furthermore, there is no defense that Representative Plaintiffs would be subject to that would be inapplicable to Class Members as a whole.  Every claimant was subjected to the same policy under the same legal circumstances of being handcuffed, searched, transported and

4

detained based only upon reasonable suspicion. Finally, the interest and incentives of the

Representative Plaintiffs and Class Members are the same, as evidenced by the fact that all

included in the Class are seeking the same relief. Specifically, the Class is first seeking

certification under Rules 23(b)(2), which is primarily for Declaratory and Injunctive Relief in

which damages must apply to the entire class uniformly. [2] Therefore, Representative Plaintiffs

will fairly and adequately protect the interests of the Class and have no interests adverse to the

Class, because the legal redress and the relief sought is the same and will be applied to all

participants uniformly.

**Adequacy**

9.        Plaintiff has retained The Norman Law Firm, counsel with substantial experience

in the prosecution of civil rights litigation, including successful litigation of civil rights cases

against municipalities in Delaware.    Plaintiff's counsel has the resources, expertise and

experience to successfully prosecute this action against the WPD.   Counsel for the Plaintiff

knows of no conflicts among members of the Class or between counsel and members of the

Class.

**Fed. R. Civ. P 23B (2) & 23 B (3)**

10.     Plaintiffs first seek Class certification under Fed. R. Civ. P. 23(b)(2). Plaintiffs' case

merits certification as (b)(2) Class because it meets all criteria defined by the Supreme Court, the

Third Circuit, and this District Court. Specifically, (b)(2) was "designed specifically for civil

---

[2] In other words, 23(b)(2) applies only when a single injunction or declaratory judgment would
provide relief to each member of the class. It does not authorize class certification when each
individual class member would be entitled to a *different* injunction or declaratory judgment
against the defendant. Similarly, it does not authorize class certification when each class
member would be entitled to an individualized award of monetary damages. *WalMart v
Dukes,* 131 S. Ct. 2541, 2557 *(2011)*

rights cases seeking broad declaratory or injunctive relief for a numerous and often unascertainable or amorphous class of persons." *Barnes v American Tobacco Co.,* 161 F.3d 127, 142 (3d. Cir 1998). This case fits this criteria as it is civil rights claim seeking broad declaratory and injunctive relief for potentially thousands of individuals. In addition, "Rule 23(b)(2) allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. *Wal Mart v Dukes,* 131 S. Ct. 2541, 2557 *(2011).*

11.    The party opposing the class in this case, WPD, has acted on grounds that apply generally to all members of the class, by applying the same unconstitutional policy of handcuff, transport, search, and imprisonment of all Class Members. Therefore, the indivisible nature of this WPD conduct is such that it can be enjoined or declared unlawful to all of the class members and declaration and injunction sought will provide relief to each member of the class. *Wal Mart v Dukes,* 131 S. Ct. 2541, 2557 *(2011).*  Specifically, all Plaintiffs have suffered and continue to suffer the *same* injury as a result of the *same* unconstitutional WPD policy of handcuffing, transporting, searching, and detaining individuals based upon reasonable suspicion.

12.    Finally, all damages requested this case meet the requirements set forth by the recent test defined by the Supreme Court. Specifically, "There is authority for permitting the award of monetary damages incidental to equitable relief in a Rule 23(b)(2) class…damages are permitted in such cases only when they award relief "incidental" to the primary claim for injunctive relief. Such incidental damage should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new substantive legal or factual issues nor entail complex individualized determinations." *Wal Mart v Dukes,* 131 S. Ct. 2541, 2560 (2011). Once again this Class fits the definition as the determination of damages in this matter will not require additional hearings to resolve the disparate merits of each individual's

6

case or introduce any new substantive legal or factual issues. Namely because all Class Members were injured directly by the same WPD policy and are seeking the same relief.

13.    In addition, Class Plaintiffs have standing to assert injunctive relief under the criteria recently defined by the Third Circuit. Specifically, "the plaintiff must show that he is likely to suffer future injury from the defendant's conduct, in the class action context, that requirement must be satisfied by at least one named plaintiff." *Mcnair v Synapse,* 672 F.3d 213, 223 (3d. Cir 2012). "Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Id* at 223. The threat of injury must be sufficiently real and immediate, and, as a result of the immediacy requirement, past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Id.* at 223. Class Plaintiffs meet this criteria as well having all been personally injured by the same WPD policy and living under a continuing daily threat of suffering another injury resulting from the exact same routine policy and custom utilized by WPD. Specifically, Plaintiff Jayvon Wright sees the Officer who tackled, handcuffed, searched, and detained frequently as the Officer continues to patrol Mr. Wright's neighborhood, making the threat of injury very real and immediate for Jayvon, nearly every day of his life.

14.    In addition to certification under Rule 23(b)(2), and in the alternative, Plaintiffs seek certification under Rule 23(b)(3). Common questions of law and fact exist as to all members of the Class, and predominate over any questions that affect only individual members of the Class. These common questions of law and fact include, without limitation, the common and predominant question of whether WPD policy of handcuffing, transporting, searching, and

detaining citizens based solely on reasonable suspicion, is a violation of Class Members rights under the Fourth and Fourteenth Amendments to the United States Constitution.

15.    A Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of the numerous members of the Class is impracticable given the large number of Class Members and the fact that they are dispersed over a large geographical area. Furthermore, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them. The cost to the federal court system of adjudicating thousands of individual cases would be enormous. Individualized litigation would also magnify the delay and expense to all parties and the court system. By contrast, the conduct of this action as a Class action in this District presents far fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each member of the Class.

16.    This Class is also readily ascertainable under the test set forth by the Third Circuit Specifically, "an essential prerequisite class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria" *Marcus v. BMW of North America, LLC,* 687 F.3d 583, 598 (3d. Cir. 2012). This case once again meets this criterion as a targeted review of WPD incident reports for the actionable claim over a period of two years is an administratively feasible and economical way for the class to be ascertained which involves no extensive or individualized fact finding.

17.    Upon information and belief, there are no other actions pending to address the WPD's flagrant violation of the civil rights of thousands of individuals, even though upon information and belief WPD continue to employ this unconstitutional policy and custom of handcuff, transport, search, and imprisonment of citizens in contravention of the Constitution, the laws of the United States, and the laws of Delaware.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Class Representatives Jayvon Wright, Antoine Medley, and Keith Murrey on behalf of themselves and of a Class of others similarly situated, requests that this Honorable Court grant them the following relief:

1.    An order certifying this action as a Class Action pursuant to Fed. R. Civ. P. 23.

**THE NORMAN LAW FIRM**

*/s/ Stephen P. Norman*
Stephen P. Norman, Esquire, Bar. No. 4620
The Norman Law Firm
30838 Vines Creek Road, Unit 3
Dagsboro, DE 19939
(302) 537-3788
snorman@thenormanlawfirm.com
*Attorney for Plaintiffs and the Proposed Class*

DATE: November 21, 2013

9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAYVON WRIGHT, ANTOINE MURREY, and KEITH MEDLEY, individually, and on behalf of a Class of others similarly situated, | ) ) ) C.A. No. 13-1966-SLR ) |
| Plaintiffs, | ) CLASS ACTION COMPLAINT ) |
| v. | ) JURY TRIAL DEMANDED ) |
| City of Wilmington, | ) ) |
| Defendant. | ) ) |

**PLAINTIFFS' RESPONSE TO DEFENDANT CITY OF WILMINGTON'S MOTION FOR PROTECTIVE ORDER AND PLAINTIFFS' MOTION TO COMPEL DISCOVERY CONCERNING PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

Plaintiffs, individually and on behalf of a Class of others similarly situated, by and through their undersigned Counsel, hereby respond to Defendant City of Wilmington's Motion for Protective Order and further, move pursuant to Federal Rule of Civil Procedure 37(a), respectfully requesting that the Court enter an Order Compelling Defendant to produce documents in response to Plaintiffs' First Request for Production of Documents.[1]  In support of both, Plaintiffs assert the following:

### NATURE AND STAGE OF PROCEEDINGS

1.  On November 21, 2013, Plaintiffs filed their Complaint against Defendant City of Wilmington ("Defendant"), alleging a *Monell* Violation and seeking Certification to proceed as a Class Action.  In short, Plaintiffs allege that Defendant has an unconstitutional policy and custom pursuant to which it's Police Department Officers handcuff, search, transport, and imprison

---

[1] Plaintiff's Counsel has conferred with Defendants' Counsel concerning their Motion to Compel pursuant to Delaware District Court Local Rule 7.1.1 to no avail.

individuals based on mere reasonable suspicion (rather than probable cause).  Further, Plaintiffs allege that Defendant admitted to this policy and custom.  D.I. 1 at p. 1.  Also on November 21, 2013, Plaintiffs filed their Motion for Class Certification.  D.I. 3.

2.  On December 12, 2013, Plaintiffs served their First Request for Production of Documents upon Defendant's Counsel (D.I. 5, *Notice of Service*).  Plaintiffs' First Request for Production of Documents (hereinafter referred to as the "Requests") is attached hereto as **Exhibit 1**.  Plaintiffs' Counsel, in an effort to narrow and focus the Requests, attached two exhibits to the Requests, "A" and "B," to simply provide an example of the documents sought.  Exhibit A to the Requests, attached hereto as **Exhibit 2**, is a "Wilmington Department of Police Turnkey Prisoner Log." This is the title of the document, which is written on the face of the document.  Exhibit B to the Requests, attached here to as **Exhibit 3**, is what Plaintiffs' Counsel characterized as a "Prison Intake Log."  The straightforwardness of these Requests, specifically those with the aforementioned exhibits attached, shall be further explored in this Response and Motion.

3.  On January 14, 2014, Defendant filed and/or served the following:  Defendant City of Wilmington's Motion to Dismiss the Complaint or, in the Alternative, to Strike (D.I. 10, 10.1, and 11);  Defendant's Response to Plaintiffs' Motion for Class Certification (D.I. 12); Defendant's Responses to Plaintiffs' First Request for Production of Documents (D.I. 14, *Notice of Service*); and Defendant City of Wilmington's Motion for Protective Order (D.I. 15). Defendant objected to providing Plaintiffs any of the documents they seek in the Requests both in its Responses to the Requests (D.I. 14) and through its Motion for Protective Order (D.I. 15).

4.  Defendant's Motion for a Protective Order largely "piggy-backs" on its Motion to Dismiss the Complaint or, in the Alternative, to Strike (D.I. 10, 10.1, and 11) and its Opposition to Plaintiffs' Motion for Class Certification (D.I. 12).  Rather than address these arguments

herein, for sake of brevity, Plaintiffs point to their impending Response to Defendant's Motion to Dismiss and their Motion for Class Certification and impending Reply to Defendant's Response to Plaintiffs' Motion for Class Certification.  <u>Therefore, Plaintiffs focus this memorandum on the salient issue herein – whether pre-certification discovery is appropriate at this juncture</u>.

