# In the
# United States Court of Appeals
# for the Third Circuit

---

### NO. 16-2722

---

**JAYVON WRIGHT; ANTOINE MURREY
KEITH MEDLEY; GREGORY GRIFFIN; RASHAD EL, INDIVIDUALLY
AND ON BEHALF OF A CLASS OF OTHERS SIMILARLY SITUATED,**

*Appellants,*

v.

**CITY OF WILMINGTON,**

*Appellee.*

---

**On Appeal from the United States
District Court for the District of Delaware**

---

**BRIEF OF DEFENDANT-APPELLEE**

---

**C. Malcolm Cochran, IV
Kelly E. Farnan
Christine D. Haynes
Richards, Layton & Finger, P.A.
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700**

**Attorneys for Appellee**

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ............................................................................1

STATEMENT OF THE ISSUES FOR REVIEW ....................................2

STATEMENT OF RELATED CASES AND PROCEEDINGS .............5

STATEMENT OF CASE ...................................................................6

      A.   Procedural History. .........................................................6

      B.   Factual Allegations...........................................................8

SUMMARY OF THE ARGUMENT ..................................................12

ARGUMENT .................................................................................14

   I.   Standard of Review.................................................................14

   II.   The District Court Properly Exercised Its Discretion In Denying The Appellants' Motion For Class Certification. ...................15

      A.   The Proposed Class Is Not Ascertainable......................15

      B.   The Proposed Class Does Not Meet The Other Requirements of Fed. R. Civ. P. 23(a)..........................21

         1.   Numerosity Is Mere Speculation...........................21

         2.   The Appellants Cannot Establish Typicality. .........23

         3.   The Class Representatives Are Not Adequate. .......24

      C.   The Proposed Class Does Not Meet The Requirements of Rule 23(b)(2). ................................................................25

      D.   The Proposed Class Does Not Meet the Requirements of Rule 23(b)(3). ................................................................29

i

III.  The District Court Properly Exercised Its Discretion In Denying The Appellants' Cross-Motion to Compel Pre-Certification Discovery. ..............................................................................................33

CONCLUSION ......................................................................................................36

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Allison v. Citgo Petroleum Corp.,
    151 F.3d 402 (5th Cir. 1998) ................................................................27, 28, 29

Barnes v. American Tobacco Co.,
    161 F.3d 127 (3d Cir. 1998) ....................................................................26, 27

Beck v. Maximum, Inc.,
    457 F.3d 291 (3d Cir. 2006) ............................................................................25

Behrend v. Comcast Corp.,
    245 F.R.D. 195 (E.D. Pa. 2007)......................................................................22

Brown v. Commonwealth of Pennsylvania, Dep't of Health
    Emergency Med. Servs. Training Inst.,
    318 F.3d 473 (3d Cir. 2003) ............................................................................31

Buckingham v. State,
    482 A.2d 327 (Del. 1984) ................................................................................11

Byrd v. Aaron's, Inc.,
    784 F.3d 154 (3d Cir. 2015) ........................................................12, 16, 17, 18

Camiolo v. State Farm Fire & Cas. Co.,
    334 F.3d 345 (3d Cir. 2003) ............................................................................14

Carrera v. Bayer Corp.,
    727 F.3d 300 (3d Cir. 2013) ..............................................................16, 17, 19

Casale v. Kelly,
    257 F.R.D 396 (S.D.N.Y. 2009) ......................................................................20

City of Canton, Ohio v. Harris,
    489 U.S. 378 (1989)..................................................................................8, 31

City of Los Angeles v. Heller,
    475 U.S. 796 (1986)........................................................................................31

RLF1 15705176v.1

*Doninger v. Pac. Northwest Bell, Inc.*,
    564 F.2d 1304 (9th Cir. 1977) ........................................................34

*Gates v. Rohm & Haas Co.*,
    655 F.3d 255 (3d Cir. 2011) ...........................................................28

*Hayes v. Wal-Mart Stores, Inc.*,
    725 F.3d 349 (3d Cir. 2013) ..............................................15, 21, 22

*Hohider v. United Parcel Serv., Inc.*,
    574 F.3d 169 (3d Cir. 2009) ...........................................................27

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2008) ..............................................14, 15, 22

*Illinois v. Gates*,
    462 U.S. 213 (1983)........................................................................17

*Jones v. State*,
    745 A.2d 856 (Del. 1999) ...............................................................11

*Marcus v. BMW of North America, LLC*,
    687 F.3d 583 (3d Cir. 2012) ..............................................15, 16, 32

*Monell v. Dep't of Social Servs. of City of New York*,
    436 U.S. 658 (1978)..........................................................................8

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) ..............................................21, 24, 30

*In re Schering Plough Corp. ERISA Litig.*,
    589 F.3d 585 (3d Cir. 2009) ...........................................................23

*Semenko v. Wendy's Int'l, Inc.*,
    No. 2:12-cv-836, 2013 WL 1568407 (W.D. Pa. Apr. 12, 2013)........33

*Shelton v. Bledsoe*,
    775 F.3d 554 (3d Cir. 2015) ..............................................21, 26

*Singleton v. Wulff*,
    428 U.S. 106 (1976)........................................................................28

iv

*Stinson v. City of New York*,
  282 F.R.D. 360 (S.D.N.Y. 2012) ........................................................................20

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).................................................................................*passim*

*In re Warfarin Sodium Antitrust Litig.*,
  212 F.R.D. 231 (D. Del. 2002) ...........................................................................30

*Woodard v. FedEx Freight East, Inc.*,
  250 F.R.D. 178 (M.D. Pa. 2008) .......................................................................33

S<small>TATUTES</small> & R<small>ULES</small>

11 *Del. C.* § 1902(b)...................................................................................................11