<u>LEGAL STANDARDS</u>

5.   Defendant fails to cite to one District of Delaware, Third Circuit, or otherwise authoritative decision in the "Legal Standards" section of its Motion for Protective Order (D.I. 15 at p. 4).

6.   This District has held that "with regard to pre-certification discovery in putative class actions, typically District Courts will allow discovery relevant to determining whether the requirements of Rule 23(a) are satisfied, and whether the action is maintainable under one of the categories listed in Rule 23(b)." *Hart v. Nationwide Mut. Fire Ins. Co.,* 1:07-cv-00678-LPS at *4 (D. Del. 2010) (attached hereto as **Exhibit 4**).

7.   The Third Circuit has defined the scope of pre-certification discovery to include "the nature of the issues that will be tried; whether the evidence on the merits is common to the members of the proposed class; whether the issues are susceptible to class-wide proof; and what trial management problems the case will present." *In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 319 (3d Cir. 2009).

8.   In summary, "discovery is likely warranted where it will resolve factual issues necessary for the determination of whether the action may be maintained as a class action, such as whether a class or set of subclasses exist." *Artis v. Deere & Co.,* 2011 WL 2580621 at *3 (N.D. Cal. 2011).

3

## ARGUMENT

9.  At the outset, it is worth noting that Defendant has placed itself in an untenable position. Defendant, in a procedural maneuver, filed a Motion to Dismiss Plaintiffs' Complaint on the merits. Defendant relies upon this to, *inter alia*, balk on its obligation to answer the Requests (which this memorandum addresses). All the while, in a parallel motion, Defendant opposes Plaintiffs' Motion for Class Certification. In other words, Defendant seeks to prolong Plaintiffs' efforts towards pre-certification discovery through a Motion to Dismiss, yet move forward on opposing Plaintiff's Motion for Certification. Defendant is transparently attempting to squeeze the time in which Plaintiffs can seek pre-certification discovery, to which they are entitled, through parallel motion practice.

10. Indeed, this is evident on page one of Defendant's Response to Plaintiff's Motion for Class Certification, wherein it erroneously set forth that "[c]lass certification is unwarranted in the absence of a **viable** claim." D.I. 12 at 1 (emphasis added). Rather, "[t]he Supreme Court's ruling in *Wal-Mart* confirms that pre-certification discovery should ordinarily be available where a plaintiff has alleged a **potentially viable** class claim . . ." *Burton v. Dist. of Columbia*, 277 F.R.D. 224, 230 (D.D.C. 2011) (emphasis added) (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2010)). At a minimum, Plaintiffs have alleged a "potentially viable" class claim.

11. Similarly, Defendant again refuses Plaintiffs' Requests, setting forth on page four of its Motion for Protective Order that a "district court "will strike class action allegations without permitting discovery . . . where the complaint . . . clearly demonstrate[s] that the plaintiff cannot meet the requirements for a class action." (internal citation omitted). D.I. 15 at 4. Defendant again attempts to place the merits of this particular motion practice – Defendant's Motion for

Protective Order and now Plaintiffs' Motion to Compel – contingent upon the results of a parallel motion practice concerning the merits of Plaintiffs' Class Action Allegations. This is inapplicable argument.

12. For a third time, Defendant inappropriately denies Plaintiffs' Requests in paragraph twelve of its Motion for Protective Order, again making inapplicable argument. *Id.* at 4. This time, Defendant points to <u>different</u> parallel motion practice – Plaintiffs' Motion for Class Certification. Putting the cart before the horse, Defendant sets forth, in essence, that because it believes Plaintiffs will lose its Motion for Class Certification, Plaintiffs are not entitled to pre-certification. This culminates with Defendant's assertion that "[a]t a minimum, Plaintiffs' pre-certification discovery should be stayed pending disposition of the Motion for Class Certification" (internal citation omitted). *Id.* at 6. This motion practice is designed to determine whether pre-certification discovery is appropriate, and therefore, it is nonsensical to seek a stay of **pre**-certification discovery efforts until **post**-certification.

13. Defendant echoes the aforementioned arguments, as set forth in the aforementioned paragraphs 9, 10, 11, and 12 of this Motion, in its repeated objections to Plaintiffs' Requests. *See* Defendant's Responses to Plaintiffs' First Request for Production of Documents, attached hereto as **Exhibit 5**, at General Objections 1 and 2 and incorporated and set forth, again, in each Response therein to the Requests. For the same reasons Plaintiffs have set forth at length herein, they are inapplicable and inappropriate argument at this juncture.

14. Defendant has it entirely out-of-order. First, Plaintiffs seek narrow and targeted pre-certification discovery – *going as far as attaching precise examples of what they seek* – to which they are entitled. Second, Plaintiffs seek to use this pre-certification discovery in support of their Motion for Certification, pending before the Court. <u>This motion practice addresses whether pre-</u>

certification discovery is appropriate. Therefore, once again, Plaintiffs focus this memorandum accordingly.

15. Pre-certification discovery is designed to "afford the litigants an opportunity to present evidence as to whether a class action is maintainable and, the necessary antecedent to the presentation of evidence is enough discovery to obtain the material, especially when the information is within the sole possession of the defendant." *Artis v. Deere & Co.,* 2011 WL 2580621, at *3 (N.D. Cal. 2011) (emphasis added). Consequently, "the disclosure of names, addresses, and telephone numbers is a common practice in the class action context." *Id.*; *see also Allard v Post Road Entertainment,* 2012 WL 1067680, at *3 (D. Conn. Mar. 30, 2012) (the court has discretion to permit pre-certification discovery of the names and addresses of putative class members) (internal citation omitted).

16. Consistent with **Exhibits 2** and **3** (A and B to the Requests, respectively), Plaintiffs seek documents that are within the sole possession of Defendant and which contain information such as names, dates of birth, charges, disposition, and release times of individuals detained by Defendant's Police Officers. This is extremely narrow and tailored toward identifying putative class members.

17. Further, as the *Hart* decision makes clear, the Court will allow pre-certification discovery "relevant to determining whether the requirements of Rule 23(a) are satisfied, and whether the action is maintainable under one of the categories listed in Rule 23(b)." *Hart,* 1:07-cv-00678-LPS at *4. Defendant entirely failed to address this in its Motion for Protective Order.

18. Ascertaining the names, charges (if any), disposition (if any), and release time, as well as other identifying information concerning putative class members (*see* **Exhibits 2** and **3**), is certainly relevant to determining the Federal Rule of Civil Procedure 23(a) and (b) requirements

of numerosity, commonality, typicality, and adequacy.  The numerosity requirement is self-evident.  Concerning commonality and typicality, this can be ascertained by whether or not a putative class member had been charged, and if charged, the subsequent disposition.

19. It appears that only on page six of Defendant's Motion for Protective Order, paragraph 14, Defendant begins to make applicable arguments concerning this motion practice.  D.I. 15 at p. 6.  Defendant argues that it "should not be required to respond to the discovery requests as served because they are overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  For the following reasons, this argument entirely lacks merit.

20. Plaintiffs' first Request reads as follows:  "All of Defendant's Turnkey Prisoner Logs kept from November 21, 2011 through November 21, 2013.  An example of what Plaintiff seeks is attached hereto as Exhibit A."  **Exhibit 1** at p. 5.  The "Exhibit A" referenced is **Exhibit 2** to this Response and Motion.

21. Plaintiffs' second Request reads as follows:  "All of Defendant's Prison Intake Logs kept from November 21, 2011 through November 21, 2013.  An example of what Plaintiff seeks is attached hereto as Exhibit B."  **Exhibit 1** at p. 5.  The "Exhibit B" referenced is **Exhibit 3** to this Response and Motion.

22. It is worth noting that in Defendant, in its Responses to Plaintiffs' First Request for Production of Documents, did <u>not</u> include that Plaintiffs had attached Exhibits to its Requests in an effort to guide Defendant in narrowing the breadth of the documents that Plaintiffs seek.  Defendant removed this instruction to Plaintiffs' Requests.

23. In its Motion for Protective Order, Defendant specifically objects to Requests 1 and 2, arguing that these Requests are "not reasonably tailored to those who were purportedly detained

or arrested based solely on "reasonable suspicion."" D.I. 15 at 6. Concerning documentary evidence, these could not be more "reasonably tailored" towards the putative class.

24. For purposes of this Response and Motion, Plaintiff only seeks production of "Wilmington Department of Police Turnkey Prisoner Logs" and "Prison Intake Logs," examples of which have been sent to Defendant and are also attached hereto as **Exhibits 2 and 3**. Accordingly, Plaintiffs shall not address paragraphs 19 to 21 of Defendant's Motion for a Protective Order, as "Wilmington Department of Police Turnkey Prisoner Logs" and "Prison Intake Logs" do not concern DELJIS.

25. Defendant claims that producing these documents would be unduly burdensome, yet provides no justification in support. It appears that these records are created daily and kept in the possession of Defendant. It appears that these records can consist of one or, at most, a few pages in a day. This in no way can be characterized as unduly burdensome.

26. Defendant claims that these Requests are overly broad, because it would "encompass documents relating to *all* individuals detained or arrested by the police, regardless of whether there was probable cause to arrest, charges were filed, or the individuals ultimately were convicted." D.I. 15 at 6, ¶ 15 (emphasis in original). Each of Requests 1 and 2 seek logs of names, which, based on the subsequent information, could contain putative class members. To argue that because these logs also contain listings of names that would not be putative class members entirely lacks merit.

27. Finally, Defendant claims that these Requests are not reasonably calculated to lead to the discovery of admissible evidence. Like the other of Defendant's arguments, this cannot stand. Again, Plaintiffs plainly attached Exhibits to their Requests in an effort to pinpoint precisely what documents they seek. This is more than reasonable, and in fact, it was and is a courtesy.

Concerning relevance, the sought after documents contain the names and information concerning putative class members – highly relevant to Plaintiffs' class claim.

## CONCLUSION

28. As a result, Plaintiffs respectfully request that the Court deny Defendant's Motion for Protective Order and grant Plaintiffs' Motion to Compel Production of Documents, Ordering Defendant to produce the Turnkey Prison Logs and Prison Intake Logs within five (5) days. Plaintiffs' Counsel is available at the Court's convenience for oral argument should it be of assistance to expediently resolving the issues herein.