42 U.S.C. § 1988 ........................................................................................................32

Fed. R. Civ. P. 23(a)......................................................................................15, 21, 24

Fed. R. Civ. P. 23(b) ..................................................................................26, 30, 32

RLF1 15705176v.1

## **INTRODUCTION**

The District Court's decision to deny class certification should be affirmed. The Plaintiff-Appellants (hereinafter "Plaintiffs" or "Appellants") complain that they were "handcuffed, transported, searched, and imprisoned . . . based solely upon reasonable suspicion." They seek to certify a class of persons similarly situated. But the Magistrate Judge, and then the District Court in adopting the Magistrate Judge's Report and Recommendation, correctly concluded that certification of such a class would require the court to engage in individualized mini-trials to determine, in the case of each putative class member, whether (in fact) he or she was detained based solely on reasonable suspicion, or whether probable cause or some other legal justification existed.

The lower court correctly determined that the proposed class does not meet the "ascertainability" element or other requirements of Rule 23(a). Moreover, even assuming the proposed class does meet the requirements of Fed. R. Civ. 23(a), the lower court correctly determined that the proposed class does not otherwise meet the requirements of Fed. R. Civ. P. 23(b)(2) or (b)(3).

This Court should affirm the District Court's denial of class certification. Because class certification is unwarranted as a matter of law, this Court should also affirm the District Court's decision to deny the cross-motion to compel "pre-certification" discovery as moot.

## STATEMENT OF THE ISSUES FOR REVIEW

1.      Whether the District Court abused its discretion in denying the Appellants' motion for class certification when membership in the putative class would turn on the reasons each individual (proposed) class member was "handcuffed, transported, searched, and imprisoned," thus requiring extensive individualized fact-finding in the form of mini-trials for each proposed class member, to determine whether probable cause or some other legal justification was present.   (App. 49-57; Defendant's Response to Plaintiffs' Motion for Class Certification (D.I. 12); App. 13, 22; App. 4-6).

2.      Whether the Appellants' proposed method for determining class membership, by reference to "turnkey" and "intake" logs is sufficient to meet the Appellants' burden of proof on the element of ascertainability, when the logs do not state why, or under what circumstances, the person appeared at the police station, or whether (if the person was detained) detention was based only on reasonable suspicion.  (App. 50-51, 56; Defendant's Response to Plaintiffs' Motion for Class Certification (D.I. 12) at 7-9; App. 13, 22; App. 4-6).

3.      Whether the class certification element of "numerosity" can be met when potential class membership is speculative, absent extensive fact-finding in the form of mini-trials for each class member.  (App. 50-51; Defendant's Response

2

to Plaintiffs' Motion for Class Certification (D.I. 12) at 10-11; App. 13-15; App. 6).

4.    Whether the class certification element of "typicality" can be established when the defenses applicable to each proposed class member's claim would be unique, turning on the unique facts and circumstances that gave rise to each detention.  (App. 52-53; Defendant's Response to Plaintiffs' Motion for Class Certification (D.I. 12) at 13-15; App. 16-18, 22; App. 6).

5.    Whether the class certification element of "adequacy" can be established in this case when none of the proposed class representatives claims that he was detained based solely on reasonable suspicion, and one was charged with crimes.    (App. 53; Defendant's Response to Plaintiffs' Motion for Class Certification (D.I. 12) at 15-16; App. 18, 22; App. 6).

6.    Whether the proposed class would be sufficiently cohesive to be certified under Federal Rule 23(b)(2) when each of the proposed class members is seeking an individualized award of money damages, relating to the unique circumstances of his or her detention.   (App. 53-55; Defendant's Response to Plaintiffs' Motion for Class Certification (D.I. 12) at 17; App. 18-20, 22; App. 6).

7.    Whether common questions of law or fact could predominate over questions affecting only individual class members (under Federal Rule 23(b)(3)), where each proposed class members' claim will turn on whether, under the unique

3

facts of his or her detention, probable cause or some other justification for the detention existed. (App. 55-56; Defendant's Response to Plaintiffs' Motion for Class Certification (D.I. 12) at 17-19; App. 20-22; App. 6).

8.    Whether, under Federal Rule 23(b)(3) a class action is superior to other available methods for adjudicating the controversy, where (i) the proposed class members interests in individually controlling the prosecution of their individual damage claims will predominate, given the unique facts of each and, (ii) management of the class would be extremely difficult in that, without individualized fact-finding, there could be no assurance that proper notice is given to all class members and no certainty in determining who would be bound by any judgment. (App. 55-56; Defendant's Response to Plaintiffs' Motion for Class Certification (D.I. 12) at 17-19; App. 20-22; App. 6).

9.    Whether the District Court abused its discretion in denying the Appellants' cross-motion to compel pre-certification discovery, where any such discovery would prove futile. (App. 58-66; Defendant City of Wilmington's Response to Plaintiffs' Motion to Compel and Reply in Further Support of Its Motion for Protective Order (D.I. 19); App. 31; App. 6).

4

## **STATEMENT OF RELATED CASES AND PROCEEDINGS**

This case has not been before this Court previously.  Appellee is not aware of any other case or proceeding that is in any way related, completed, pending or about to be presented before this court or agency, state or federal.

5

## STATEMENT OF CASE

### A.    Procedural History.

Plaintiffs, Jayvon Wright, Antoine Murrey and Keith Medley initiated this case by filing a complaint against the City of Wilmington ("City" or "Appellee") on November 21, 2013.  (App. 35; Complaint).  On the same date, plaintiffs moved to certify a class (App. 35; App. 49-57) and, on December 10, 2013, they served "pre-certification" discovery on the City.  (App. 36).  Plaintiffs sought to certify a class consisting of:

> All persons who have been handcuffed, transported, searched and imprisoned by Wilmington Police Department ["WPD"] based only upon reasonable suspicion of a crime during a period lasting from November 22, 2011 to the date on which the WPD is enjoined from enforcing its policy and custom of unlawfully handcuffing, transporting, searching and imprisoning citizens based only upon reasonable suspicion, in contravention of the Constitution, the laws of the United States, and the laws of Delaware.[1]

(App. 49).