Respectfully submitted,

**THE NORMAN LAW FIRM**

Dated: January 17, 2013

*/s/Daniel C. Herr*
Daniel C. Herr, Esq., Bar ID 5497
Stephen P. Norman, Esq., Bar ID 4620
30838 Vines Creek Rd., Unit 3
Dagsboro, Delaware  19939
302-537-3788
DHerr@TheNormanLawFirm.com
*Attorney for Plaintiffs*

9

## EXHIBIT 2

### WILMINGTON DEPARTMENT OF POLICE
#### WILMINGTON, DELAWARE
*TURNKEY PRISONER LOG*

| COMMANDING OFFICER | SHIFT | TURNKEY |
|---|---|---|
| LT CFOTTI | 2300 X 0700 | MCPC HOWETT |
| Lt Scott Jones | 0700 X 1400 | M/Cpl  Victor Harris B2016 |
|  | 1400 X 2300 |  |

FROM 2300 HOURS 2 JULY 09    2300 HOURS 3 JULY 09

| IN CELL | CELL # | NAME | CHARGE(S) | CRT | BAIL | DISPO | REL TIME | SEARCHED P/TRANSP |
|---|---|---|---|---|---|---|---|---|
| HO | 2 | █████ | NON COMP BOND | 20 | 4100 Sec | Bail | 0255 | |
| HO | 3 | █████ | ASSUALT 3RD END. | 20 | 50.00 CASH | DROC | 2330 | |
| HO | 3 | █████ | Capias | 20 | 5600 Cash | G/H | 0200 | |
| HO | 4 | █████ | CAPIAS | 20 | CASH 10K | GH | 1150 | |
| HO | HOLGN | █████ | CAPIAS | 20 | 128 | Bail | 0550 | |
| HO | F2 | █████ | CAPIAS | 20 | 500 uns | Rel | 0055 | |
| 2330 | 7 | █████ | ADMIN WARRANT | 20 | 5000 cash Adm | Rel | 0200 | |
| 0105 | 2 | █████ | Poss Heroin, Lewdness | 20 | 1000 Sec | GH | 0820 | |
| 0155 | F1 | █████ | Resisting Arrest | 20 | 500 uns | Rel | 0540 | |
| 0600 | 5 | █████ | Capias | 20 | CASH 842 | GH | 1150 | |
| 1150 | 3 | █████ | n/a | L0 | | ID | 1225 | |
| 1150 | 3 | █████ | Poss/Loitr | L0 | 3000 uns | REL | 2100 | |
| 1305 | 5 | █████ | 3)Capias | 111-4 | 1227C 361005 | G-M | 2117 | |
| 1315 | | | | | | | | |

PAGE 1 OF 2

000001

### WILMINGTON DEPARTMENT OF POLICE
### WILMINGTON, DELAWARE
*TURNKEY PRISONER LOG*

| COMMANDING OFFICER | SHIFT | TURNKEY |
|---|---|---|
| | 2300 X 0700 | |
| | 0700 X 1400 | |
| SGT VFINAVENDA | 1400 X 2300 | S/CPL WYATT |

FROM 2300 HOURS ___2Jul09___          2300 HOURS ___3Jul09___

| IN CELL | CELL # | NAME | CHARGE(S) | CRT | BAIL | DISPO | REL TIME | SEARCHED P/TRANSP |
|---|---|---|---|---|---|---|---|---|
| 1938 | 2 | ███████ | CAPIAS | 20 | OR | OR | 2100 | |
| 1938 | 3 | ███████ | CAPIAS | 20 | 620SEC 500UNS | GM | 2117 | |
| 2140 | 5 | ███████ | T-16 | 20 | | | | |
| 2140 | 1 | ███████ | | 20 | | | | |
| 2207 | 3 | ███████ | CAPIAS | 20 | 600UNS | | | |

PAGE __2__ OF __3__

000002

30b6_042012a

10    you're just assisting?

11          A    Yes, I would.

12          Q    Okay.  And once you made that decision,

13    would you also charge them for DUI?

14          A    Not necessarily, because at that point

15    they're being brought in.  Depends on the probable

16    cause you have at the scene.  That's it; depends on

17    the probable cause you have at the scene.  If I'm just

18    bringing them in for further investigation, I would

19    still handcuff them because they're under two-hour law

20    of detention.

21          Q    And would you also test them for

22    alcohol, would that be part of the requirement?

23          A    Insofar as -- when?  May I throw that

24    out?

25          Q    Well, within that two-hour limit.

FIRST STATE REPORTING SERVICE      (302) 424-4541
Pamela C. Herrmann, RPR
P.O. Box 99              Milford, Delaware  19963

                    Gestwicki - Norman                    50

1          A    Depends on the circumstances that are

2    presented.  I can't just turn around and say, "I'm

3    going to put you on the breathalyzer," I have to have

4    probable cause before that that would lead up to that.

5    I can give other types of tests that would accrue

6    probable cause, but I can't just simply put them on

7    the breathalyzer.

8          Q    But you wouldn't arrest them until you

9    had probable cause, right?

10          A    I would not charge them with DUI until

11    I had probable cause to believe that they have

12    operated, driven, or had an actual physical control of

                    Page 44

30b6_042012a

13   that motor vehicle under the influence.  I would bring

14   them in for further investigation.

15            Q    So you'd handcuff them and take them to

16   the police station, even if you didn't have probable

17   cause, while you were investigating?

18            A    I have reasonable belief.

19            Q    'Is it reasonable belief or reasonable

20   suspicion?

21            A    Suspicion, I'm sorry.

22            Q    So reasonable suspicion is enough to

23   handcuff, arrest, take to the station for two hours?

24            A    Handcuff and take to the station.

25   Person hasn't been charged yet.

           FIRST STATE REPORTING SERVICE       (302) 424-4541
                       Pamela C. Herrmann, RPR
           P.O. Box 99              Milford, Delaware  19963

                    Gestwicki - Norman                    51

1            Q    Okay, they haven't been charged?

2            A    They're taken into custody and, again,

3   the handcuffing is for safety reasons.

4            Q    Okay.

5            A    And bring them into the station.  It's

6   for safety reasons of the person in custody as well as

7   the officer.

8            Q    Okay, and is that the policy of the

9   wilmington Police Department?

10           A    Yes.  It is.

11           Q    Is it a written policy or is it --

12           A    It's a written policy.

13           Q    It's a written policy?  Okay.  What's

14   your understanding of the difference between

15   reasonable suspicion and probable cause?

16           A    I guess the, just the metaphor,
                       Page 45

30b6_042012a

3    custody.

4              Q      Okay.

5              A      I know that's ...

6              Q      So if they're not being charged but

7    they're being handcuffed and the person resists, then

8    they can be charged for resisting arrest?

9              A      Yes.

10             Q      Even though they're not charged for DUI

11   at that point?

12             A      They're brought under two-hour law of

13   detention.

14             Q      Okay.  So, once again, reasonable

15   suspicion, if you have a reasonable suspicion, you can

16   be arrested?

17             A      You can be taken into custody.

18             Q      And kept for two hours?

19             A      Yes.

20             Q      So arrested, handcuffed, transported to

21   the station, and kept for no more than two hours?

22             A      Taken into custody, handcuffed,

23   transported into the police station, and held for no

24   more than two hours.  And that two hours, by the way,

25   is at the time of the stop, not the time of the

                    FIRST STATE REPORTING SERVICE     (302) 424-4541
                              Pamela C. Herrmann, RPR
             P.O. Box 99                    Milford, Delaware   19963

                          Gestwicki - Norman                      84


1    arrival at the police station.

2              Q      Okay.  And that's based on reasonable

3    suspicion?

4              A      Yeah, that you believe that a crime has

5    been committed, will be committed -- I forget what the

                          Page 74

30b6_042012a

6    third one is.

7              Q    Okay.

8              A    Or is about to be committed, I don't

9    know.

10             Q    Okay.  And I forgot to ask, is that a

11   written policy?

12             A    Title 11.  It is in written policy --

13             Q    That's in Title 11?

14             A    Yeah, Title 11, and I want to say 1902.

15   And it is in our written directives also.

16             Q    What written directive is it?

17             A    I don't know the number offhand.  It

18   probably deals with 6.10.  Don't quote me on that,

19   please.

20             Q    That had to do with prisoners?

21             A    Prisoners, yeah.  I could be wrong on

22   that one, that number.

23             Q    Okay.  Now, if they verbally protested,

24   like, "What are you doing arresting me?" something

25   along those lines, could they be charged for resisting

FIRST STATE REPORTING SERVICE        (302) 424-4541
                    Pamela C. Herrmann, RPR
        P.O. Box 99              Milford, Delaware  19963

                 Gestwicki - Norman                      85

1    arrest also, or would they have to do -- make a

2    physical --

3              A    Probably more than -- yeah, physical is

4    usually where you go with resisting arrest.

5              Q    Okay.  So verbal typically wouldn't be

6    enough?

7              A    Typically would not.

8              Q    All right.

9              A    Depends upon the verbiage.  Again,
                         Page 75

# EXHIBIT B

003420

Case 1:13-cv-01662-SLR-SRF   Document 49-4 filed 08/24/15   Page 3 of 4 PageID #: 501

003421

Schifano - Norman                                         69                                        70

```
 1  vehicle know that?
 2        A    In this case, there were -- didn't have
 3  a driver.
 4        Q    Okay, all right. When did you learn
 5  she was having a panic attack?
 6        A    Not until everything was all said and
 7  done. I mean I think everything was all finished
 8  before I even learned any of that. I can't tell you
 9  specifically, but it wasn't -- it was everything was
10  done and gone.
11        Q    Okay. So you didn't learn about her
12  having a panic attack until you were at the police
13  station?
14        A    It was even after that.
15        Q    Okay. It's in your report; you want to
16  take a look at your report?
17        A    Yeah, because -- on my accident report?
18        Q    Yes.
19        MS. RHEN:    I'm not sure if that's
20  correct.
21        MR. NORMAN:    Maybe it's not.
22        MS. RHEN:    I think that's a
23  mischaracterization of the report.
24        MR. NORMAN:    Okay.
25        THE WITNESS:    What is he referring to?
```

```
 1  Because I don't --
 2        MR. NORMAN:    If it is, that's
 3  unintentional, and I'll withdraw that question.
 4  BY MR. NORMAN:
 5        Q    Okay, I withdraw that question, I
 6  apologize, because I did think it said that in here
 7  but I believe that was Officer Connor. So you didn't
 8  learn she was having a panic attack until later on?
 9        A    Correct, or that she made that
10  statement, yes.
11        Q    Okay. So after Officer Connor spoke to
12  Miss Glover, he came back to you; did he tell you he
13  was arresting her?
14        A    I believe -- the last thing I remember
15  Officer Connor telling me before he left the scene was
16  that he told me that she had blew zeros on the PBT so
17  there was no alcohol, and he mentioned something to me
18  that she had said that she had taken Percocet, so he
19  was taking her down to the police station pending, you
20  know, my final investigation.
21        Q    Did he tell you what he was
22  arresting her for?
23        A    The suspension of driving under the
24  influence of drugs.
25        Q    So he was arresting her for --
```