The City moved to dismiss the complaint (App. 36), opposed class certification (App. 36), and moved for a protective order as to the "pre-certification" discovery.  (App. 36).  Plaintiffs cross-moved to compel "pre-certification discovery."  (App. 37).

---

[1] The Appellants contend that potential class members include those who are charged only with "resisting arrest" but without an underlying charge.

6

After the completion of briefing on the City's motion to dismiss, the plaintiffs moved to amend their complaint to, *inter alia*, add two new class representatives–Gregory Griffin and Rashad El (collectively with the remaining plaintiffs, the "Plaintiffs" or "Appellants").   (App. 38).   The Plaintiffs used a slightly different class definition in the proposed First Amended Complaint.   In pertinent part, the amendment is as follows [new language underlined]:

> All persons <u>taken into custody pursuant to the Investigatory Detention Policy of Wilmington Police Department, which authorizes officers of the police department to handcuff, transport, search and imprison for a period of up to two hours</u> based only upon reasonable suspicion of a crime during a period lasting from November 22, 2011 to the date on which the WPD is enjoined from enforcing its policy and custom of unlawfully handcuffing, transporting, searching and imprisoning citizens based only upon reasonable suspicion.

(App. 85-86).

The Plaintiffs did not identify any material difference, nor does there appear to be one, between the first proposed class and the proposed class in the First Amended Complaint.   The City opposed the amendment as futile for the same reasons set forth in support of its motion to dismiss.  (App. 39).

On January 28, 2016, the Magistrate Judge issued a report and recommendation ("Report and Recommendation"), recommending that the District Court deny the motion for class certification, grant the motion to amend the complaint, and deny as moot the motion to dismiss, the motion for protective

order, and the cross-motion to compel.  (App. 7-32).  The City and the Appellants each objected to various portions of the Report and Recommendation.  (App. 42; *see also* D.I. 53 & 55).

The District Court adopted the Report and Recommendation by Memorandum Order on March 31, 2016.  (App. 3-6).  The First Amended Complaint was docketed that same date (App. 84-103); the Appellants, however, have not moved to certify a class under the amended class definition.  On April 29, 2016, the City filed its answer to the First Amended Complaint (App. 43; Answer to Amended Complaint), which it subsequently amended to add an affirmative defense that the Appellants lack standing because they have not suffered constitutional injury.  (App. 46; First Amended Answer to Amended Complaint).

The Appellants petitioned this Court for leave to appeal the District Court's decision denying class certification under the initial class definition, by filing its Petition for Leave on April 13, 2016.  On May 31, 2016, this Court granted the Appellants' Petition for Leave to Appeal.  (App. 1).

## B.    Factual Allegations

The First Amended Complaint purports to allege *Monell* and *Canton* claims against the City.[2]  Specifically, the First Amended Complaint alleges that the City

---

[2] *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978); *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).

8

"has adopted a policy and custom which allows officers to handcuff, transport, search, and imprison citizens based solely upon reasonable suspicion that a crime has been committed" (App. 90 ¶ 27) and that the City "failed to adequately and properly supervise and train its police officers in various aspects of law enforcement procedure." (*Id.* at 99 ¶ 133).

The First Amended Complaint alleges that Appellant Wright approached two WPD officers who were engaged in the search of another subject "over the hood of a police vehicle." (App. 94 ¶¶ 47-48). The Appellants agree that Mr. Wright was charged with "loitering and disorderly conduct." (Op. Br. at 3; App. 95 ¶ 67).

Appellants Murrey and Medley were involved in one incident; the First Amended Complaint does not contain allegations as to why the two were taken into custody, does not allege that they were taken into custody based only on reasonable suspicion, and does not allege that probable cause or other justification were absent. (App. 95-98 ¶¶ 71-112). The same is true in the case of Messrs. Griffin and El. (App. 98-99 ¶¶ 113-127). The Appellants thus did not establish in the lower court, by a preponderance of the evidence, that they are representative of the purported class.

As it pertains to other possible class members, the Appellants contend that logs maintained by WPD, so called "turnkey logs" (App. 67-68) and "intake logs"

9

(App. 73-74) identify class members by noting "n/a" in the "charges" column of the log and with "ID" in the "disposition column." (Op. Br. at 5). The logs, however, record only basic information about who is brought to (or comes to) the police station. (App. 81-84). Charge information is not included in all cases in the turnkey logs (*see* App. 67-68) and is not included at all in the intake logs. (App. 73-74). The logs do not state whether officers had probable cause when the person listed appeared at (or was brought to) the police station; the logs do not state whether there was probable cause that was later resolved without charge or whether charges were subsequently placed; the logs do not state the circumstances under which the person appeared at the station (*i.e.*, whether they were "brought in" or whether they appeared voluntarily); they do not state whether the person was a witness, informant, or suspect; they do not define the term "ID"; they do not state whether charges were ultimately dismissed, or prosecuted to conclusion; and they do not state whether the person identified was "handcuff[ed], transport[ed], [and] search[ed]." In the absence of charge information, no information suggesting why the person came to appear at the police station is provided.