Schifano - Norman                      71                          Schifano - Norman                      72

```
 1        A    At that particular point, I believe
 2  it's more accurate to say it was an investigative
 3  detention.
 4        Q    Okay. And what does that mean?
 5        A    In laymen's terms to describe it is
 6  you're being held pending the investigation. If the
 7  investigation uncovers something that you should be
 8  charged accordingly, then you're charged accordingly.
 9  If the investigation yields that there was not enough
10  or insufficient evidence to charge you accordingly,
11  then you would be released accordingly.
12        Q    Okay. So at that point when he came to
13  you and said that he was arresting her, did you tell
14  him that, "I don't have anybody that can place her as
15  the driver"?
16        A    No. At that point, I believe I told
17  him I got to see what I can figure out.
18        Q    But you did have information that she
19  was denying driving?
20        A    Yes.
21        Q    Okay. And you had tried to find
22  someone who said she was the driver, and you weren't
23  able to do that?
24        A    At that particular point, correct.
25        Q    Okay. Did he tell you that he was able
```

```
 1  to find an independent witness or any witness that
 2  made her the driver?
 3        A    No, we didn't really talk about that.
 4        Q    Okay. So he didn't say that; he just
 5  said, "I'm going to take her under suspicion." And
 6  you said investigatory stop; is that more like
 7  reasonable suspicion at that point?
 8        A    An investigative detention? I mean we
 9  can pull out the statute or however it's legally
10  worded. My experience is the purpose of the
11  investigative detention is I don't want to kick
12  somebody loose, especially with a DUI.
13             In a DUI, that person technically is
14  physically evidence. If I release them and then, all
15  of a sudden, 20 minutes later I find out, yeah, she
16  was the driver, and that person's been out of my
17  sight, I can't do a DUI because they could have
18  ingested it between that 20-minute period.
19        Q    Okay, so you had reasonable suspicion
20  at this point?
21        A    Yes. Oh, yes.
22        Q    But you didn't have probable cause to
23  make an arrest, in your mind, at this point?
24        A    At this point, I was still building my
25  probable cause. Did I have enough? I'm very thorough
```

FIRST STATE REPORTING SERVICE   (302) 424-4541
Pamela C. Herrmann, RPR
P.O. Box 99        Milford, Delaware  19963

FIRST STATE REPORTING SERVICE   (302) 424-4541
Pamela C. Herrmann, RPR
P.O. Box 99        Milford, Delaware  19963

App. 75

Case 1:13-cv-01966-SLR-SRF  Document 33-1  Filed 09/25/14  Page 2 of 6 PageID #: 386

Schifano - Norman    93

1  struck.
2      Q    Okay, did you speak to those
3  individuals at all?
4      A    I believe I spoke to one. The other
5  one, I don't believe we got ahold of.
6      Q    Okay. And did that one give you any
7  information regarding the accident?
8      A    If I remember correctly, no, not at
9  all. They didn't even know about it until we informed
10  them of it, I believe, I'm not sure. But I do know
11  they had nothing to say about the accident.
12      Q    Okay. So if one of those owners called
13  in the accident, would you have known that?
14      A    Only if dispatch would have told me,
15  but they wouldn't tell me.
16      Q    Okay.
17      A    They would not tell me who called it
18  in, unless it was, you know, the caller refused to
19  call something in or it was a -- what do they call
20  them? Bypasser or something like that, they'll just
21  say, "We don't have a 31, it was just called in by a
22  bypasser."
23      Q    Okay, why don't we take a look at
24  Officer Connor's report, that's probably going to be
25  something interesting.

Schifano - Norman    94

1      And we're going to go to -- let's see,
2  there's a couple different versions of it. Let me ask
3  you a couple questions first off. In your mind,
4  Miss Glover's vehicle was disabled?
5      A    Yes.
6      Q    Okay. So not driveable?
7      A    That's correct.
8      Q    And the damage you thought was about
9  $5,000, does that sound about right?
10      A    Yeah, give or take. I'm not a body
11  person, but it was significant.
12      Q    Okay. Let's go to -- we're actually
13  going to go to page 681 on Exhibit 1. It's down on
14  the bottom, those are called bate stamps. These are
15  actually, I believe these were produced by defendants.
16      And in there, it talks about resisting
17  arrest charge. Did you know that there was actually
18  no charge of DUI and that there was only a resisting
19  arrest charge, were you aware of that?
20      A    Yes, after, when everything was all
21  said and done, yes.
22      Q    But at the scene, you thought there was
23  an arrest for DUI and resisting arrest?
24      A    No, I didn't believe anybody, referring
25  to Miss Glover, I didn't believe there was going to be

Schifano - Norman    95

1  an arrest at that point; I still had more
2  investigation to do.
3      Q    But Officer Connor, you knew, was
4  taking her into custody?
5      A    Yes. When he told me he was going to
6  take her down to the police station, yes.
7      Q    For DUI --
8      A    Correct.
9      Q    -- and for resisting arrest?
10      A    I don't know if I learned of the
11  resisting before he went down there or after I got
12  done.
13      Q    Okay. But your impression was that she
14  had been arrested for DUI?
15      A    Correct.
16      Q    Okay.
17      A    I should say investigative purposes,
18  because at that point we still didn't -- I was still
19  working on the rest of it, the probable cause.
20      Q    Okay. So she was arrested for
21  investigatory purposes and taken to the police
22  station --
23      A    Correct.
24      Q    -- is what you were under the
25  impression of?

Schifano - Norman    96

1      A    Correct.
2      Q    Okay. So we're going to go to page --
3  it's Exhibit B, and it's on page 684. All right, and
4  why don't you just take a minute to read this report,
5  is probably going to be the best thing. And just 684
6  and 680 -- actually, you know what? Why don't you
7  just read I think it's 686 is the narrative, I
8  believe. It's the same information.
9      Actually, it's 685, sorry. And it's
10  the investigative narrative. I mean you can look at
11  the whole thing, but if you want to just look at the
12  investigative narrative.
13      A    Okay.
14      Q    What do you think of this report, this
15  narrative? I mean is there anything that pops out in
16  your mind?
17      A    Not particularly.
18      Q    Okay. I mean it doesn't talk about him
19  speaking with you in here, does that kind of ring a
20  bell to you? It doesn't talk about him kind of
21  working in conjunction with you on this investigation?
22      A    Right, well, what's typical, and I see
23  how the report was written, is his report was focused
24  basically on the I guess the wording or the probable
25  cause to -- for the warrant for the resisting arrest.

1     It doesn't -- it's not going to list in
2 here anything else about what my investigation was.
3 And as I read in the last line, he does say to refer
4 to the collision report under the case number. So if
5 somebody were to read it and say, "Well, what was
6 Officer Schifano doing at this time?" they have my
7 report to put side by side. So that's pretty typical
8 standard of how we do that.
9     Q   Okay, so even though you all were
10 communicating, it wouldn't necessarily be in the
11 report?
12     A   Not particularly, not in this
13 particular right here. Again, it looks like he wrote
14 this more for his purpose of the resisting arrest
15 charge.
16     Q   Okay. I mean is it unusual for someone
17 to just be charged with resisting arrest?
18     A   Not particularly. I mean we get a lot
19 of situations where, especially with drugs situations,
20 you know, we can see them selling drugs on the corner,
21 we get into a foot chase, by the time we catch them,
22 they've thrown the drugs. Well, we can't charge them
23 with the drugs; but when we catch them, with the
24 resisting arrest.
25     Q   For evading the police?

1     A   For whatever it may be, yes.
2     Q   And I'll kind of specify. I mean when
3 someone's just been struck, the victim of a DUI
4 collision, I mean is it unusual for them to just be
5 charged with resisting arrest and not anything else?
6     A   I'm going to say no. Does it happen
7 frequently? No, but it's not unusual. And this is
8 the perfect example why. Everybody starts out nice
9 and calm, you know, until you tell them, "Hey, sir, I
10 think you're under the -- you know, the -- under the
11 influence of alcohol." Well, all of a sudden, their
12 resistance level comes up, okay, they resist you now,
13 now you got resisting arrest, now you take them back
14 to the police station, they blow in the Intoxilyzer,
15 and all of a sudden they blow a .04; well, they're not
16 technically driving under the influence anymore.
17 Well, you still got the resisting arrest but you don't
18 have the DUI.
19     Q   Okay.
20     A   Doesn't happen frequently.
21     Q   Okay. What did you say, they were
22 doing what? They were resisting what?
23     A   For whatever.
24     Q   No, they were resisting arrest?
25     A   Resisting arrest.

A-855

1     Q   Okay. Was she being arrested?
2     A   She was being detained -- again,
3 whatever Officer Connor was doing that particular
4 moment.
5     Q   Okay, so if someone's being detained,
6 that doesn't mean that they're being arrested, right?
7     A   I can't answer that, sir, without
8 reading the actual legal wording of it. When you
9 detain somebody for investigatory purposes and they're
10 putting on handcuffs, they may not be, I guess you can
11 say, arrested in the definition of the word, but they
12 are being detained. They're not free to pull away
13 from the police, they're not free to run from the
14 police, they're not free to fight the police.
15     Q   I'm just confused. I thought we went
16 through the fact that, you know, you didn't see any
17 necessity to handcuff her, so, if -- when you're
18 handcuffed, aren't you arrested?
19     A   Yes, yes. It's detained, absolutely.
20     Q   Okay. So it's not just -- it's
21 actually you're detained, and there should be a charge
22 of what you're arrested for, right?
23     A   Well, no, sir.
24     Q   Okay.
25     A   Exact example, what if I believe

1 somebody's -- they're swaying, they're doing this,
2 they're doing that, they're exhibiting all the signs
3 of a DUI, I smell the alcohol, everything.
4     Q   Okay.
5     A   They fail their field sobriety tests,
6 now I technically, you're under arrest for suspicion
7 of driving under the influence of alcohol. The reason
8 it's worded as you're under arrest for suspicion is
9 because other than my observations, I can't convict
10 you in court yet. I can convict you with the
11 observations, but I can't convict you until I get the
12 Intoxilyzer which is the official reading for the
13 court.
14     I bring you down to the police station,
15 now all of a sudden you decide I'm going to be an
16 idiot, I'm going to fight you. Okay? Now you got
17 your resisting arrest on top of the DUI. But when you
18 put them on the box and he does not -- or he blows
19 within the legal limits, you can no longer arrest him,
20 so technically I don't have an arrest for a DUI, I
21 only have the arrest for resisting.
22     Q   Okay. But you are under the impression
23 that Connor arrested her for DUI?
24     A   No. I was under the impression he was
25 detaining her until my investigation was done.