Underpinning their definition of the purported class is the Appellants' theory that WPD policy (or practice) permits investigative detention at the police station, "for no more than two hours *based upon reasonable suspicion*." (Op. Br. at 4 (emphasis supplied); *see also* App. 90 ¶ 27). The theory misstates WPD policy

10

and applicable law.  The policy, "Directive 6.10k" directs officers to "review" and follow Delaware law—specifically 11 *Del. C.* § 1902 ("Section 1902") — "relative to the detention of suspects."  (App. 92 ¶ 32).  In turn, Section 1902 requires more than reasonable suspicion before a suspect may be detained:  Once a stop (based on reasonable suspicion) has occurred, detention for further investigation (for a period up to two hours) is only permitted where the "person so questioned" has failed "to give identification or explain the person's actions to the satisfaction of the officer." 11 *Del. C.* § 1902(b); *see Buckingham v. State*, 482 A.2d 327, 332 (Del. 1984) (holding that Section 1902, as applied in certain circumstances, is constitutional); *see also Jones v. State*, 745 A.2d 856, 861 (Del. 1999) ("'[R]easonable ground' as used in Section 1902(a) has the same meaning as reasonable and articulable suspicion.").

## SUMMARY OF THE ARGUMENT

The District Court properly exercised its discretion to deny the Appellants' motion for class certification. The proposed class fails to meet the ascertainability element and other requirements of Fed. R. Civ. P. 23(a). The Appellants have not shown that the class is defined with reference to objective criteria and that there is "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition" as required by this Court. *See Byrd v. Aaron's, Inc.*, 784 F.3d 154, 163 (3d Cir. 2015). To the contrary, individualized fact-finding would be necessary to identify class members and the proposed class, therefore, is not ascertainable. Ascertainability is not the Appellants' only failure; the proposed class likewise fails to meet the standards for numerosity, typicality and adequacy.

The proposed class further fails to meet the requirements of Fed. R. Civ. P. 23(b)(2) and 23(b)(3). The Appellants here seek monetary damages that are not incidental to the injunctive and declaratory relief sought because determination of a class member's individual damages would require individualized fact-finding concerning the circumstances of the detention. The necessary individualized fact-finding also precludes class certification under Rule 23(b)(3).

12

Accordingly, the District Court correctly denied class certification.  Because class certification is unwarranted as a matter of law, the District Court also correctly denied the cross-motion to compel "pre-certification" discovery.

RLF1 15705176v.1

# **ARGUMENT**

The Court should affirm the District Court's decision denying class certification because the proposed class fails to meet the requirements of Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).  The Court should also affirm the District Court's decision denying the Appellants' motion to compel pre-certification discovery because pre-certification discovery would be futile.

## I.    **Standard of Review.**

This Court reviews a district court's decision on class certification for abuse of discretion.  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 312 (3d Cir. 2008).  "A district court abuses its discretion in deciding whether to certify a class action if its 'decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'"  *Id.* at 320 (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 783 (3d Cir. 1995)).

The Third Circuit "'appl[ies] the abuse of discretion standard when reviewing orders regarding the scope and conduct of discovery,' including whether to affirm the denial of a motion to compel discovery."  *Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 354 (3d Cir. 2003) (quoting *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1310 (3d Cir. 1995)).

14

## II.    The District Court Properly Exercised Its Discretion In Denying The Appellants' Motion For Class Certification.

To obtain class certification, the Appellants initially bear the burden of establishing by a preponderance of the evidence each of the four elements of Federal Rule of Civil Procedure 23(a). *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 591 (3d Cir. 2012); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 307. These include: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. Fed. R. Civ. P. 23(a); *see also In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 309. The Third Circuit has also held that there is an additional, implied requirement: "ascertainability." *See Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 354 (3d Cir. 2013) ("As 'an essential prerequisite' to class certification, plaintiff must show by a preponderance of the evidence that the class is ascertainable." (internal citations omitted)).

### A.    The Proposed Class Is Not Ascertainable.

The District Court correctly determined that the proposed class is not ascertainable. (App. 4-6; App. 13). The "ascertainability" requirement protects important due process rights. "A defendant has a . . . due process right to challenge the proof used to demonstrate class membership . . . . Ascertainability provides due process by requiring that a defendant be able to test the reliability of [that] . . . evidence . . . ." in a "manageable process that does not require much, if

15

any, individual factual inquiry." *Carrera v. Bayer Corp.*, 727 F.3d 300, 307-08 (3d Cir. 2013) (internal quotation marks and citation omitted). [3]

This Court has therefore repeatedly held that a party seeking class certification must show by a preponderance of the evidence that: "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Byrd*, 784 F.3d at 163 (quoting *Hayes v. Wal-Mart Stores, Inc.,* 725 F.3d 349, 355 (3d Cir. 2013)); *see Marcus*, 687 F.3d at 593-94 (3d Cir. 2012). As explained in *Marcus*, "[i]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Marcus*, 687 F.3d. at 593.

Here, the ascertainability determination must be made in the context of the Appellants' proposed class definition: "All persons who have been handcuffed, transported, searched and imprisoned by Wilmington Police Department based only upon reasonable suspicion . . . [during the class period.]" (App. 49; D.I. 3). Class membership, in every case, would thus require a determination of whether

---

[3] The ascertainability requirement serves additional, important policy purposes, including the removal of "administrative burdens that [are] 'incongruous with the efficiencies expected in a class action,' providing the best notice practicable under Rule 23(c)(2) in a Rule 23(b)(3) action, and protecting defendants by ensuring that those persons ultimately bound by the final judgment [can] be clearly identified." *Byrd*, 784 F.3d at 162 n.5.

16

the proposed class member was "handcuffed, transported, searched and imprisoned

. . . based only upon reasonable suspicion." (App. 49). An inquiry of this nature is

not "objective" in the sense described in this Court's ascertainability decisions.