Case 1:13-cv-01966-SLR-SRF  Document 33-1  Filed 09/25/14  Page 4 of 6 PageID #: 388

Schifano - Norman    101

1    Q    Okay. So he wasn't arresting her for
2  DUI?
3    A    I don't know what he was arresting her
4  for. The only thing I can tell you is it had to have
5  been for investigative detention because he couldn't
6  arrest her until I was done with my investigation, on
7  the official charge.
8    Q    Okay. Well, I understand, but you
9  never had a blood test taken of her?
10    A    Correct.
11    Q    Okay. Why not?
12    A    Because it was my opinion that, with
13  what I had, I did not have enough to put her behind
14  the wheel to officially charge her with a DUI.
15    Q    Okay. And when did you make that
16  determination?
17    A    When I left the scene and had no more
18  avenues to investigate.
19    Q    So it obviously wasn't -- around what
20  time did you leave the scene?
21    A    I don't recall, sir.
22    MR. NORMAN:   I'm going to enter another
23  exhibit, if I can. This is the 911 log provided, can
24  you mark that as Exhibit Schifano 2, please?
25    (Schifano Exhibit 2, marked for

FIRST STATE REPORTING SERVICE    (302) 424-4541
Pamela C. Herrmann, RPR
P.O. Box 99    Milford, Delaware  1996

Schifano - Norman    102

1  identification.)
2  BY MR. NORMAN:
3    Q    All right. In here, if you go to I
4  think it's the second page. You're 26C, does that
5  ring a bell?
6    A    Yes, sir.
7    Q    And it talks about -- let's see. At
8  3:47, I think it talks about Unit 26C cleared from
9  call. Actually, you know what? On the last page,
10  available for calls, it talks about 3:47:37, and
11  that's a time stamp, 26C then becomes available for
12  call. It's the last page.
13    A    The last page?
14    Q    Yeah.
15    A    Okay, and what was your question?
16    Q    Just what does that mean? I mean is
17  that when you left the scene? Is that when you left
18  the police station? Is that when you finished up your
19  investigation? I'm just trying to figure out like
20  what available for calls means. Because it talks
21  about at scene, you know, you can see at 2:15:32, 26C
22  is at scene. And then at 3:47:37, it says available
23  for calls, I'm trying to figure out what this means.
24    A    The 3:47, something like that, if it
25  says unit available for calls, it's supposed to mean

FIRST STATE REPORTING SERVICE    (302) 424-4541
Pamela C. Herrmann, RPR
P.O. Box 99    Milford, Delaware  1996

A-856

Schifano - Norman    103

1  that you're cleared from your call, you're available
2  for service, for a call for service. But I'm also
3  looking here and, you know, your data clerks may not
4  enter everything in correctly.
5    Because I'm looking previous, you can
6  see where it says like at -- where is it? I just saw
7  it. Like, for example, if you look up where it says
8  25C cleared from call at 2:14, that probably shouldn't
9  read that. I mean obviously I don't think he was done
10  at that particular time. So it all depends on what
11  they're -- how they're coding it.
12    If you change locations, for example,
13  say I'm clearing a scene, I say I'm leaving the scene,
14  I'm going to 58, it should say cleared scene at 58 or
15  at Central.
16    Q    Okay. But it does mean there's a
17  change of location?
18    A    It's a change of something, yes. And
19  in this particular case, I believe, if I'm not
20  mistaken, 3:47 is probably when I was finished up the
21  paperwork anyway, and done completely.
22    Q    Finished up the paperwork or when you
23  left the scene?
24    A    No, when I'm done with the paperwork.
25    Q    Okay, but the prior entry at 2:15:32

FIRST STATE REPORTING SERVICE    (302) 424-4541
Pamela C. Herrmann, RPR
P.O. Box 99    Milford, Delaware  1996

Schifano - Norman    104

1  says at scene.
2    A    Okay.
3    Q    And then there's nothing in here to say
4  that you left the scene. The next one is available
5  for calls. So typically, wouldn't you call in and
6  say, "Okay, leaving scene"?
7    A    Oh, I would have had to have because
8  it's a female in my car.
9    Q    It's a female in your car?
10    A    Absolutely. So not only am I calling
11  it in, but I have to give mileage and also have to
12  give the miles when I arrive.
13    Q    It's females in your car or a female in
14  your car?
15    A    A female.
16    Q    Okay, there's only one?
17    A    Yes.
18    Q    Okay. So you didn't take in the other
19  female in Miss Dabrowski's vehicle?
20    A    No, I did not.
21    Q    Okay. Was the other female in
22  Miss Dabrowski's vehicle at the police station?
23    A    I don't know if she came afterwards
24  with somebody else to pick up the one that I had
25  arrested.

FIRST STATE REPORTING SERVICE    (302) 424-4541
Pamela C. Herrmann, RPR
P.O. Box 99    Milford, Delaware  1996

Schifano - Rhen    209

1    Q    Did Miss Glover report any physical
2 injuries at any time while you were present at the
3 accident scene?
4    A    No, she did not.
5    Q    Did she show any signs of physical
6 injuries at any time while you were present during the
7 incident?
8    A    No, ma'am.
9    Q    Did you see any type of cut or scrape
10 on Miss Glover's knee?
11    A    No.
12    Q    And I believe you said that she never
13 informed you that she was having a panic attack?
14    A    Correct.
15    Q    So you were not aware that she was
16 having a panic attack at any point?
17    A    Correct.
18    Q    Did she display any physical signs or
19 symptoms that indicated to you that she was having a
20 panic attack?
21    A    No, ma'am.
22    Q    And you indicated that — I'm sorry,
23 let me rephrase that. I believe you said that you
24 specifically asked her if she was injured or needed
25 medical treatment, is that correct?

FIRST STATE REPORTING SERVICE    (302) 424-4541
Pamela C. Herrmann, RPR
P.O. Box 99          Milford, Delaware 19963

Schifano - Rhen    210

1    A    Yes, ma'am.
2    Q    And when did you ask her that?
3    A    That's as soon as I first arrived on
4 the scene with the accident, that's the first question
5 I asked.
6    Q    Okay, and what was her response?
7    A    She said no.
8    Q    Did she mention anything about having a
9 panic attack at that point?
10    A    No. She was out of her vehicle, she
11 was moving around freely, other than the impairment of
12 whatever she was under, but she wasn't — didn't
13 appear to be short of breath, she didn't appear to
14 be — she just your typical upset, "I was involved in
15 an accident, somebody hit me," that was it.
16    Q    So there was nothing at that point to
17 give you reason to believe that she was sick or
18 injured or having any type of medical condition?
19    A    Right. Not from — not from the —
20 resulting from the accident, only from some kind of
21 impairment, but nothing to believe that she was
22 injured.
23    Q    Okay. Now, do you need to have
24 probable cause to detain someone on suspicion of
25 driving under the influence and actually, you know,

FIRST STATE REPORTING SERVICE    (302) 424-4541
Pamela C. Herrmann, RPR
P.O. Box 99          Milford, Delaware 19963

A-883

Schifano - Rhen    211

1 take them into custody and transport them to the
2 police station?
3    A    No, you don't.
4    Q    What level of proof do you need to
5 have?
6    A    Reasonable suspicion.
7    Q    And what type of facts or evidence do
8 you need to have to show reasonable suspicion when it
9 comes to driving under the influence of drugs,
10 specifically?
11    A    Drugs and alcohol, they're hand in
12 hand, you need the same indicators for either one of
13 them, there's just different tests to determine
14 whether it would be alcohol or drugs.
15         But you need, number one, you need a
16 reason for the stop; in this particular case, it's an
17 accident. Then you need reasonable suspicion to
18 pursue a DUI. In other words, you just can't pull a
19 car over, walk up to the window and say, "I need you
20 to do field sobriety tests." There has to be
21 reasonable suspicion, and that could be in the form of
22 odor of alcohol, bloodshot watery eyes, slurred
23 mumbled speech, divided attention, anything you're
24 observing. That — it's a very low threshold for
25 reasonable suspicion, but you need that.

FIRST STATE REPORTING SERVICE    (302) 424-4541
Pamela C. Herrmann, RPR
P.O. Box 99          Milford, Delaware 19963

Schifano - Rhen    212

1         Once you get to that point, then you
2 proceed further with your DUI investigation; doesn't
3 necessarily mean the person's going to be arrested,
4 just means they're being detained and arrested under
5 the suspicion of driving under the influence of
6 alcohol.
7    Q    Okay. So in this particular case,
8 based on the facts that you were aware of, do you
9 believe that there was reasonable suspicion to detain
10 Miss Glover on suspicion of driving under the
11 influence of drugs?
12    A    Yes, absolutely.
13    Q    And what were the facts or evidence
14 that created that reasonable suspicion?
15    A    The slurred speech, the mumbled speech,
16 dazed and confused, you know, the divided attention,
17 the swaying, you know, the leaning up on her vehicle
18 to hold her up at times, the combative attitude, all
19 those are indicators of an impairment.
20    Q    Okay. Anything else? Any other facts?
21    A    That I knew at the time, no.
22    Q    Okay. Now, when someone's detained on
23 suspicion — for investigatory purposes on suspicion
24 of driving under the influence of either drugs or
25 alcohol, is it normal procedure to place them in

FIRST STATE REPORTING SERVICE    (302) 424-4541
Pamela C. Herrmann, RPR
P.O. Box 99          Milford, Delaware 19963

Schifano - Rhen    213

1  handcuffs and actually transport them to the police
2  station?
3       A    Yes, it is.
4       Q    Okay, and why is that done?
5       A    Well, technically, they're going to be
6  in custody; whether for detention or arrest, they're
7  in custody. Most importantly is officer safety and
8  prisoner safety. Most people, they're calm with you
9  until they realize that, okay, I'm about to get
10 arrested; that's when everybody's heightened, you
11 know, fight or flee thing, and that's where most of
12 your prisoners are going to start to cause you
13 problem, so they're handcuffed for safety.
14      Q    And are they also taken to the police
15 station, I believe you mentioned before it had
16 something to do with the concerns that the
17 investigation was ongoing and you didn't want the
18 person to flee, or you wanted to be able to find them,
19 you know, in the event --
20      A    Oh, yes.
21      Q    -- there was additional evidence as to
22 whether they were driving or --
23      A    Yes. In a case like this, because it
24 was a DUI, the second anybody accused of a DUI leaves
25 the officer's presence, depending on how much time, it

Schifano - Rhen    214

1  could actually ruin your whole DUI. If they leave for
2  an extended period of time, it's simply put, "Well, I
3  drank after the accident," or, "I took pills
4  afterwards." That's why you never let somebody leave
5  your observation.
6           In Miss Glover's case, there was more
7  than enough reasonable suspicion to think that she was
8  operating her vehicle under the influence of
9  something. If we would have said, "Okay, well, I
10 don't have enough information yet; give me like
11 another half-hour, see what I can find out, just let
12 her go," say I would have been able to put her behind
13 the wheel. Now, all of a sudden, "Okay, we need to
14 blood test you." "Well, you can't, because I just
15 took my Percocet two minutes ago." So this is a --
16 you can consider it an evidentiary, you know, a hold as
17 well.
18      Q    So is there a time limit under the DUI
19 statute for how long you have to subject someone to
20 the intoxilyzer or to a blood test?
21      A    Yes. You have four hours from the time
22 you put them behind the wheel of whatever it was. Not
23 the time you discovered they were the driver, but from
24 the time you put them behind the wheel, you have four
25 hours.