*See generally, Byrd*, 784 F.3d at 163-65 (reviewing cases). It would require claim

by claim fact-finding, by judge or jury, and legal determinations as to whether,

under the unique facts of each claim, the proposed class member was held only on

"reasonable suspicion"—or based on something more. In each case, the existence

of probable cause (or the presence of another legal justification) would be a

complete defense to the class member's claim, as well as to his or her membership

in the class. *See Carrera*, 727 F.3d at 306 ("[R]igorous analysis" of the

prerequisites for class certification will frequently "entail some overlap with the

merits of the plaintiff's underlying claim.").

Probable cause is a fluid concept, turning (in every case) on the unique facts

and circumstances presented. *See, e.g.*, *Illinois v. Gates*, 462 U.S. 213, 232 (1983)

("[P]robable cause is a fluid concept—turning on the assessment of probabilities in

particular factual contexts—not readily, or even usefully, reduced to a neat set of

legal rules."). These determinations could only be made in mini-trials, involving

the presentation of evidence and extensive, individualized fact-finding, for each

proposed class member. Due process—and the City's right to challenge class

membership—requires no less. *Carrera*, 727 F.3d at 307 (citation omitted).

17

Proceedings of this nature would quickly overwhelm the trial court and the parties, and the case would likely dissolve into individual mini-trials on the presence or absence of probable cause (or other justification)—particularly if the "thousands" of potential class members predicted by the Appellants were to emerge. (Op. Br. at 18; App. 86 ¶ 12). The putative class proposed by the Appellants falls squarely within the rationale identified in *Byrd* as warranting denial of class certification for lack of ascertainability. *See Byrd*, 784 F.3d at 163-65 (reviewing the "*Marcus-Hayes-Carrera* trilogy").[4]

The Appellants' proposed solution to this problem is no solution. There is no indication that any of the records cited by the Appellants or referenced in their Opening Brief (at 4-5, 11) will identify, in objective fashion, "all persons taken into custody" based on *reasonable suspicion* alone (along with those "handcuff[ed], transport[ed] [and] search[ed]"). Indeed, according to the Appellants, the documents identify, at best, only "when and on what basis individuals are arrested by the WPD," "what charges, if any, were levied against a potential class member" and "[w]hen no charges were sought, the records can

---

[4] The result is no different under the amended class definition found in the First Amended Complaint. At bottom, class membership would still turn on whether a claimant was "handcuff[ed], transport[ed], search[ed] and imprison[ed] for a period of up to two hours *based only upon reasonable suspicion*." (App. 85-86 ¶ 10 (emphasis added)).

18

include specific notations that indicate an individual has been subjected to an investigatory detention." (Op. Br. at 11).[5]

The documents the Appellants would have the court examine, however (the "turnkey" and "intake" logs), do not state whether persons identified on the logs were "handcuffed, searched and transported" to the police station, or came to the station voluntarily. The logs do not state whether officers had probable cause (or some other legal justification) when the person appeared at (or was brought to) the police station, or whether detention (if the subject was detained) was based solely on reasonable suspicion; the logs do not state whether there was probable cause that was later resolved without charge—or whether charges were subsequently placed, and they do not define the term "ID" nor state that persons with that designation were held based only on reasonable suspicion. All of this is critical to the determination of class membership (under the Appellants' approach) but is left for another day. In such circumstances, certification of a class is inappropriate. *Carrera*, 727 F.3d at 306-07 ("A plaintiff may not merely propose a method of ascertaining a class without any evidentiary support that the method will be

---

[5] The Appellants' proposed mechanism fails when tested against one of the already-identified purported class members. As the Appellants acknowledge, Mr. Wright was charged with loitering and disorderly conduct, but the charges were dismissed before trial. (App. 95 ¶¶ 67-68). Using the intake and turnkey logs to identify class members as proposed by the Appellants would not identify purported class members such as Mr. Wright.

successful."). The Appellants have failed to articulate a proposed "mechanism" for identifying class members that is "reliable and administratively feasible."

Nor have the Appellants identified authority that would support a contrary result. While they rely heavily on *Stinson*, the class that was ultimately certified in that case was based on prior judicial determinations that probable cause was lacking. "[I]ndividuals who were issued summonses that were later dismissed upon a judicial finding of facial insufficiency and who were ticketed without probable cause" could be readily identified. *Stinson v. City of New York*, 282 F.R.D. 360, 377 (S.D.N.Y. 2012).

Likewise, *Casale* is inapposite. In *Casale*, the class was narrowly defined to include persons who had been (or will be) "arrested, charged or prosecuted" for violating a specific statutory provision that had been previously declared unconstitutional—rendering class members "readily identifi[able]" by reference to the statute used to charge them, along with city and court records. *Casale v. Kelly*, 257 F.R.D 396, 413 (S.D.N.Y. 2009). There is no similar objective or convenient mechanism here.

The Appellants have failed to meet their burden to demonstrate ascertainability. The District Court's denial of class certification should be affirmed.[6]

### B. The Proposed Class Does Not Meet The Other Requirements of Fed. R. Civ. P. 23(a).

#### 1. Numerosity Is Mere Speculation.

Numerosity requires a finding that the putative "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 168 (3d Cir. 2001). "A party seeking class certification must . . . be prepared to prove that there are *in fact* sufficiently numerous parties . . . ." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "Mere speculation as to the number of class members—even if such speculation is a 'bet worth making'—cannot support a finding of numerosity." *Hayes*, 725 F.3d at 357.

As alleged in the proposed Amended Complaint, the Appellants seek certification of a class based on only three specific incidents involving five individuals. The Third Circuit generally has approved classes of forty or more.