A-884

Schifano - Rhen    215

1       Q    So is that an additional reason why
2  they're taken into custody if they're detained on
3  suspicion?
4       A    Yeah. It coincides with the same
5  thing, as far as you've got to protect the evidence.
6       Q    Okay. Now, in order to draw blood or
7  to give someone an intoxilyzer, is reasonable
8  suspicion sufficient, or do you have to have probable
9  cause?
10      A    Well, the reasonable suspicion gets you
11 to a field sobriety test. And, yes, you need probable
12 cause to put them on the actual intoxilyzer box. In
13 Delaware, you could actually, even though the legal
14 limit's .08, we could actually convict from somebody
15 who blows a .05 to a .08, and that conviction comes in
16 based on the officer's observations and their field
17 sobriety tests.
18          The way you really should judge it is
19 if somebody's outright passed their field sobriety
20 tests, they pass it with no problem, you put them on a
21 PBT, the portable breath test, and they blow a .04, if
22 you do the HGN and they've passed that, every
23 indication at that point is showing that the person
24 is not going to be under the influence and they're
25 within the legal limits. It's my personal practice,

Schifano - Rhen    216

1  and I don't speak for every cop, I will stop my
2  investigation there, I will not take them any further,
3  I don't have the probable cause.
4           If somebody fails half their sobriety
5  tests and passes half, or they fail their HGN, and
6  they blow a .07 on their PBT, now you got a different
7  story because now I have observations to go with the
8  .07 to put them onto a box where you get a reading of
9  a .08 or .09. So it all depends on the total
10 situation.
11      Q    And that's the same whether it's the
12 intoxilyzer or blood test or drugs?
13      A    Correct.
14      Q    Now, what happens in a situation where
15 someone refuses to do the field sobriety tests?
16      A    Well, by law, they can refuse, and
17 there's nothing that can happen to them, there is no
18 recourse. However, if our observations at that point
19 can simply be the smell of alcohol, bloodshot watery
20 eyes, if that's all I have, I don't have a walk and
21 turn, I don't have a HGN, I don't have the finger
22 dexterity, I don't have nothing else other than my
23 observation, then we can pursue the DUI, even though
24 they're refusing tests and refuse to blow into the
25 intoxilyzer; that's where the implied consent would

1    to to say, okay, they were in this interview

2    room, they were in this booking room?  Is there

3    like a paper trail that tells you where the

4    person went?

5        A.  When there is a request for me to get the

6    video?

7        Q.  Yes.

8        A.  Well, I could receive an E-mail typically

9    from a sergeant in the patrol division that works

10   shift work saying, I had an incident last night,

11   I need a copy of video from this date and time

12   and here is the officer and here is what time

13   they brought this person in.  I would receive an

14   E-mail from them asking for that material or they

15   may come in person and I might do it right then

16   for them.

17       Q.  Let's say it's six months later, the

18   officer is transferred, the arresting officer is

19   not there, is there a paper document that you can

20   refer to that says, okay, on July 3, 2009 this

21   person was checked in at, you know, two in the

22   morning, they were then taken to interview room

23   two and then after that they were taken to

24   holding cell three?  Is there a paper trail that

1    shows all that?

2    A.   No.

3    Q.   Are there any documents that show

4    anything like that?

5    A.   Yes.

6    Q.   What are those documents?

7    A.   The person signed into the book when they

8    first come in it shows that they entered into the

9    police station.   There is also a turnkey log

10   where once that person is processed and assigned

11   to a cell the turnkey types their name onto that

12   list of what cell they were in and it would also

13   typically have the bail information once that is

14   obtained on that sheet.

15   Q.   Now, if they're there for a DUI, where

16   would blood be taken typically?

17   A.   That, I don't know.   You are talking

18   about other than if someone went to the hospital

19   to have it drawn?

20   Q.   Do they draw blood at the police station

21   or do they have to go to the hospital to have

22   blood drawn?

23   A.   I've been out of patrol so long I would

24   be improperly trying to answer that.   I'm not

1  sure.

2      Q.  Have you had video that you have dealt

3  with where you have seen people have their blood

4  drawn at the police station?

5      A.  No.

6      Q.  So, you said there was a turnkey log and

7  what was the other sergeant?

8      A.  The prisoner log, which is the book that

9  is maintained where a person when they come in

10  the officer puts the time, their name, their date

11  of birth, the arresting officer and then the case

12  number and their disposition are in that book as

13  well.

14      Q.  And the turnkey log, what is that?

15      A.  The turnkey log is a sheet that basically

16  shows the assignment of prisoners, where they're

17  at, once they're processed.

18      Q.  Does it say when they're released as

19  well?

20      A.  On that form I don't know.  In the book

21  it does.

22      Q.  In what book?

23      A.  In the sign-in book where they're signed

24  in initially, the time and disposition are

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JAYVON WRIGHT, ANTOINE MURREY,    *
KEITH MEDLEY, GREGORY GRIFFIN,    *
AND RASHAD EL, INDIVIDUALLY,    *    CASE NO. 13-1966-SLR/SRF
And on behalf of a Class of others similarly    *
situated,    *    **CLASS ACTION COMPLAINT**
   *
         Plaintiff,    *    **JURY TRIAL DEMANDED**
   *
         v.    *
   *
City of Wilmington    *
   *
         Defendant

## FIRST AMENDED COMPLAINT

### JURISDICTION

1. This Court has jurisdiction over this action under the provisions of 28 U.S.C. §§1331, 1341 & 1343 because it is filed to obtain compensatory damages and injunctive relief for the deprivation, under color of state law, of the rights of citizens of the United States secured by the Constitution and federal law pursuant to 42 U.S.C. § 1983.

2. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's and Class claims occurred within this judicial district.

### PARTIES

3. Plaintiff Jayvon Wright ("Wright") is and at all relevant times mentioned herein was, a citizen of the United States and residing in Wilmington, Delaware.

4. Plaintiff Antoine Murrey ("Murrey") is and at all relevant times mentioned herein was, a citizen of the United States and residing in Dover, Delaware.

5. Plaintiff Keith Medley ("Medley") is and at all relevant times mentioned herein was, a

citizen of the United States and residing in Wilmington, Delaware.

6. Plaintiff Gregory Griffin ("Griffin") is and at all relevant times mentioned herein was, a

citizen of the United States and residing in Wilmington, Delaware.

7. Plaintiff Rashad El ("El") is and at all relevant times mentioned herein was, a citizen of

the United States and residing in Wilmington, Delaware.

8. Defendant, City of Wilmington ("City"), is a municipal corporation duly organized,

existing and operating under and pursuant to the applicable laws of the State of Delaware.

The Wilmington Police Department ("WPD") is the law enforcement arm of the City and

at all times relevant hereto, was responsible for the policies, customs, practices,

supervision, implementation, training, and conduct of its officers.  In addition, at all

relevant times, the City was responsible for ensuring that its police officers were in

compliance with Constitution, the laws of the United States, and of the State of Delaware.

## CLASS ACTION ALLEGATIONS

9. Plaintiffs bring this action pursuant to Rules 23(b)(1), 23(b)(2) and 23(b)(3) of the

Federal Rules of Civil Procedure on behalf of themselves  and a Class of similarly

situated individuals who were unlawfully handcuffed, transported, searched, and detained

based solely on reasonable suspicion by officers of the WPD.

10. The Class that Plaintiffs seek to represent is defined as follows:

**All persons taken into custody pursuant to the Investigatory Detention Policy**

**of Wilmington Police Department which authorizes officers of the police**

**department to handcuff, transport, search, and imprison persons for a**

**period of up to two hours based only upon reasonable suspicion of a crime**

**during a period lasting from November 22, 2011 to the date on which the**

2

App. 85

WPD is enjoined from enforcing its policy and custom of unlawfully handcuffing, transporting, searching, and imprisoning citizens based only upon reasonable suspicion, in contravention of the Constitution, the laws of the United States, and the laws of Delaware. Specifically excluded from the class are Defendant and any and all of its respective affiliates, legal representatives, heirs, successors, employees or assignees.

11. This action has been brought and may properly be maintained as a Class action under Federal law and satisfies the numerosity, commonality, typicality and adequacy requirements for maintaining a class action under Fed. R. Civ. P. 23(a).

12. The members of the Class are so numerous as to render joinder impracticable. Upon information and belief, there are potentially thousands of people that have been handcuffed, transported, searched, and imprisoned pursuant to WPD's Investigatory Detention Policy based only upon reasonable suspicion -- all of whom are members of the Proposed Class. Upon information and belief, the size of the Proposed Class totals thousands of individuals, some of whom have had their civil rights violated on multiple occasions.

13. Upon information and belief, joinder of all of these individuals is impracticable because of the large number of Class Members and the fact that Class Members are likely dispersed over a large geographical area, with some members presently residing outside of Delaware and this Judicial District. Furthermore, upon information and belief, many members of the Class are low-income persons, may not speak English, and likely would have great difficulty in pursuing their rights individually.

14. Common questions of law and fact exist as to all members of the Class, in that WPD

violated every Class members right to be free from unreasonable searches and seizures
guaranteed under the Fourth and Fourteenth Amendment of the United States
Constitution by subjecting each Plaintiff to the same longstanding WPD policy and
custom of handcuffing, transporting, searching, and imprisoning individuals based solely
on reasonable suspicion.

15. Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all
members of the Class sustained damages arising out of Defendant's course of conduct.
The harms suffered by Plaintiffs are typical of the harms suffered by the Class Members.

16. The representative Plaintiffs have the requisite personal interest in the outcome of this
action and will fairly and adequately protect the interests of the Class. Plaintiffs have no
interests that are adverse to the interests of the Members of the Class.

17. Plaintiffs have retained The Norman Law Firm, counsel with substantial experience in
the prosecution of civil rights litigation, including successful litigation of civil rights
cases against municipalities in Delaware. Plaintiffs' counsel has the resources, expertise
and experience necessary to successfully prosecute this action against the City. Counsel
for Plaintiffs knows of no conflicts among members of the Class or between counsel and
members of the Class.

18. Plaintiffs seek Class Certification under Fed. R. Civ. P. 23(b)(2). Plaintiffs' case merits
certification as a (b)(2) Class because it meets all criteria defined by the Supreme Court,
the Third Circuit, and this District Court. Specifically, Plaintiffs' case is a civil rights
claim seeking broad declaratory and injunctive relief for potentially thousands of
individuals, a numerous and amorphous class of persons.[1] In addition, the party opposing

---

[1] Indeed, (b)(2) was "designed for civil rights cases seeking broad declaratory or injunctive relief
for a numerous and often unascertainable or amorphous class of persons". *Barnes v American*

the class, the City, has acted on grounds that apply generally to all members of the class, therefore the indivisible nature of the City's conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them and the declaration and injunction sought will provide relief to each member of the class.

19. Finally, all damages requested are incidental to the primary claim for injunctive and declaratory relief, as the determination of damages will not require additional hearings to resolve the disparate merits of each individual's case will not introduce any new substantive legal or factual issues. In short, all Plaintiffs were harmed in the same way by the same WPD Investigatory Detention policy of handcuffing, transporting, search, and imprisoning.

20. Plaintiffs have standing to assert injunctive relief under the criteria recently defined by the Third Circuit. Plaintiffs have all personally been personally injured by the same WPD policy and are under a continuing daily threat of suffering another injury resulting from the exact same ongoing policy, which WPD officers erroneously believe is Constitutional.

21. Specifically, Plaintiff Wright must encounter the Officer who tackled, handcuffed, searched, and detained him every day as the officer continues to patrol Wright's neighborhood, making the threat of injury very real and immediate for Mr. Wright, nearly every day of his life.

22. In addition to certification under Rule 23(b)(2), and in the alternative, Plaintiffs seek certification under Rule 23(b)(3).

23. Common questions of law and fact exist as to all members of the Class, and predominate over any questions that affect only individual members of the Class.    These common

---

*Tobacco Co.* 161 F.3d 127 (3d. Cir 1998).

questions of law and fact include, without limitation, the common and predominant question of whether the Defendant's Investigatory Detention policy of handcuffing, transporting, searching, and imprisoning citizens based solely on reasonable suspicion, without regard to the circumstances, is a violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

24. A Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all of the individual members of the Class is impracticable given the large number of Class Members and the fact that they are dispersed over a large geographical area. Furthermore, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them. The cost to the federal court system of adjudicating thousands of individual cases would be enormous. Individualized litigation would also magnify the delay and expense to all parties and the court system. By contrast, the conduct of this action as a Class action in this District presents far fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each member of the Class.

25. Upon information and belief, there are no other actions pending to address the Defendant's violation of the civil rights of potentially thousands of individuals, even though upon information and belief Defendant has maintained its illegal policy and custom of unlawfully handcuffing, transporting, searching, and imprisoning citizens in contravention of the Constitution, the laws of the United States, and the laws of Delaware.

## FACTS

App. 89

### Facts Applicable to the Class Generally

26. The Fourth and Fourteenth Amendments of the United States Constitution and relevant

    Federal Law prohibits city officials, such as police officers from engaging in the policy

    and custom of handcuffing, transporting, searching, and imprisoning citizens based only

    upon reasonable suspicion. *Glass v. City of Philadelphia*, 455 F. Supp. 2d 302, 347 (E.D.

    Pa. 2006).

27. WPD has adopted a policy and custom which allows officers to handcuff,  transport,

    search, and imprison citizens based only upon reasonable suspicion that a crime has been

    committed, regardless of the nature of their charged crime or the circumstances

    surrounding the search and seizure.

28. Defendant through its 30(b)(6) designee, James Gestwicki, admitted in a prior proceeding

    that WPD has a policy that allows officers to arrest, transport, handcuff, and search based

    only on reasonable suspicion and not probable cause. **Exhibit 1.**

29. Officer Gestwicki, the 30(b)(6) deponent testified during his deposition:

    Q:    So reasonable suspicion is enough to handcuff, arrest, take to the station for two
          hours?

    A:    Handcuff and take to the station.  Person hasn't been charged yet.

    Q:    Okay, they haven't been charged?

    A:    They're taken into custody and, again, the handcuffing is for safety reasons.

    Q:    Okay.

    A:    And bring them into the station.  It's for safety reasons of the person in custody as
          well as the officer.

    Q:    Okay, and is that the policy of the Wilmington Police Department?

    A:    Yes.  It is.

App. 90

Q:    Is it a written policy or is it –

A.    **It's a written policy.**  (emphasis added).

Q:    Okay. So, once again, reasonable suspicion, if you have a reasonable suspicion, you can be arrested?

A:    You can be taken into custody.

Q:    And kept for two hours?

A:    Yes.

Q:    So arrested, handcuffed, transported to the station, and kept for no more than two hours?

A:    Taken into custody, handcuffed, transported into the police station, and held for no more than two hours.  And that two hours, by the way, is at the time of the stop, not the time of the arrival at the police station.

Q:    Okay, and that's based on reasonable suspicion?

A:    Yeah, that you believe a crime has been committed will be committed—I forget what the third one is.

Q:    okay.

A:    Or is about to be committed, I don't know.

Q:    Okay. And I forgot to ask, is that a written policy?

A:    Title 11. It is a written policy-

Q:    That's in Title 11?

A:    Yeah, Title 11, and I want to say 1902.  **And it is in our written directives also** (emphasis added).

30. Besides Officer Gestwicki, another WPD officer, Ralph Schifano testified in the prior

proceeding that WPD has a policy of "investigatory detention" where officers

investigating a crime are permitted to transport, handcuff, and take to the police station

based on reasonable suspicion alone and not probable cause.

8

31. Officer Ralph Schifano answered affirmatively under oath that the policy of "investigatory detention" is normal procedure to place persons suspected of a crime in handcuffs and transport them to the police station based only on reasonable suspicion.

32. WPD directive 6.10(K)(1), advises "all personnel…to review the contents of" 11 Del. C. §1902 which the directive terms the "Two Hour Uniform Arrest Law". The directive then states that "[t]his section provides sufficient guidance in the conduct of such detention."

33. 11 Del. C. §1902 does not authorize officers to arrest or take suspects into custody, but rather to briefly detain persons within constitutional limitations based on "reasonable ground".

34. WPD's written directives clearly authorize its officers to exceed the scope of 11 Del. C. §1902.

35. According to WPD's directive 6.10(K)(2) pertaining to the Detention of Suspects, "[m]any people are picked up as suspects in a particular crime. Until they have been identified and arrested, we must remember that they are only suspects. The majority of such detentions result in the person being released without criminal charges being placed. They should not be brought to Central or taken from one location to another, then released to find their own means of transportation. Officers are to offer to transport them back to the location where they were originally stopped and provide them with an explanation of why they were detained.

36. Directive 6.10(K)(3) further states that "[a]t the time of their detention, officers should be mindful that any person suddenly deprived of his freedom may be dangerous, therefore, the proper precautions should always be taken to ensure the officer's safety".

37. Directive 6.10 makes it clear that WPD has a written policy of detaining, transporting, and imprisoning persons merely suspected of a crime based solely on reasonable suspicion.

38. Persons detained under WPD's unconstitutional investigatory detention that were never charged with a crime are readily ascertainable from the Wilmington Department of Police Turnkey Prisoner Log ("Turnkey Log").  **Exhibit 2.**

39. Persons transported, searched, handcuffed, and imprisoned at the jail under the Investigatory Detention policy have "n/a" in the "charge(s)" column since they were never charged with a crime.

40. Additionally, persons never charged with have "ID" listed in the "disposition" column.

41. Upon information and belief, ID stands for investigatory detention.

42. Other persons reflected in the Turnkey Log likely were detained pursuant to the investigatory detention policy since no charges were ever stated in the "charge(s)" column.

43. Additionally, prisoners charged with resisting arrest in the "charge(s)" column with no underlying charge to support the initial detention also were likely taken into custody pursuant to WPD's unconstitutional investigatory detention policy.

44. Officer Schifano testified during his deposition that at least one person charged with "resisting arrest" listed in the "charges" column was detained pursuant to WPD's investigatory detention policy.

45. Pursuant to this WPD policy and custom each member of the Class, including the named Plaintiffs, were handcuffed, transported, searched, and imprisoned based only on reasonable suspicion that they had committed a crime.

App. 93

46. As a direct and proximate result of the unlawful policy and custom of WPD handcuffing, transporting, searching, and imprisoning individuals based only on reasonable suspicion, each member of the class, including the named Plaintiffs -- has suffered a loss of their liberty, physical injuries, psychological pain, humiliation, suffering and mental anguish.

### Facts Applicable to the Named Plaintiffs

#### Jayvon Wright

47. On November 23, 2011, Wright was near his home with his mother and uncle when he saw his friend Eduardo Griffin ("Griffin") being searched over the hood of a police vehicle by Officer Devon Jones ("Jones").

48. Wright walked towards his friend, stopping about 8 to 10 feet from him, and asked Griffin if he needed him to call his parents for him.

49. At which point Jones responded aggressively, "what the fuck do you want, shouldn't you be playing basketball."

50. Wright turned to walk away when Jones grabbed his arm from behind and tackled him to the ground.

51. Jones assaulted Wright on the ground for a period of three to five minutes.

52. During the assault Wright screamed to Jones, asking him what he was doing.

53. Jones never answered Wright's inquiries.

54. Nor did Jones answer the screams of Wrights mother and uncle who stood directly next to where Wright was being assaulted on the ground by Jones.

55. Likewise, their screams to Jones's partner, Officer Crocker ("Crocker"), went unheeded as he sat quietly by and watched.

56. While the assault was occurring, two other officers arrived on the scene, witnessed the

11

App. 94

incident, and subsequently left.