---

[6] In *Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015), this Court determined "that ascertainability is not a requirement for certification of a [Rule 23](b)(2) class seeking only injunctive and declaratory relief." As demonstrated *infra* (at 28), however, the instant matter seeks damages that are not incidental to the injunctive relief sought, precluding certification under Rule 23(b)(2).

21

*See, e.g.*, *Behrend v. Comcast Corp.*, 245 F.R.D. 195, 202 (E.D. Pa. 2007). The five named Plaintiffs in this action are insufficient to establish numerosity.

The Third Circuit has held that "where a putative class is some subset of a larger pool, the trial court may not infer numerosity from the number in the larger pool alone." *Hayes*, 725 F.3d at 358. "Similarly, the trial court cannot take a wait-and-see approach to numerosity or any other requirement of Rule 23." *Id.* While the Appellants apparently hope that discovery (and, presumably, myriad mini-trials) will identify numerous "members" of their putative class, the trial court must "consider carefully all relevant evidence and make a definitive determination that the requirements of Rule 23 have been met *before* certifying a class." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 320. "A party's assurance to the court that it intends or plans to meet the requirements is insufficient." *Id.* at 318.

The Appellants here have failed to establish numerosity on the basis of the five named Plaintiffs. Their assertion that numerosity can be established through pre-certification discovery is speculative at best. Indeed, this case has been pending for three years and during that time only five plaintiffs (involved in three incidents) have been identified. Moreover, the pre-certification discovery sought would be futile for at least two reasons. First, as discussed (*supra* at 19-20), the logs do not provide information sufficient to identify class members and, therefore, would not provide a basis for this Court or the District Court to hold that the

22

numerosity requirement is met.  Second, as the lower court held, the Appellants have not established that the proposed class will meet any of the requirements of Fed. R. Civ. P. 23(b).

Accordingly, the Appellants cannot establish numerosity, and the District Court correctly denied class certification.  (App. 6; App. 22).

## 2.    The Appellants Cannot Establish Typicality.

In assessing typicality, courts in the Third Circuit consider the following elements:

> (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009).  The presence of an "arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class."  *Id.* at 598-99 (quoting *J.H. Cohn & Co. v. Am. Appraisal Assocs.*, 628 F.2d 994, 999 (7th Cir. 1980)).

The lower court did not resolve the issue of typicality because the proposed class could not be certified under Rule 23(b).  (App. 17-18).  The Appellants cannot establish typicality because the claims of each putative class member would

23

be based on unique, distinct factual circumstances. Whether probable cause or other justification was present would require separate and individualized fact-finding under the unique circumstances presented in each case. No showing can be made sufficient to characterize as "representative" any injury suffered by the named Plaintiffs where factors such as the length of detention, the nature and extent of any physical injury, or other special damages would require individualized proof and judicial determination in each and every case. *See Dukes*, 564 U.S. at 366-67. The Appellants, thus, have failed to establish typicality.

### 3.    The Class Representatives Are Not Adequate.

Under Rule 23(a), the class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry is divided into two parts: "(1) whether the representatives' interests conflict with those of the class and (2) whether the class attorney is capable of representing the class." *Newton*, 259 F.3d at 185.

The Appellants cannot meet the adequacy requirement because of foreseeable conflicts between each of the Appellants and the proposed class. Mr. Wright fails to qualify for the class because, as the Amended Complaint alleges, he was arrested and charged with loitering and disorderly conduct. (App. 95 ¶ 67). The only reasonable inference is that the arresting officers had probable cause to arrest. Moreover, the Amended Complaint does not allege any facts regarding the

24

reasons for detaining Messrs. Medley, Murrey, Griffin, and El and does not allege that probable cause was absent, nor that they were detained based solely on reasonable suspicion.    (App. 95-99 ¶¶ 71-127).    Thus, the First Amended Complaint does not allege that the Appellants suffered the constitutional injury complained of:  "handcuffing, transporting, searching, and imprisoning . . . *based only on a reasonable suspicion*."  (App. 85 ¶ 10 (emphasis added); *see generally* App. ¶¶ 47-127).  Further, each representative Plaintiff's claim would be subject to unique defenses, based on the unique facts associated with each detention, whether probable cause was present or absent on such facts, or whether the facts presented other legal justifications.    "Because of the similarity of [the typicality and adequacy inquiries], certain questions—like whether a unique defense should defeat class certification—are relevant under both."  *Beck v. Maximum, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006).  The lower court correctly denied class certification because the Appellants cannot establish adequacy.  (App. 6; App. 22).

### C.    The Proposed Class Does Not Meet The Requirements of Rule 23(b)(2).

In addition to holding that the proposed class fails to meet the requirements of Rule 23(a), the lower court also correctly determined that the proposed class fails to meet the requirements of Rule 23(b)(2).  (App. 6; App. 22).

In this case, the Appellants seek a declaratory judgment that the challenged "policy, custom and practice" is unconstitutional and a corresponding injunction

25

requiring that the Defendant "immediately desist." (App. 101 ¶¶ 141, 144; App. 102 ¶¶ 3, 4).  The Appellants also seek, however, "[a] judgment against Defendant City of Wilmington . . . awarding damages to Plaintiffs and each Member of the Proposed Class in an amount to be determined by a jury and/or the Court on both an individual and a Class-wide basis" (App. 102 ¶ 2) along with "[a]ll lawful damages, including compensatory damages, in an amount to be determined, against Defendant[,]" and attorneys' fees and costs.  (App. 102 ¶¶ 5, 6).

Rule 23(b)(2) allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2); *see also Dukes*, 564 U.S. at 360.  "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'"  *Dukes*, 564 U.S. at 360.