57. In addition, during the assault, Griffin, the suspect Jones had been searching over the hood of his car, simply walked away from the scene.

58. After the assault, Jones placed his boot on Wright's back and handcuffed him.

59. Jones then searched through all of Wright's pockets without obtaining Wright's consent.

60. Wright was never informed that he was under arrest or what, if any, crime he was suspected of committing.

61. Jones then placed Wright into the back of the police car and transported Wright to the WPD police station.

62. When Wright arrived at the station the officers handcuffed him to a bench while they performed an inventory search of his personal effects.

63. Wright was then transferred into a jail cell, where the handcuffs were removed.

64. While in the cell Wright was told that he was being charged with resisting arrest.

65. During his time in the cell he was never questioned regarding any matter.

66. Wright was released roughly after two hours in jail.

67. He was charged with two misdemeanors, loitering and disorderly conduct.

68. Both charges were dismissed prior to trial without any concession by Wright.

69. Wright was never charged with resisting arrest.

70. Wright sees and encounters Jones on a near daily basis in his neighborhood and is under constant fear that he will be subjected once again to the same unlawful policy of WPD, potentially from the very same officer.

**Keith Medley & Antoine Murrey**

71. On or about the afternoon of March 15, 2013, Medley and Murray were waiting in a

App. 95

friend's apartment prior to picking up Medley's son who attended Odyssey day school across the street.

72. At approximately 3:30 Medley and Murrey exited the friend's apartment to walk across the street to pick up Medley's son.

73. As they left the building, WPD officers emerged from three vehicles with guns drawn.

74. The officers told the two men to get down on the ground immediately.

75. Both men complied with the officers' request and laid face down on the pavement.

76. Upon information and belief two of the officers present were Officer Barnes and Officer Mullings.

77. The Officers handcuffed Medley and Murrey and patted them down for weapons.

78. The Officers then proceeded to search Medley and Murrey.

79. An Officer removed a cigarette pack from Medley's pocket and opened it, finding nothing but cigarettes inside.

80. One of the officer's took Murrey's car keys and phone from his pocket.

81. While Medley and Murrey were detained, the officer entered Murrey's car, started it, and then circled the block a few times in the car.

82. The officer then searched the entire car, finding nothing.

83. The officers at the scene asked which apartment Murrey and Medley were coming from.

84. Murrey and Medley responded that they were in a friend's apartment in the building.

85. The police then escorted Murray and Medley, still handcuffed, back into the apartment complex and into the apartment unit where the police *assumed* the men exited from.

86. The Officers then took Murrey to a back bedroom where the handcuffs were removed.

87. He was then forced to remove all of his clothing in front of three officers.

88. During this strip search, one of the officers brandished a taser several inches away from Murrey.

89. Murrey was told that if he moved he would be tased immediately by the officer next to him.

90. The officers proceeded to search his mouth.

91. The officers then instructed him to pull apart his buttocks.

92. Finding nothing the officers told Murrey to redress.

93. After he dressed he was once again handcuffed.

94. The officers then returned Murrey to the living room of the unit.

95. Police then took Medley to the same back bedroom.

96. In the bedroom the officers took the handcuffs off Medley.

97. He was then forced to remove all of his clothing in front of three officers.

98. One of the officers brandished a taser as Medley undressed.

99. Medley was instructed that if he moved he would be tased immediately by the Officer next to him.

100.    The officers proceeded to search his mouth.

101.    The officers then instructed him to pull apart his buttocks.

102.    Finding nothing, the officers then told Medley to redress.

103.    Medley was then handcuffed and returned to the living room.

104.    The officers then proceeded to search the entire apartment.

105.    None of the officers ever showed Medley or Murrey a warrant for the search of the apartment or for any other purpose.

106.    The Officers seized a cell phone and a pair of bolt clippers from the apartment.

App. 97

107.    Upon information and belief, the Officers located no weapons or contraband.

108.    Medley and Murrey were then transported to the Police station.

109.    Medley and Murrey were imprisoned at the station in a cell for approximately one hour.

110.    The two men were then subsequently released with no charges filed.

111.    Neither Medley, nor Murrey was ever provided a reason why they were handcuffed, searched, strip searched, transported, and imprisoned.

112.    Medley had to subsequently describe to his 6 year old son why he was handcuffed at gunpoint.

**Gregory Griffin and Rashad El**

113.    On February 3, 2013, Gregory Griffin ("Griffin") and Rashad El ("El") were confronted by four WPD officers including Officer Andrew Schaub around the intersection of Lobdell and Chapel Streets in the Southbridge neighborhood of Wilmington.

114.    The officers asked both Griffin and El "which way did they go?"

115.    Griffin responded "I don't know-I didn't see anything".

116.    The officers responded to Griffin's comments by taking both men into custody.

117.    None of the officers advised Griffin or El why they were being taken into custody.

118.    One officer handcuffed Griffin and placed him into a police vehicle

119.    Griffin was then transported him to the police station.

120.    Another officer handcuffed El and placed him into a police vehicle.

121.    El was then then transported to the police station.

122.    Griffin was handcuffed to a bench at the police station.

123.    The officers searched Griffin's body until a commanding officer interrupted the officers and apologized to Griffin.

124.    El was handcuffed to a bench at the police station.

125.    The officers searched El's body at the police station.

126.    Neither man was ever told why they were taken into custody.

127.    Neither man was ever charged with a crime.

### COUNT I:  VIOLATION OF 42 U.S.C. §1983 *MONELL CLAIM*

128.    Plaintiffs re-allege and incorporate by reference the allegations, above and below, as though fully set forth herein.

129.    The City is a state actor for purposes of §1983 litigation.

130.    The violation of Plaintiffs' rights was caused by the policy and custom of the WPD of handcuffing, searching, transporting, and imprisoning individuals suspected of a crime based solely on reasonable suspicion.

131.    The policy and custom of the WPD violated federal law and was a moving factor behind Plaintiffs' injuries.

132.    Additionally, prior to the events described herein, Defendant City developed and maintained ordinances, policies, practices and/or customs exhibiting deliberate indifference to the constitutional rights of persons within the geographic and jurisdictional limits of the City of Wilmington, which caused violations of Plaintiff's constitutional rights.

133.    Specifically, Defendant City failed to adequately and properly supervise and train its police officers in various aspects of law enforcement procedure, including but not

App. 99

limited to, the nature and existence of probable cause, on the constitutional limitations on investigative stops, detentions, searches and seizures, and on the Laws of Delaware.

134.     The above-described acts and omissions by Defendant City demonstrated a deliberate indifference to the constitutional rights of citizens of Wilmington, and were the direct and proximate cause of the violations of Plaintiff's rights as set forth herein.

135.     Plaintiffs bring this class action on behalf of themselves, and others similarly situated, against The City of Wilmington for violations of their Fourth and Fourteenth Amendment rights caused by the WPD formally adopted policy and custom of handcuffing, transporting, searching, and imprisoning individuals based only upon reasonable suspicion. This policy and custom is in clear contravention of Fourth and Fourteenth Amendment to the Constitution, Federal Law, and the laws of Delaware. As such, the City of Wilmington is directly liable for the damages of Plaintiff and members of the Class.

136.     As a direct and proximate result of the unconstitutional acts described above, Plaintiff and the Members of the Class have been deprived of their liberty and have been irreparably injured.

### COUNT II:  DEMAND FOR DECLARATORY JUDGMENT

137.     Plaintiffs re-allege and incorporate by reference the allegations, above and below, as though fully set forth herein.

138.     The policy and custom of the WPD to handcuff, transport, search, and imprison individuals based only upon reasonable suspicion is clearly unconstitutional and violates the Fourth and Fourteenth Amendments of the Constitution. This policy is in clear violation of the Fourth Amendment guarantee against unreasonable searches and seizures, and gives rise to plaintiffs claims pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983.

App. 100

139.     Plaintiff and Members of the Class request that this Court issue a declaratory judgment, and that it declare the handcuffing, transport, search, and detainment of individuals based only upon reasonable suspicion is unconstitutional and a violation of the Fourth and Fourteenth Amendments of the Constitution.

## COUNT III:  DEMAND FOR PRELIMINARY AND PERMANENT INJUNCTION

140.     Plaintiffs re-allege and incorporate by reference the allegations, above and below, as though fully set forth herein.

141.     The policy, custom and practice of the City is clearly unconstitutional and in violation of Fourth Amendment guarantee against unreasonable searches and seizures, and gives rise to plaintiffs claims pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983.

142.     This policy is longstanding and is currently in place, with new and/or prospective Members of the Class being subjected to the harms that have already been inflicted upon Plaintiffs.

143.     The ongoing use of this unconstitutional WPD policy causes irreparable harm to the new and/or prospective Members of the Class every day it is permitted.

144.     Therefore, Plaintiff requests that the Court issue an order requiring the City and WPD to immediately desist from their unconstitutional policy and custom of handcuffing, transporting, searching, and imprisoning, individuals based only upon reasonable suspicion and seeks both a preliminary and permanent injunction from this Court ordering as much.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Jayvon Wright, Antoine Murrey, Keith Medley, Gregory Griffin, and Rashad El on behalf of themselves and of a Class of others similarly situated, requests that this Honorable Court grant them the following relief against Defendant City of Wilmington:

1. An order certifying this action as a Class Action pursuant to Fed. R. Civ. P. 23.

2. A judgment against Defendant City of Wilmington on Plaintiff's First and Second Causes of Action detailed herein, awarding damages to Plaintiffs and each Member of the Proposed Class in an amount to be determined by a jury and/or the Court on both an individual and a Class-wide basis.

3. A declaratory judgment declaring the Defendant's Investigatory Detention policy and custom of handcuffing, transporting, searching and detaining individuals based only upon reasonable suspicion to be unconstitutional.

4. A preliminary and permanent injunction enjoining the Defendant from continuing its Investigatory Detention policy and custom of handcuffing, transporting, searching, and detaining individuals based solely on reasonable suspicion.

5. All lawful damages, including compensatory damages in an amount to be determined, against Defendant.

6. All attorneys' fees and the costs of this action, pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 23 including pre and post-judgment interest.

7. Nominal Damages.

8. Such other relief as this Court deems just and equitable.

9. Trial by Jury.

App. 102

THE NORMAN LAW FIRM

*/s/ Stephen P. Norman*
Stephen P. Norman, Esquire, Bar. No. 4620
The Norman Law Firm
30838 Vines Creek Road, Unit 3
Dagsboro, DE 19939
(302) 537-3788
snorman@thenormanlawfirm.com
*Attorney for Plaintiffs*

DATE: August 27, 2014

App. 103