It is therefore well settled that a Rule 23(b)(2) class must be cohesive.  *Barnes v. American Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998); *see also Shelton*, 775 F.3d at 561.  Rule 23(b)(2) classes require cohesiveness "because significant individual issues in a (b)(2) class might present manageability issues and undermine the value of utilizing the class action mechanism."  *Shelton*, 775

26

F.3d at 561.  For this reason, Rule 23(b)(2) actions "are limited to those class actions seeking primarily injunctive or corresponding declaratory relief." *Barnes*, 161 F.3d at 142.  Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Dukes*, 564 U.S. at 360-61.

Thus where (as here) the putative class seeks damages in addition to injunctive and declaratory relief, this Circuit measures the "predominance" of the monetary damage claims, using the "incidental damages" standard set forth by the Fifth Circuit to determine whether the monetary claims are merely incidental to the injunctive and declaratory relief.  *See Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 198-99 (3d Cir. 2009).  The Supreme Court has upheld this approach, explaining that "incidental damage should not require additional hearings to resolve the disparate merits of each individual's case." *Dukes*, 564 U.S. at 366 (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998)).  Thus, "incidental" damages "flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." *Allison*, 151 F.3d at 415.  "[T]he recovery of incidental damages should typically be concomitant with, not merely consequential to, class-wide injunctive or declaratory relief," and should not depend "on the intangible, subjective differences of each class member's circumstances." *Id.*

27

The proposed class here fails to meet the requirements of 23(b)(2) because "the disparate factual circumstances of class members" prevent the class from being cohesive. *See Gates v. Rohm & Haas Co.*, 655 F.3d 255, 264 (3d Cir. 2011) (internal quotation marks and citation omitted). These money damage claims are primary claims that will require individualized inquiry into the circumstances of each class members' detention (assuming, *arguendo*, liability). The damage claims will likely turn on matters unrelated to the claim for injunctive relief, such as the length of the detention, the nature and intrusiveness of the search, whether there were physical injuries, and any special damages (such as lost wages) that may exist. "[I]ncidental damage[] should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations." *Allison*, 151 F.3d at 415; *see also Dukes*, 564 U.S. at 365-6 (discussing *Allison*). The lower court properly determined that certification as a Rule 23(b)(2) class would be inappropriate. (App. 6; App. 22).

The Appellants suggest that the answer is to certify separate 23(b)(2) and 23(b)(3) classes.[7] Such dual or "hybrid" certification is inappropriate here

---

[7] Appellants did not raise this issue below. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.")

RLF1 15705176v.1

because, for the reasons discussed below, the proposed class also fails to meet the requirements of Rule 23(b)(3).  The Fifth Circuit addressed a similar request for certification of a "hybrid" class action in *Allison*.  *See* 151 F.3d at 416-26.  In *Allison*, the plaintiffs sought to certify a "hybrid" class action, "whereby the plaintiffs' claims for compensatory and punitive damages would be certified under Rule 23(b)(3) and the rest of the class action certified under Rule 23(b)(2)."  *Id.* at 418.  The Fifth Circuit held that the lower court did not abuse its discretion in refusing to certify such a hybrid class where the proposed class failed to meet the requirements of both Rule 23(b)(2) and 23(b)(3).  The cases cited in Appellants' brief, including *Stinson*, are thus distinguishable from the present case because the proposed class here does not meet the requirements of Rule 23(b)(3) for the reasons discussed below.  (Op. Br. at 24).  The proposed class, therefore, cannot be certified separately under both Rule 23(b)(2) and Rule 23(b)(3).

### D.     The Proposed Class Does Not Meet the Requirements of Rule 23(b)(3).

The lower court properly exercised its discretion in determining that the proposed class does not meet the requirements of Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) permits class certification where, in addition to the Rule 23(a) requirements:

> [T]he court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods

29

for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Thus, to qualify for class certification under Rule 23(b)(3), "(a) common questions must predominate over any questions affecting only individual members; and (b) class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 247 (D. Del. 2002) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)).

"Predominance measures whether the class is sufficiently cohesive to warrant certification." *Newton*, 259 F.3d at 187. As discussed, the present case requires individualized findings regarding the factual circumstances and legal justifications concerning each detention. Such individualized analysis precludes class certification. As the lower court stated, "the predominance requirement cannot be met when each individual's 'claim raises radically different factual and

30

legal issues from those of other plaintiffs.'"  (App. 21 (citing *Georgine v. Amchem Prods. Inc.*, 83 F.3d 610, 618 (3d Cir. 1996), *aff'd*, 521 U.S. 591 (1997))).

As a matter of law, the Appellants' *Monell* and *Canton* claims fail unless there has been an underlying Fourth Amendment violation.  *See, e.g.*, *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point."); *Brown v. Commonwealth of Pennsylvania, Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 482 (3d Cir. 2003) ("[F]or there to be municipal liability, there . . . must be a violation of the plaintiff's constitutional rights.") (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992)).  That is because "[t]here must be a 'direct causal link' between the policy and a constitutional violation." *Brown*, 318 F.3d at 482 (citing *Canton*, 489 U.S. at 385).  The District Court, therefore, would first have to determine whether the City has an unconstitutional policy or custom and then would have to examine, in each case, whether an individual class member had suffered a constitutional injury as a result of that purportedly unconstitutional policy or practice.  Even among the five named Plaintiffs, the factual scenarios differ significantly and would require a determination of whether probable cause was present in each individual case.  (App. 94-99 ¶¶ 47-127).  Proof of potential

31

class members' claims would thus require individual treatment in each case; unique questions of fact (and law) would predominate and, therefore; certification pursuant to Fed. R. Civ. P. 23(b)(3) is not appropriate in this case.

Thus, a class action would not be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Putative class members would each have unique interests in controlling the prosecution of their claims, in order to ensure proper recoveries based on individualized elements of liability and damage. Further, and as noted above, (*supra* at 16-18) given the problems associated with identifying class members (absent myriad mini trials) there would be no assurance that proper notice could be given to members of such a class, to ensure the presentation of claims or the perfection of "opt out" rights under Rule 23. *See Marcus*, 687 F.3d 593 (noting that one purpose of the ascertainability requirement is to "protect[] absent class members by facilitating the 'best notice practicable' under Rule 23(c)(2) in a Rule 23(b)(3) action"). As for the Appellants' contention that cost is a barrier (*see* Op. Br. at 23), individual claims would presumably be brought under 42 U.S.C. § 1983, which authorizes fee and expense awards if successful. *See* 42 U.S.C. § 1988. Finally, there is no assurance that the individuals listed on the logs presented to the Court would even want to be identified, for purposes of a class action or otherwise. People are often brought to, or appear at, the police station for business they would

32

not wish to be exposed to public view.  Individual actions are an adequate remedy for those with grievances they wish to pursue.

The District Court's decision to deny class certification should be affirmed.

## III.    The District Court Properly Exercised Its Discretion In Denying The Appellants' Cross-Motion to Compel Pre-Certification Discovery.

The District Court did not abuse its discretion when it denied the Appellants' cross-motion to compel pre-certification discovery as moot.  The District Court has broad discretion to limit pre-certification discovery and may deny class certification before discovery where "'no amount of additional class discovery will alter the conclusion' that the class is not maintainable." *Semenko v. Wendy's Int'l, Inc.*, No. 2:12-cv-836, 2013 WL 1568407, at *2 (W.D. Pa. Apr. 12, 2013) (quoting *Thompson v. Merck & Co., Inc.*, 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004)); *see also Woodard v. FedEx Freight East, Inc.*, 250 F.R.D. 178, 182 (M.D. Pa. 2008) (A court "will strike class action allegations without permitting discovery . . . where the complaint . . . clearly demonstrate[s] that the plaintiff cannot meet the requirements for a class action.").  While the Appellants cite cases from other circuits for the proposition that class discovery may be necessary in some cases to determine the existence of a class action (Op. Br. at 32), their cases do not apply where pre-certification discovery will not "alter the conclusion" that class certification is unwarranted.

33

The Appellants argue that "discovery may be helpful in determining both the numerosity and typicality of the proposed class." (Op. Br. at 32). They fail to address, however, just how discovery might demonstrate ascertainability, or that the class meets the requirements of Rule 23(b)(2) and (b)(3). Simply put, the Appellants have not met their burden to demonstrate that the pre-certification discovery sought is "likely to produce persuasive information substantiating the class action allegations." *See Doninger v. Pac. Northwest Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977).

The Appellants point to the "turnkey logs" and "intake logs" as "objective criteria" by which the putative class can be defined. The logs, however, do not answer the question of whether the detention of any of the individuals listed was constitutional, as discussed previously. (*See supra* at 19-20). Ascertainability, numerosity and typicality cannot be established from the logs.

Moreover, the lower court correctly held that "precertification discovery would be futile in this case because it cannot remove the obstacles to class certification under Rule 23(b)." (App. 14-15). In that regard, the Appellants fail to address on appeal (i) how precertification discovery will establish that the damages they seek are merely "incidental" to the injunctive relief sought under Rule 23(b)(2) (*see supra* at 28), or (ii) how discovery might overcome the "predominance" and "superiority" objections to certification under (b)(3). (*See*

34

*supra* at 30-33).  As is apparent on the face of the log pages included in the parties'

appendix, they do not contain information sufficient to satisfy these elements of

certification.

Since class certification is unwarranted as a matter of law pre certification

discovery is futile.  This Court should affirm the District Court's decision denying

the Appellants' motion to compel pre-certification discovery.

35

## CONCLUSION

For the foregoing reasons, this Court should affirm the District Court's March 31, 2016 Memorandum Order denying class certification and denying the Appellants' cross-motion to compel pre-certification discovery as moot.

/s/ Kelly E. Farnan

C. Malcolm Cochran, IV (#2377)

OF COUNSEL:

Kelly E. Farnan (#4395)

Michael P. Migliore

Christine D. Haynes (#4697)

Rosamaria Tassone-DiNardo

Richards, Layton & Finger, P.A.

City of Wilmington Law Department

One Rodney Square

City/County Building, 9th Floor

920 N. King Street

800 N. French Street

Wilmington, DE 19801

Wilmington, DE 19801

(302) 651-7700

(302) 576-2175

cochran@rlf.com

farnan@rlf.com

haynes@rlf.com

*Attorneys for Appellee City of Wilmington*

Dated: November 7, 2016

36

## COMBINED CERTIFICATIONS

**Type-Volume Limitation, Typeface Requirements, and Type Style Requirements:**  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7,461 words as determined by the word-count function of Microsoft Word 2010, excluding the parts of the brief exempted by Fed. R. App. 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

**Identical Compliance of Briefs:**  The text of the electronically filed brief filed is identical to the text in the paper copies.

**Bar Membership:**  I hereby certify that I am a member of the Bar for the United States Court of Appeals for the Third Circuit.

**Virus Check:**  I hereby certify that a virus check was performed on the electronically filed copy of this brief using System Center Endpoint Protection Version 4.10.205.0.  No viruses were detected.

**Service:**  I hereby certify that on November 7, 2016, this Brief of Defendant-Appellee was filed with the Clerk of the Court for the United States Court of Appeals for the Third Circuit via CM/ECF, which sent notification to counsel for

Appellants who is a registered CM/ECF user.  I also hereby certify that I shall

cause within 5 days 7 paper copies to be delivered to the Clerk's Office.


*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE  19801
(302) 651-7700
farnan@rlf.com

2